UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **09 - 60331**    CR - COHN

MAGISTRATE JUDGE
SELTZER

18 U.S.C. §1962(d)
18 U.S.C. §1956(h)
18 U.S.C. §1349
18 U.S.C. §1343
18 U.S.C. § 2
18 U.S.C. §1963
18 U.S.C. §982(a)(1)
18 U.S.C. §981(a)(1)(C)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SCOTT W. ROTHSTEIN,

        Defendant.

_____/

FILED by _____ D.C.

**DEC 0 1 2009**

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.

## INFORMATION

The United States Attorney charges that, at all times relevant to this Information:

### GENERAL ALLEGATIONS

1.    Scott W. Rothstein was an attorney admitted to practice law in Florida.  Defendant Rothstein was the Chief Executive Officer (CEO) and Chairman of Rothstein, Rosenfeldt and Adler, P.A.

2.    Rothstein, Rosenfeldt and Adler, P.A. was a law firm with offices located at 401 East Las Olas Boulevard, Fort Lauderdale, Florida and elsewhere.  The law firm employed approximately seventy (70) attorneys and engaged in the practice of law involving a wide range of specialties, including labor and employment law.



## COUNT 1
(Racketeering Conspiracy, 18 U.S.C. §1962(d))

1.     The General Allegations of this Information are realleged and expressly incorporated herein as if set forth in full.

### THE ENTERPRISE

2.     The law firm, Rothstein, Rosenfeldt and Adler, P.A. (hereinafter referred to as RRA) was a legal entity organized under the laws of the State of Florida and constituted an Enterprise as that term is defined in Title 18, United States Code, Section 1961(4). The Enterprise engaged in, and the activities of which affected, interstate and foreign commerce.

### THE RACKETEERING CONSPIRACY

3.     From in or about 2005 and continuing through in or about November 2009, in the Southern District of Florida and elsewhere, the defendant,

### SCOTT W. ROTHSTEIN,

being a person employed by and associated with the Enterprise described above, which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly combine, conspire, confederate, and agree, with persons known and unknown to the United States Attorney, to violate Title 18, United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity as that term is defined in Title 18, United States Code, Sections 1961(1) and (5), as set forth herein below at paragraph 4.

2

THE PATTERN OF RACKETEERING ACTIVITY

4.      The pattern of racketeering activity as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), through which the defendant and his co-conspirators agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise consisted of multiple acts indictable under the laws of the United States, namely:

    i.      Title 18, United States Code, Section 1341 (mail fraud);

    ii.     Title 18, United States Code, Section 1343 (wire fraud);

    iii.    Title 18, United States Code, Section 1956(a)(1) (laundering of monetary instruments);

    iv.     Title 18, United States Code, Section 1957 (engaging in monetary transactions); and

    v.      Title 18, United States Code, Section 1956(h) (conspiracy to launder monetary instruments and engage in monetary transactions.

THE PURPOSE AND OBJECT OF THE RACKETEERING ACTIVITY

5.      The principal purpose of the racketeering conspiracy was to generate money for the defendant and his co-conspirators through the operation of the Enterprise and through various criminal activities, including mail fraud, wire fraud, and money laundering.

6.      The defendant and his co-conspirators agreed to engage in a pattern of racketeering activity through its base of operation at the offices of RRA. The conspirators also utilized other locations to further the objectives of the Enterprise. RRA was utilized by the defendant and his co-conspirators to unlawfully obtain approximately $1.2 billion from investors by fraud in connection with an investment scheme commonly known as a "Ponzi" scheme, in which new investors' funds

3

are utilized to pay previous investors in the absence of any underlying security, legitimate investment vehicle or other commodity.

THE ROLES AND RESPONSIBILITIES OF THE CONSPIRATORS

7. The roles of the conspirators were as follows:

A. Defendant SCOTT W. ROTHSTEIN was a shareholder, Chairman and CEO of RRA. Through his position at RRA, defendant ROTHSTEIN promoted, managed, and supervised the administration of the Enterprise by fraudulently inducing investors through the use of false statements, documents, and computer records to (1) loan money to purported borrowers based upon fraudulent promissory notes and fictitious bridge loans, and (2) invest funds based upon anticipated pay-outs from purported confidential settlement agreements which had been reached between and among certain individuals and business entities. These settlement agreements were falsely presented as having been reached between putative plaintiffs in civil cases and putative defendants based upon the forbearance of civil claims in sexual harassment and/or whistle-blower cases.

B. Other conspirators, known and unknown to the United States Attorney, agreed with one another and with defendant ROTHSTEIN to take actions to further the operation and success of the "Ponzi" scheme, including presenting the aforesaid investments to potential investors as legitimate investment vehicles, when in fact they were not; fraudulently inducing investors to place funds into these investment vehicles by making material misstatements of facts as set forth below; assuring potential investors and investors that sufficient funds existed to pay returns on these investments, when in fact such funds did not exist; creating, and transferring funds into and from, various accounts at financial institutions in order to further the unlawful scheme; and realizing

4

profits from the operation of the Ponzi scheme through the acquisition of money generated as proceeds from the scheme and through the acquisition of real and personal property.

## MANNER AND MEANS OF THE RACKETEERING CONSPIRACY

8.      It was part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

9.      Defendant ROTHSTEIN and other co-conspirators initiated the criminal conduct alleged in the instant Information in order to personally enrich themselves and to supplement the income and sustain the daily operation of RRA.

10.     Defendant ROTHSTEIN and other co-conspirators fraudulently solicited investors to loan money based upon promissory notes and bridge loans to and from purported clients of RRA. Defendant ROTHSTEIN falsely alleged that clients of RRA requested short-term financing for undisclosed business deals. Defendant ROTHSTEIN falsely alleged that the purported clients were willing to pay high rates of return on loans negotiated by Defendant ROTHSTEIN. In fact, defendant ROTHSTEIN was aware that no such clients or requests for business financing actually existed.

11.     Defendant ROTHSTEIN and other co-conspirators participated in an investment scheme commonly known as a "Ponzi" scheme. The "Ponzi" scheme involved the sale of purported confidential settlement agreements in sexual harassment and/or whistle-blower cases. The potential investors were told by defendant ROTHSTEIN and other co-conspirators that confidential settlement agreements were available for purchase. The purported settlements were allegedly available in amounts ranging from hundreds of thousands of dollars to millions of dollars and could be purchased at a discount and repaid to the investors at face value over time.

5

12.     Defendant ROTHSTEIN and other co-conspirators utilized the offices of RRA and the offices of other co-conspirators to convince potential investors of the legitimacy and success of the law firm, which enhanced the credibility of the purported investment opportunity.

13.     Defendant ROTHSTEIN and other co-conspirators made false and misleading statements and omissions which were intended to fraudulently induce potential investors into purchasing the confidential settlements.

14.     Defendant ROTHSTEIN and other co-conspirators made the following fraudulent representations to potential investors in order to induce them to purchase the purported settlements:

A.     That the purported settlements were highly confidential in order to protect the reputation of the company authorizing the settlement and the executives involved;

B.     That the plaintiffs in the purported sexual harassment and/or whistle-blower cases preferred to settle the cases in order to avoid the emotional embarrassment of pursuing a claim in a public forum;

C.     That RRA originated its own cases from reputation, internal staff and outside referrals from other law firms;

D.     That RRA retained a company that owned internet sites and well-placed "800" numbers designed to attract a large volume of high quality cases;

E.     That RRA rigorously screened the purported sexual harassment and/or whistle-blower settlement agreements;

F.  That RRA utilized former law enforcement personnel and employed highly sophisticated investigative methods in selecting and pursuing claims against purported defendants;

G.  That RRA or other law firms pursued purported settlements with defendant companies prior to the initiation of litigation;

H.  That RRA or other law firms negotiated with the purported defendant company after such company was made aware of the alleged claim by the plaintiff;

I.  That RRA or other law firms purportedly negotiated with the defendant company and reached an agreement which contained the settlement amount and the payment terms;

J.  That because the purported settlements occurred prior to the initiation of litigation, there was no court or governmental entity involved in the transaction;

K.  That the alleged defendant companies sent by wire transfer to RRA or other law firms' trust accounts the full proceeds of the purported settlements;

L.  That during the settlement conference or other settlement negotiations when a purported plaintiff protested the extended payment schedule, RRA or other law firms presented the purported plaintiff with the option of receiving a discounted lump sum payment from an unrelated confidential funding source;

M.  That RRA or other co-conspirators prepared a purported Assignment of Settlement Agreement in which the investor agreed to acquire the right to the

purported settlement payments for a discounted lump sum payment made to the purported plaintiff;

N.    That when RRA received the payment by the investor it immediately disbursed those funds to the purported plaintiff; and

O.    That RRA made payment to the investor pursuant to the purported payment schedule set forth in the purported settlement agreement.

15.    Defendant ROTHSTEIN and other co-conspirators falsely informed potential investors that funds were maintained in designated trust accounts for the benefit of the individual investor and that these funds were verified on a regular basis, weekly if not more often, by two independent verification sources, one being an attorney and the other being an independent financial advisor (hereinafter referred to "independent verifiers").

16.    Defendant ROTHSTEIN and other co-conspirators falsely informed potential investors that RRA's trust accounts were maintained with a well established international banking institution, in accordance with the rules and regulations of the Florida Bar, and that access to balances in the trust accounts was allegedly monitored by one of the two independent verifiers.

17.    Defendant ROTHSTEIN and other co-conspirators falsely informed potential investors that due diligence would be undertaken with the following provisions:

A.    An "independent verifier" would be permitted to ask questions of Defendant ROTHSTEIN and/or other co-conspirators to review the opportunity and structure;

B.    The "independent verifier" would have the opportunity to randomly review selected completed transactions to confirm the veracity of the information;

8

C.   The "independent verifier" had already reviewed current transactions, including wire transfers received from defendants and payments made to plaintiffs;

D.   The "independent verifier" would have the opportunity to visit and speak with a senior banking officer at the local branch of the financial institution to confirm current trust account bank balances through bank statements provided on line; and

E.   The "independent verifier" had the opportunity to meet with a senior banking officer to verify that the trust accounts were "locked" and to verify the strength of RRA's financial position and relationship with the bank.

18.   Defendant ROTHSTEIN and other co-conspirators established numerous trust accounts in the name of RRA in order to convince potential and current investors of the legitimacy of the confidential settlement agreements and the security of such investments.

19.   Defendant ROTHSTEIN and other co-conspirators prepared and used altered bank statements, purportedly issued from a well-established international financial institution, to fraudulently convince potential and current investors that funds had been received from the purported defendant companies and were maintained in trust accounts.

20.   In order to deceive investors, defendant ROTHSTEIN and other co-conspirators created, altered and/or maintained fictitious online banking information regarding the purported trust accounts which falsely reflected the amount of funds maintained in such accounts, the receipt of funds wired from the alleged defendant companies and the transmission of funds by wire to the alleged plaintiffs,

21.    Defendant ROTHSTEIN and other co-conspirators created false and fictitious documents, including confidential settlement agreements, assignment of settlement agreements and proceeds, sale and transfer agreements, and personal guaranties by Defendant ROTHSTEIN, among other documents.

22.    Defendant ROTHSTEIN and other co-conspirators facilitated the movement and transfer of funds between and among numerous trust accounts and operating accounts in order to perpetuate the scheme. The movement and transfer of such funds insured that monies were available in the individual trust accounts in order to make scheduled payments to investors.

23.    Defendant ROTHSTEIN and other co-conspirators made false statements to current investors in order to convince them to re-invest in additional purported confidential settlement agreements.

24.    Defendant ROTHSTEIN and other co-conspirators facilitated the creation of false and fictitious "lock letters" which were issued by an executive at the financial institution where the trust and operating accounts were maintained. Such "lock letters" falsely reflected that the funds maintained in specific trust accounts would only be disbursed to specific investors.

25.    Defendant ROTHSTEIN and other co-conspirators utilized funds received from investors to pay the promised "return on investment" to earlier investors.

26.    Defendant ROTHSTEIN and other co-conspirators also initiated and conducted a scheme to defraud clients of RRA in order to perpetuate the "Ponzi" scheme. Such clients had retained RRA to institute and file a civil lawsuit. Unknown to the clients, RRA settled the lawsuit and obligated the clients to pay $500,000 to the defendant. In order to commit the fraud and deceive the clients, defendant ROTHSTEIN and other co-conspirators created a false and fraudulent court

10

order purportedly signed by a Federal District Court Judge which falsely alleged that the clients had prevailed in the lawsuit and were owed a judgement of approximately $23 million. The fraudulent court order also falsely stated that the defendant had transferred funds to the Cayman Islands in order to avoid paying the judgement.

27.     Defendant ROTHSTEIN and other co-conspirators falsely advised the clients on several occasions that in order to recover the defendant's funds, they had to post bonds to be held in the RRA trust account. Defendant ROTHSTEIN and other co-conspirators fraudulently caused the clients to wire transfer approximately $57 million over several years to a trust account controlled by defendant ROTHSTEIN, purportedly to satisfy the bonds.

28.     Defendant ROTHSTEIN and other co-conspirators caused the funds transmitted by the clients to be transferred to other RRA trust accounts in order to perpetuate the "Ponzi" scheme and to enrich those co-conspirators who were associated with the Enterprise.

29.     Defendant ROTHSTEIN and other co-conspirators were questioned by the clients as to the progress of the alleged lawsuit. In order to delay the return of funds to the clients, defendant ROTHSTEIN fraudulently created a false Federal court order purportedly issued by a United States Magistrate Judge allegedly ordering RRA to return the transmitted funds by a later date.

30.     Defendant ROTHSTEIN and other co-conspirators utilized funds obtained through the "Ponzi" scheme to supplement and support the operation and activities of RRA, to expand RRA by the hiring of additional attorneys and support staff, to fund salaries and bonuses, and to acquire larger and more elaborate office space and equipment in order to enrich the personal wealth of persons employed by and associated with the Enterprise.

31.     Defendant ROTHSTEIN and other co-conspirators utilized funds illegally obtained through the "Ponzi" scheme to make political contributions to local, state and federal political candidates, in a manner designed to conceal the true source of such funds and to circumvent state and federal laws governing the limitations and contribution of such funds.

32.     Defendant ROTHSTEIN and other co-conspirators used other corporations in order to launder proceeds generated from the "Ponzi" scheme to conceal the source of the funds utilized to make political contributions in order to promote the "Ponzi" scheme.

33.     Defendant ROTHSTEIN and other co-conspirators paid large bonuses to employees of RRA purportedly as an award for exemplary work.  Prior to the receipt of the bonuses, the employees were instructed to make large contributions to political candidates in the employees' names.  Such conduct was designed to conceal the true source of the contribution and to illegally circumvent campaign finance laws.

34.     Defendant ROTHSTEIN and other co-conspirators distributed lavish gifts including exotic cars, jewelry, boats, loans, cash and bonuses to individuals and members of RRA in order to engender goodwill and loyalty and to create the appearance of a successful law firm.

35.     Defendant ROTHSTEIN and other co-conspirators made large charitable contributions to public and private charitable institutions, including hospitals and other legitimate charitable and nonprofit organizations using funds derived from the "Ponzi" scheme.

36.     Defendant ROTHSTEIN and other co-conspirators utilized funds illegally obtained through the "Ponzi" scheme to hire members of local police departments purportedly to provide security for RRA and defendant ROTHSTEIN's personal residence.  "Ponzi" scheme funds were also used to provide gratuities to high ranking members of police agencies in order to curry favor

with such police personnel and to deflect law enforcement scrutiny of the activities of RRA and defendant ROTHSTEIN.

37.     Defendant ROTHSTEIN and other co-conspirators utilized funds obtained through the "Ponzi" scheme in order to purchase controlling interests in restaurants located in the Southern District of Florida.  Such restaurants were used in part as a mechanism to give gratuities to individuals, including politicians, business associates and attorneys, in order to foster goodwill and loyalty, as a location to solicit potential investors and as a secure location for conspiratorial meetings.

38.     Defendant ROTHSTEIN and other co-conspirators associated with affluent and politically connected individuals in order to lure wealthy investors into the "Ponzi" scheme.

39.     Defendant ROTHSTEIN and other co-conspirators associated with well known sports figures and politicians, in public forums and elsewhere, in order to gain greater notoriety and to create the appearance of wealth and legitimacy.  Such acts were calculated in part to enhance defendant ROTHSTEIN's ability to solicit potential investors in the "Ponzi" scheme.

40.     Defendant ROTHSTEIN and other co-conspirators used funds derived from the "Ponzi" scheme to maintain the appearance of affluence and wealth, by purchasing expensive real and personal property, in order to convince potential investors of the legitimacy of RRA and of the purported investment opportunities.  Defendant ROTHSTEIN purchased expensive real property, personal property, business interests, vessels, vehicles and other indicia of success and wealth.

All in violation of Title 18, United States Code, Section 1962(d).

13

**COUNT 2**
(Money Laundering Conspiracy, 18 U.S.C. §1956(h))

1.      The General Allegations and paragraphs 5 through 40 of Count 1 of the Information are realleged and incorporated herein by reference.

2.      TD Bank, N.A., (hereinafter referred to as TD Bank) was a commercial bank with branch offices in thirteen (13) states, including a branch office in Weston, Florida.  The executive offices of TD Bank were located in Portland, Maine and Cherry Hill, New Jersey.  Defendant ROTHSTEIN and RRA maintained approximately thirty-eight (38) bank accounts at TD Bank, which were utilized during the course of the "Ponzi" scheme.

3.      Gibraltar Private Bank and Trust (hereinafter referred to as Gibraltar Bank) was a commercial bank with seven (7) branch offices, including a branch office in Fort Lauderdale, Florida.  Defendant ROTHSTEIN and RRA maintained at least four (4) bank accounts at Gibraltar Bank, which were utilized during the course of the "Ponzi" scheme.

4.      From in or about 2005 and continuing thereafter through in or about November 2009, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

SCOTT W. ROTHSTEIN,

did knowingly conspire, confederate, and agree with persons known and unknown to the United States Attorney, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, that is:

> i. to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, with the intent to promote the carrying on of said specified unlawful activities, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial

14

transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

ii. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

iii. to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, which property having been derived from a specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 3
(Mail and Wire Fraud Conspiracy, 18 U.S.C. §1349)

1.  The General Allegations and paragraphs 5 through 40 of Count 1 of the Information

are realleged and incorporated herein by reference.

2.  From in or about 2005 and continuing thereafter through in or about November 2009,

in Broward County, in the Southern District of Florida and elsewhere, the defendant,

### SCOTT W. ROTHSTEIN,

did knowingly combine, conspire, confederate, and agree with other persons known and unknown

to the United States Attorney to commit offenses against the United States in violation of Title 18,

United States Code, Sections 1341 and 1343, that is:

15

i. to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and causing to be delivered certain mail matter by any private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1341

ii. to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud and to obtain money and property from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals and sounds, for the purpose of executing the scheme, in violation of Title 18, United States Code, Section 1343.

THE PURPOSE AND OBJECT OF THE CONSPIRACY

3.      The purpose and object of the conspiracy was to enrich defendant ROTHSTEIN and

his co-conspirators by illegally obtaining money from investors and converting the investors' money

to their own use and benefit through the operation of the above-described "Ponzi" scheme.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 4 and 5**
(Wire Fraud, 18 U.S.C. §1343)

1.      The General Allegations and paragraphs 5 through 40 of Count 1 of the Information

are realleged and incorporated herein by reference.

2.      On or about the dates enumerated as to each count below, at Broward and Miami-

Dade Counties, in the Southern District of Florida, and elsewhere, the defendant,

SCOTT W. ROTHSTEIN,

did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud

and to obtain money and property from others by means of materially false and fraudulent pretenses,

16

representations, and promises, knowing that such pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme, transmitted and caused to be transmitted certain wire communications in interstate and foreign commerce, as more particularly described below:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 4 | December 2, 2008 | Interstate wire transfer sent from TD Bank to Gibraltar Bank |
| 5 | October 16, 2009 | Interstate wire transfer sent to TD Bank from JP Morgan Chase |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Information are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendant has an interest pursuant to 7(c)(2) and 32.2(a), Federal Rules of Criminal Procedure. Forfeiture is being sought pursuant to the provisions of Title 18, United States Code, Sections 1963(a), 982(a) and 981(a)(1)(C), as made applicable hereto by Title 28, United States Code, Section 2461.

2.      Upon conviction of the offense of RICO Conspiracy set forth in Count 1 of the Information, the defendant, SCOTT W. ROTHSTEIN, shall forfeit to the United States the following property:

i. Any interest acquired or maintained pursuant to Section 1962;

ii. Any interest in, security of, claim against, or property or contractual rights of any kind affording a source of influence over, the

17

enterprise described in the Information which was established, operated, controlled and conducted pursuant to Title 18, United States Code, Section 1962; and

iii. Any property constituting or derived from proceeds obtained directly and indirectly from racketeering activity pursuant to Title 18, United States Code, Section 1962.

3.     Upon conviction of the offense of Money Laundering Conspiracy set forth in Count 2 of the Information, the defendant, SCOTT W. ROTHSTEIN, shall forfeit to the United States all property, real or personal, involved in or traceable to the offense which property shall include:

i.     all money and other property that was the subject of each transaction, transportation, transmission and transfer in violation of Section 1956(h);

ii.    all commissions, fees and other property constituting proceeds obtained as a result of those violations; and

iii.   all property used in any manner and part to commit and to facilitate the commission of those violations.

4.     Upon conviction of the offense of Conspiracy to Commit Mail Fraud and Wire Fraud and to Commit Wire Fraud as set forth in Counts 3, 4, and 5 of the Information, the defendant, SCOTT W. ROTHSTEIN, shall forfeit to the United States, all property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

5.     The property subject to forfeiture, pursuant to Title 18, United States Code, Sections 1963, 982(a)(1) and 981(a)(1)(C), includes but is not limited to:

18

A.    A sum of money equal to $1,200,000,000 in United States currency.

B.    **Real Properties ("RP"):**

(RP1)  2307 Castilla Isle, Fort Lauderdale, Florida,  hereafter also referred to as "Defendant RP1," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as Lauderdale Shores Reamen Plat 15-31 B Lot 2 Blk 5 with a Folio Number of 5042 12 13 0210;

(RP2)  2308 Castilla Isle, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP2," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Lauderdale Shores Reamen Plat 15-31 B Lot 2 Blk 4 with a Folio Number of 5042 12 13 0020;

(RP3)  2316 Castilla Isle, Fort Lauderdale, Florida,  hereafter also referred to as "Defendant RP3," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Lauderdale Shores Reamen Plat 15-31 B Lot 3 & Lot 4 W ½ Blk 4 with a Folio Number of 5042 12 13 0030;

(RP4)  30 Isla Bahia Drive, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP4," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Isla Bahia 47-27 B Lot 63 with a Folio Number of 5042 13 16 0640;

(RP5)  29 Isla Bahia Drive, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP5," includes all buildings, improvements, fixtures, attachments and easements

found therein or thereon, and is more particularly described as: Isla Bahia 47-27 B Lot 35 with a Folio Number of 5042 13 16 0360;

(RP6)  350 SE 2nd Street, Unit 2840, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP6," includes that portion of the condominium,  improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: 350 Las Olas Place Condo Unit 2840 with a Folio Number of 5042 10 AN 1490;

(RP8)  2133 Imperial Point Drive, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP8," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Imperial Point 1 Sec 53-44 B Lot 11 Blk 22 with a Folio Number of 4942 12 07 2020;

(RP9)  2627 Castilla Isle, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP9," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: Lauderdale Shores Reamem Plat 15-31 B Lot 22 Blk 5 with a Folio Number of 5042 12 13 0380;

(RP10) 10630 NW 14th Street, Apt. 110, Plantation, Florida, hereafter also referred to as "Defendant RP10," includes that portion of the condominium/townhome, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: OPTIMA VILLAGE 1-"C" CONDO UNIT 201 BLDG 2 with a Folio Number of 4941 31 AC 0110;

(RP11) 227 Garden Court, Lauderdale by the Sea, Florida, hereafter also referred to as "Defendant RP11," includes that portion of the buildings, improvements, fixtures,

attachments and easements found therein or thereon, and is more particularly described as: SILVER SHORES UNIT A 28-39 B POR of Lot 4, BLK 5 DESC AS TO BEG AT SE COR SAID LOT 4, N 79.37 W 37.75, S 79.37, E 35.75 TO POB AKA: UNIT E MARINA VILLAGE TOWNHOMES 227GARDEN with a Folio Number of 4943 18 24 0050;

(RP12) 708 Spangler Boulevard, Bay 1, Hollywood, Florida, hereafter also referred to as "Defendant RP12," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: HARBOR VIEW 10-5 B PORTION OF LOTS 1 & 2 BLK 2 DESC AS COMM 25 S OF NE COR OF LOT 2 ON E/L, W 20.52 ALG S/R/W/L OF ST RD 84, S 15.72 TO POB, S 7.25, E 12.59, S 24.40, W 29.92, N 7.66, W 31.74, N 24.00, E 49.07 TO POB AKA: BAY 1 PORTSIDE with a Folio Number of 5042 23 28 0010;

(RP13) 1012 East Broward Boulevard, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP13," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: BEVERLY HEIGHTS 1-30 B LOT 1 W 100, LOT 2 W 100 BLK 17 with a Folio Number of 5042 11 07 0540;

(RP14) 950 N Federal Highway, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP14," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: 31-48-43 S 150 OD FOL DESC, BEG INTER E R/W/L ST RD 5, N TO POB with a Folio Number of 4843 31 00 0401;

(RP15) 350 Las Olas Boulevard, Commercial Unit 2, Fort Lauderdale, Florida, hereafter also referred to as "Defendant RP15," includes all portion of that condominium, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as: 350 LAS OLAS PLACE COMM CONDO UNIT CU2 with a Folio Number of 5042 10 AP 0020;

(RP16) 361 SE 9 Lane, Boca Raton, Florida hereafter also referred to as "Defendant RP16," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon;

(RP17) 1198 N Old Dixie Highway, Boca Raton, Florida hereafter also referred to as "Defendant RP17," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon;

(RP18) 1299 N Federal Highway, Boca Raton, Florida hereafter also referred to as "Defendant RP18," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon;

(RP19) 151 East 58 Street, Apartment 42D, New York, New York hereafter also referred to as "Defendant RP19," includes all portion of that condominium, improvements, fixtures, attachments and easements found therein or thereon;

(RP20) 11 Bluff Hill Cove Farm, Narragansett, Rhode Island hereafter also referred to as "Defendant RP20," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon;

(RP21)  15 Bluff Hill Cove Farm, Narragansett, Rhode Island hereafter also referred to as "Defendant RP21," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon;

(RP22) 353 4 Ave., Unit 12-H, Brooklyn, NY hereafter also referred to as "Defendant RP22," includes all portion of that condominium, improvements, fixtures, attachments and easements found therein or thereon;

(RP23) 290 W 11th St #1C, NY, NY hereafter also referred to as "Defendant RP23," includes all portion of that condominium, improvements, fixtures, attachments and easements found therein or thereon; and

(RP24) Versace Mansion/Casa Casuarina-10% Ownership hereafter also referred to as "Defendant RP24," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon;

C.     **Vehicles and Vessels ("VV")**:

(VV1) 1990 Red Ferrari F40 Coupe, VIN: ZFFMN34A5L0087066;

(VV2) 2009 White Bentley Convertible, VIN: SCBDR33W29C059672;

(VV3) 2008 Yellow McLaren Mercedes Benz SLR, VIN: WDDAK76F98M001788;

(VV4) 2007 Black Limousine Ford Expedition, VIN: 1F1FK15557LA59223;

(VV5) 2009 Red Ferrari 430 Spider, VIN: ZFFEW59A380163011;

(VV6) 2007 Silver Rolls Royce Convertible, VIN: SCA1L68557UX23044;

(VV7) 2006 Silver Hummer H1, VIN: 137PH84396E220665;

(VV8) 2008 Cadillac Escalade, VIN: 1GYEC63858R234458;

(VV9) 1967 Red Convertible Corvette, VIN: 194677S104745;

(VV10) 2009 Black Bugatti Veyron EB 16.4, VIN: VF9SA25C28M795153;

(VV11) 2008 Blue Rolls Royce Drophead Convertible, VIN: SCA2D68528UX16071;

(VV17) 2007 87' Warren, Hull # WAR87777B707;

(VV18) 33' Aquariva, Hull # XFA33R74G405;

(VV19) 2009 11' Yamaha Jet Ski, Hull # YAMA3661I809;

(VV20) 2009 11' Yamaha VS, Hull # YAMA3626I809;

(VV21) 2009 11' Yamaha VS, Hull #YAMA2679G809;

(VV22) 1999 55' Sea Ray 540 Sundancer, SERY001899;

(VV23) 2009 Yamaha Jet Ski, Hull # YAMA4288K809; and

(VV 24) 2010 White Lamborghini lp-670sv, VIN: ZHWBU8AHXALA03837.

D.     **Tangibles ("T")**

(T1)    304 pieces of jewelry, watches, necklaces and earrings seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T2)    16 DuPont Lighters seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T3)    3 pieces sports memorabilia seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T4)    $271,160 in United States currency seized on or about Monday, November 9, 2009 from the residence of Scott and Kimberly Rothstein;

(T5)    $1,500 in United States currency, seized on about Wednesday, November 4, 2009, from the office of Scott W. Rothstein at the law firm of Rothstein, Rosenfeldt and Adler, P.A.;

(T6)   $30,000 in American Express Gift Cards to the attention of Scott Rothstein, obtained from UPS on or about November 12, 2009;

(T7)   $50,000 in American Express Gift Cards to the attention of Scott Rothstein, obtained from UPS on or about November 13, 2009;

(T8)   5 additional watches being voluntarily turned over to the United States; and

(T9)   Guitar collection of Scott W. Rothstein, located at the residence of Scott and Kimberley Rothstein, valued between $10,000 and $20,000.

E.    **Bank Accounts ("BA")**

(BA1) Fidelity Investments Stock Account, in the name of Scott W. Rothstein, valued at approximately $1,263,780;

(BA2) Gibraltar Bank account 50010085, in the approximate amount of $484,900.68;

(BA3) Gibraltar Bank account 50010093, in the approximate amount of $53,448.51;

(BA4) Gibraltar Bank account 50012053, in the approximate amount of $71,793.06;

(BA5) Gibraltar Bank account 50015214, in the approximate amount of $995,521.42;

(BA6) Bank account 17878021181992322000187 at Banque Populaire, Morocco, in the name of Scott Rothstein, in the approximate amount of $12,000,000;

(BA7) Bank account at Banque Populaire, Morocco, in the name of Ahnick Khalid, up to the amount of $2,000,000;

(BA8) Bank account at Banque Populaire, Morocco, in the name of Steve Caputi, up to the amount of $1,000,000;

(BA9) Toronto Dominion Bank, N.A. account 6860291266 in the name of Rothstein Rosenfeldt Adler, P.A. which, on or about November 11, 2009, contained the approximate amount of $54,021.27;

(BA10) Toronto Dominion Bank, N.A. account 6861011556 in the name of Rothstein Rosenfeldt Adler, P.A. which, on or about November 11, 2009, contained the approximate amount of $10,085.00;

(BA11) Toronto Dominion Bank, N.A. account 6860420923 in the name of Rothstein Rosenfeldt Adler, P.A, Attorney Trust Account 3, which, on or about November 11, 2009, contained the approximate amount of $720,892.08;

(BA12) Toronto Dominion Bank, N.A. account 6860422200 in the name of DJB Financial Holding, which, on or about November 11, 2009, contained the approximate amount of $64,970.00;

(BA13) Toronto Dominion Bank, N.A. account 6860755757 the name of RRA Sports and Entertainment LLC, which, on or about November 11, 2009, contained the approximate amount of $10,490.10;

(BA14) Toronto Dominion Bank, N.A. account 6860755781 in the name of RRA Goal Line Management, LLC, which, on or about November 11, 2009, contained the approximate amount of $25,216.27;

(BA15) Toronto Dominion Bank, N.A. account 6861077714 in the name of Rothstein Rosenfeldt Adler, P.A.,  which, on or about November 11, 2009, contained the approximate amount of $20,080.00.

**F.**     **Business Interests ("BI")**

(BI1)    Stock certificates, if issued, or the beneficial interest in such shares, of 50,000 shares of capital stock, in Gibraltar Private Bank & Trust, a federally chartered stock savings association, purchased in or about September 2009 by GBPT, LLC, a Delaware Limited Liability Company, by its manager, Bahia Property Management, LLC, a Delaware Limited Liability Company, by its co-manager, Scott W. Rothstein;

(BI2)    Scott W. Rothstein's equity interest in QTask;

(BI3)    Scott W. Rothstein's equity interest in Broward Bank of Commerce;

(BI4)    Scott W. Rothstein's equity interest in Bova Ristorante;

(BI5)    Scott W. Rothstein's equity interest in Bova Cucina;

(BI6)    Scott W. Rothstein's equity interest in Bova Prime;

(BI7)    Scott W. Rothstein's equity interest in Café Iguana, Pembroke Pines, Florida;

(BI8)    Scott W. Rothstein's equity interest in Cart Shield USA, LLC;

(BI9)    Scott W. Rothstein's equity interest in Renato Watches;

(BI10) Scott W. Rothstein's equity interest in Edify LLC;

(BI11) Scott W. Rothstein's equity interest in V Georgio Vodka;

(BI12) Scott W. Rothstein's equity interest in Sea Club;

(BI13) Scott W. Rothstein's equity interest in North Star Mortgage;

(BI14) Scott W. Rothstein's equity interest in Kip Hunter Marketing;

(BI15) Scott W. Rothstein's equity interest in RRA Sports and Entertainment, LLC;

(BI16) Scott W. Rothstein's equity interest in Versace Mansion/Casa Casuarina, including 10 year Operating Agreement with 2 ten year options;

(BI17) Scott W. Rothstein's equity interest, and licensing rights, in Alternative Biofuel Company;

(BI18) Scott W. Rothstein's equity interest in RRA Goal Line Management;

(BI19) Scott W. Rothstein's equity interest in Iron Street Management, LLC;

(BI20) Scott W. Rothstein's equity interest in, and loan to, Africat Equity IG Decide;

(BI21) Scott W. Rothstein's equity interest in, and rents derived from 1198 Dixie LLC;

(BI22) Scott W. Rothstein's equity interest in, and rents derived from 1299 Federal LLC;

(BI23)  Promissory Note by Uniglobe in favor of Scott W. Rothstein;  and

(BI24) All equity interest held by or on behalf of Scott W. Rothstein, in the following corporations and entities:

     a.      29 Bahia LLC;

     b.      235 GC LLC;

     c.      350 LOP#2840 LLC;

     d.      353 BR LLC;

     e.      10630 #110 LLC;

     f.      708 Spangler LLC;

     g.      1012 Broward LLC;

     h.      1198 Dixie LLC;

     I.      1299 Federal LLC;

     j.      2133 IP LLC;

     k.      15158 LLC;

     l.      AANG LLC;

m.    AAMG1 LLC;

n.    AAMM Holdings;

o.    ABT Investments LLC;

p.    Advanced Solutions;

q.    Bahia Property Management LLC;

r.    Boat Management LLC;

s.    BOSM Holdings LLC;

t.    BOVA Prime LLC;

u.    BOVA Restaurant Group LLC;

v.    The BOVA Group LLC;

w.    BOVA Smoke LLC;

x.    BOVCU LLC;

y.    BOVRI LLC;

z.    Broward Financial Holdings, Inc.;

aa.   CI07 LLC;

ab.   CI08 LLC;

ac.   CI16 LLC;

ad.   CI27 LLC;

ae.   CSU LLC;

af.   D & D Management & Investment LLC;

ag.   D & S Management and Investment LLC;

ah.   DJB Financial Holdings LLC;

29

ai.     DYMMU LLC;

aj.     Full Circle Fort Lauderdale LLC;

ak.     Full Circle Trademark Holdings LLC;

al.     GHW1 LLC;

am.     IDNL GEAH LLC;

an.     ILK3 LLC;

ao.     IS Management LLC;

ap.     JRCL LLC;

aq.     Judah LLC;

ar.     Kendall Sports Bar;

as.     Kip Hunter Marketing LLC;

at.     NF Servicing LLC;

au.     NRI 11 LLC;

av.     NRI 15 LLC;

aw.     NS Holdings LLC;

ax.     PRCH LLC;

ay.     PK Adventures LLC;

az.     PK's Wild Ride Ltd;

ba.     Rothstein Family Foundation;

bb.     RRA Consulting Inc.;

bc.     RRA Goal Line Management LLC;

bd.     RRA Sports and Entertainment LLC;

be.  RSA 11th Street LLC;

bf.  RW Collections LLC;

bg.  S & KEA LLC;

bh.  Scorh LLC;

bi.  Tipp LLC;

bj.  VGS LLC;

bk.  The Walter Family LLC;

bl.  Walter Industries LLC;

bm.  WPBRS LLC;

bn.  WAWW;

bo.  WAWW 2 LLC;

bp.  WAWW 3 LLC;

bq.  WAWW 4 LLC;

br.  WAWW 5 LLC;

bs.  WAWW 6 LLC;

bt.  WAWW 7 LLC;

bu.  WAWW 8 LLC;

bv.  WAWW 9 LLC;

bw.  WAWW 10 LLC;

bx.  WAWW 11 LLC;

by.  WAWW 12 LLC;

bz.  WAWW 14 LLC;

ca.     WAWW 15 LLC;

cb.     WAWW 16 LLC;

cc.     WAWW 17 LLC;

cd.     WAWW 18 LLC;

ce.     WAWW 19 LLC;

cf.     WAWW 20 LLC;

cg.     WAWW 21 LLC;

ch.     WAWW 22 LLC;

ci.     JB Boca M Holdings LLC;

and

G.     **Contributions ("C"),** hereinafter collectively referred to as "the defendant contributions:"

(C1)   $6,000 in campaign contributions made to Alex Sink and voluntarily offered, and turned over, to the United States on behalf of Alex Sink;

(C2)   $40,000 in campaign contributions to Republican Party of Florida, "Florida" account and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C3)   $10,000 in campaign contributions to Republican Party of Florida, "Federal" account and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C4)   $90,000 in campaign contributions to Republican Party of Florida and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C5)   $5,000 in campaign contributions to Republican Party of Florida by Rothstein business entity known as WAWW and voluntarily offered, and turned over, to the United States by the Republican Party of Florida;

(C6)   $800,000 Charitable Donation to Joe DiMaggio Children's Hospital, which hospital voluntarily advised the United States of the donation from the Rothstein Family Foundation, for the purpose of facilitating forfeiture;

(C7)   $1,000,000 Charitable Donation to Holy Cross Hospital, which hospital voluntarily advised the United States of the donation from the Rothstein Family Foundation, for the purpose of facilitating forfeiture;

(C8)   $9,600 in campaign contributions to Governor Charlie Crist, voluntarily offered, and turned over, to the United States by the office of Charlie Crist; and

(C9)   All funds voluntarily turned over to the United States (IRS/FBI), since in or about October 28, 2009, in response to publicity regarding Scott W. Rothstein.

6.     If any of the property described above as being subject to forfeiture, as a result of any act and omission of the defendant -

i.   cannot be located upon the exercise of due diligence;

ii.  has been transferred or sold to, or deposited with, a third party;

iii. has been placed beyond the jurisdiction of the court;

iv.  has been substantially diminished in value; or

v.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), and pursuant to Title 21, United States Code, Section 853(p), made applicable hereto by Title 18, United

33

States Code, Section 982(b), and pursuant to Rule 32.2 Fed. R. Crim. P., to seek forfeiture of any

other property of said defendant up to the value of the forfeitable property described above.

All pursuant to Title 18, United States Code, Section 1963, Title 18, United States Code,

Section 982(a)(1) and Title 18, United States Code, Section 981(a)(1)(C) made applicable through

Title 28, United States Code, Section 2461; and the procedures outlined at Title 21, United States

Code, Section 853.


JEFFREY H. SLOMAN
ACTING UNITED STATES ATTORNEY


PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY


JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY


LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA                    CASE NO. _____

vs.

SCOTT W. ROTHSTEIN                          **CERTIFICATE OF TRIAL ATTORNEY***

_____ Defendant. _____/
                                            **Superseding Case Information:**

**Court Division**: (Select One)            New Defendant(s)         Yes _X__        __No
                                            Number of New Defendants _____
___  Miami  ____  Key West                  Total number of counts   _____
_X_  FTL    ____  WPB     ____  FTP

    I do hereby certify that:

    1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of
        probable witnesses and the legal complexities of the Indictment/Information attached hereto.

    2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this
        Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act,
        Title 28 U.S.C. Section 3161.

    3.  Interpreter:    (Yes or No)    _____
        List language and/or dialect   _____

    4.  This case will take   _0__   days for the parties to try.

    5.  Please check appropriate category and type of offense listed below:
        (Check only one)                            (Check only one)

        I    0 to 5 days           _X__             Petty      _____
        II   6 to 10 days          _____           Minor      _____
        III  11 to 20 days         _____           Misdem.    _____
        IV   21 to 60 days         _____           Felony     _____
        V    61 days and over      _____

    6.  Has this case been previously filed in this District Court? (Yes or No)    _No___
        If yes:
        Judge: _____        Case No. _____
        (Attach copy of dispositive order)
        Has a complaint been filed in this matter?    (Yes or No)    No___
        If yes:
        Magistrate Case No.                 _____
        Related Miscellaneous numbers:      _____
        Defendant(s) in federal custody as of _____
        Defendant(s) in state custody as of _____
        Rule 20 from the  _____        District of _____

    Is this a potential death penalty case? (Yes or No)    _No___

    7.  Does this case originate from a matter pending in the U.S. Attorney's Office prior to
        April 1, 2003?  _____ Yes  _X__ No

    8.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to
        April 1, 1999?  _____ Yes  _X__ No
        If yes, was it pending in the Central Region?    _____ Yes    _____ No

    9.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior
        to October 14, 2003?  _____ Yes  _X__ No

    10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to
        May 18, 2003?  _____ Yes  _X__ No

    11. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior
        to September 1, 2007?  _____ Yes  _X__ No

                                            _____
                                            Lawrence D. LaVecchio
                                            ASSISTANT UNITED STATES ATTORNEY
                                            Florida Bar No. A005500030

*Penalty Sheet(s) attached

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **SCOTT W. ROTHSTEIN**

Count #: 1    **18 U.S.C. § 1962(d)**; RICO Conspiracy;

**\* Max.Penalty**:    20 years imprisonment, $250,000 fine

Count #: 2    **18 U.S.C. § 1956(h)**; Conspiracy to Commit Money Laundering;

**\* Max.Penalty**:    20 years imprisonment, $500,000 fine or twice the value of the property
involved in the transaction.

Count #: 3    **18 U.S.C. § 1349**; Conspiracy to Commit Mail Fraud and Wire Fraud;

**\* Max.Penalty**:    20 years imprisonment, $250,000 fine

Counts #: 4-5    **18 U.S.C. §§ 2; 1343;** Wire Fraud

**\* Max.Penalty**:    20 years imprisonment, $250,000 fine

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special
assessments, parole terms, or forfeitures that may be applicable.