UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60331-CR-COHN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SCOTT W. ROTHSTEIN,

    Defendant.
_____/

## DETENTION ORDER

Pursuant to 18 U.S.C. § 3142(f), on December 1, 2009, the Court held a hearing to determine whether Defendant Scott W. Rothstein should be detained prior to trial. Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds that no condition or combination of conditions will reasonably ensure the appearance of Defendant as required. Therefore, it is hereby **ORDERED** that Defendant Scott W. Rothstein be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. The defendant is charged by information with engaging in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), a money-laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and a mail and wire fraud conspiracy, in violation of 18 U.S.C. § 1349, and wire fraud, in violation of 18 U.S.C. § 1343. The United States seeks detention on the basis of risk of flight, estimating Defendant's Guidelines range at 360 months to life in prison, an estimate that Defendant

does not contest at this time.

2. Title 18, United States Code, Section 3142(g)(2), requires the Court to consider the weight of the evidence against the defendant. Here, the weight of the evidence is significant. The United States has proffered, and Defendant has chosen not to contest, the following allegations at this time:

According to the United States, Defendant engaged in racketeering activity consisting of wire fraud, mail fraud, and money laundering, resulting in $1.2 billion in criminal proceeds to Defendant and his law firm, Rothstein Rosenfeldt Adler ("RRA"), which the Government described as the "enterprise" for purposes of the racketeering charges. More specifically, the Government asserted that from roughly 2005 until November, 2009, Defendant engaged in fraudulent activities, including a scheme whereby he purported to provide investors with an opportunity to purchase confidential settlement agreements allegedly entered into by clients of RRA with companies attempting quietly to settle whistle-blower and employment claims against them. No such settlement agreements actually existed.

By way of specific example, the United States alleged that Defendant told one investor that if he paid $375,000 up front to cover the settlement payment for the alleged company defendant, the investor would receive three monthly payments of $150,000 each, for a total payment of $450,000 within three months of making his investment. According to the Government, this works out to an APR of 171% per year.

In fact, however, the purported settlement agreement investment opportunity was a Ponzi scheme, the Government explained. Defendant would pay earlier investors' "returns" on their investments with monies contributed by later victims of the scheme.

In addition to the alleged settlement agreement fraud, the United States also outlined a

scheme whereby Defendant allegedly advised a client that his law firm was representing that he had won a $23 million judgment, when, in fact, the client had had a $500,000 judgment entered against him. According to the Government, Defendant told his client that the client had to post $57 million in bonds over a period of years to obtain the $23 million. To support this charade, Defendant allegedly prepared false and fraudulent orders signed by a federal circuit judge, a federal district judge, and a federal magistrate judge.

As law enforcement began closing in on the scheme in late October, 2009, the Government alleged, Defendant chartered a jet to Morocco and wired $16 million to a bank account in that country. Additionally, Defendant left the United States with $400,000 to $500,000 in cash. He subsequently returned to the United States in November. Based on the Government's factual proffer, particularly in view of Defendant's decision not to contest the facts as asserted by the Government, the evidence against Defendant is significant.

3. The pertinent history and characteristics of the Defendant, of which Sections 3142(g)(3)(A) and (B) require a review, also support pretrial detention. Although Defendant is a United States citizen who has resided in South Florida for approximately 33 years and has family ties to the area, Defendant has recent travel to Morocco, as outlined above, as well 2009 travel to the Bahamas and St. Barts Island. Moreover, the Moroccan travel involved the concurrent wire transfer of $16 million to outside the United States, and the removal of $400,000 to $500,000 in United States currency from the United States, all at a time when law enforcement was allegedly closing in on Defendant. Setting aside the money involved in the Moroccan trip, Defendant is alleged to have taken a total of approximately $1.2 billion. Although the Government has indicated that it has recovered several assets, it has not at this time accounted for substantial portions of the money,

which continues to be missing and potentially available to Defendant to use should he decide to attempt to flee.

Additionally, Defendant is alleged to have prepared at least three fraudulent federal court orders, purportedly signed by three different federal judges. The Government further alleges that in the course of the charged criminal activity, Defendant fabricated other fraudulent documents, such as fraudulent bank records and settlement agreements. Defendant's alleged proficiency in creating and willingness to employ fraudulent documents contribute to the flight risk that Defendant poses. Thus, while Defendant's voluntary return from Morocco weighs in favor of pretrial release, his initial flight with millions of dollars, as well as Defendant's alleged plentiful use of fraudulent official documents in furtherance of the scheme, the outstanding monies derived from the scheme, and the lengthy prison sentence Defendant faces if convicted heavily weigh in favor of pretrial detention.

4. In short, considering the factors articulated by 18 U.S.C. §3142(e), I find, based on a preponderance of the evidence (as well as clear and convincing evidence), that Defendant poses a serious risk of flight. I further specifically find that no conditions or combination of conditions reasonably will ensure Defendant's appearance as required. 18 U.S.C. § 3142(e).    5   .  Accordingly, the Court hereby directs:

(a) That Defendant be detained without bond and be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

(b) That Defendant be afforded reasonable opportunity for private consultation with counsel; and

(c) That, on order of a court of the United States or on request of an attorney for the

Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 1st day of December, 2009.

ROBIN S. ROSENBAUM
United States Magistrate Judge

Copies to:   Counsel of Record
             Pretrial Services (FTL)