UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA

v.                                                          Case No. 09-60331-CR-COHN

SCOTT W. ROTHSTEIN

_____/

## CHAPTER 11 BANKRUPTCY TRUSTEE'S REPLY TO  GOVERNMENT'S RESPONSE [D.E.23]

Herbert Stettin ("Stettin" or "Trustee"), the Chapter 11 Trustee of Rothstein Rosenfeldt

Alder, P.A. ("RRA" or "Debtor"), replies (the "Reply") to the *Government's Response in*

*Opposition to Chapter 11 Bankruptcy Trustee's Motion to Modify The Protective Order and To*

*Authorize Turnover of 8 Accounts*[1] [D.E. 23] (the "Response").   In support of his motion

[D.E.17] (the "Motion") and in opposition to the Response, the Trustee respectfully states as

follows:

### PRELIMINARY STATEMENT

1.      The Trustee supports the Government's efforts to prosecute any person who is

involved with a financial crime. The Trustee does not wish to impede the on going prosecution

of Mr. Rothstein.  The Trustee remains committed to the goal of working collaboratively with

the United States to maximize the distributions to all victims of Mr. Rothstein's misconduct,

including the creditors of RRA. However, as a court appointed fiduciary Stettin has duties and

obligations that are directly impacted by the Government's actions with respect to the use of its

---

[1] The term "Accounts" shall refer to the accounts listed at paragraph 13(a)-(h) of the Motion [D.E.17].

forfeiture powers in this case. At the same time, the Trustee has strong legal and factual arguments that support the turnover of the Accounts.[2]

## BACKGROUND

2.     On November 10, 2009, four petitioning creditors commenced an involuntary chapter 11 case against RRA in the United States Bankruptcy Court in and for the Southern District of Florida (Case No. 09-34791-BKC-RBR; the "Bankruptcy Case"). [Bankruptcy Case D.E 1]. The Bankruptcy Case was assigned to the Honorable Judge Raymond B. Ray. The automatic stay, 11 U.S.C. 362(a), became applicable at that time.

3.     Judge Ray entered an Order for Relief in the Bankruptcy Case on November 30, 2009 [Bankruptcy Case D.E. 66]. Herbert Stettin was appointed the Chapter 11 Trustee of RRA [Bankruptcy Case D.E. 35 & 55].

4.     On November 9, 2009, the United States commenced civil forfeiture proceedings(09-cv-61780-WJZ) ("Civil Forfeiture Case") against various Rothstein and RRA assets. The Civil Forfeiture Case is pending before Judge Zloch. On November 23, 2009, and again on November 29, 2009, the United States filed Amended Complaints in the Civil Forfeiture Case [Civil Forfeiture Case D.E. 14 and 19].

5.     On November 16, 2009, Rothstein consented to the forfeiture of several assets and agreed to transfer what title he had in the assets to the Government. [D.E.17 exhibit C]. The signed Stipulation and Settlement Agreement was filed in the Civil Forfeiture case on December 3, 2009 [Civil Forfeiture Case D.E. 20]. The Stipulation and Settlement Agreement does not include the Accounts.

---

[2] The Trustee does not waive any claim to any other property that the Government has seized or may hereafter seize or seek to seize and he expressly reserves all of his rights.

6.      The Government's position in respect of certain Accounts is ambiguous. On November 20, 2009, the Government sent correspondence to the Trustee and other parties, advising that it "is not pursing [the TD Bank Trust accounts][3] through the indicated warrants, the United States, by this "release," does not waive any future rights or interest it may have, under any statute, with respect to the indicated accounts." [D.E. 17, exhibit C]. Yet, some of the TD Bank Trust accounts are also subject to the Protective Order. Accordingly, it is unclear whether the Government is now changing its position and asserting rights in certain accounts that it had previously stated it would not be pursuing.

7.      On December 1, 2009, the defendant in this case, Rothstein, was charged by way of Information with several violations of federal law, including RICO conspiracy, money laundering conspiracy, and wire and mail fraud.

8.      On December 1, 2009 Stettin filed an adversary proceeding, Case No. 09-02478-BKC-RBR-A (the "Sub Con Adversary") in the Bankruptcy Court, seeking, among other things, to substantively consolidate Rothstein and the other named defendants with and into the Debtor. [Sub Con Adversary D.E.1]. The Trustee also filed an emergency Motion for a Preliminary Injunction ("Injunction Motion") [Sub Con Adversary D.E.2]. Judge Ray held a hearing on the Injunction Motion on Thursday, December 3, 2009. At the hearing, counsel for the Government appeared and the Bankruptcy Court ordered that the Trustee submit a proposed form of order after all parties, including the Government, reviewed the proposed form of order. On Sunday December 6, 2009, while the proposed form of order in respect of the Injunction Motion had been circulated by counsel for the Trustee and was being considered by the parties, including the Government, the United States filed its *ex-parte* Motion for Protective Order [D.E. 12] before

---

[3] The TD Bank accounts referred to in the letter that are also the subject of the Protective Order and the Motion [D.E. 17] are, as identified in the in Protective Order: BA9, BA10, BA11 and BA 15.

3

this Court. On Monday, December 7, 2009, this Court entered its Protective Order. [D.E.13] (the "Protective Order").

9.      This Court's Protective Order states that "This Protective Order shall remain in full force and effect until further order of this Court." Protective Order at paragraph H.

## MEMORANDUM OF LAW

### (i) The Practical Considerations of the Government's Proposed Course of Action

10.     Before turning to the Government's Response it is important to note a key practical consideration of the Government's position that all property seized is to be used to make restitution to the alleged victims of Rothstein's alleged criminal conduct. This however is too narrow a view of the practical realities of this case. The Trustee has various viable and legitimate fraudulent transfer claims (the "Fraudulent Transfer Claims") against the investor-victims who received distributions from any RRA titled bank account.

11.     In reality, this means that each and every person or entity to whom the Government would or may distribute restitution proceeds could have to repay some or all of the restitution proceeds to the Bankruptcy Estate, and then wait in line with other creditors to receive a distribution in accordance with applicable bankruptcy law priorities. This outcome is inevitable if this Court, perhaps in collaboration with the Bankruptcy Court, does not help- now- to craft procedures to efficiently administer forfeited assets and reconcile claims of investor and non-investor victims.

12.     The Trustee urges the Court to consider Judge Stanton's words in *SEC v. Madoff*, 2009 WL 980288, (S.D.N.Y. April 10, 2009), wherein he echoes Judge Easterbrook's opinion that "[a]lthough 21 U.S.C. 853(n)(1) allows the Attorney General to use forfeited assets for restitution, it does not create a comprehensive means of collecting and distributing assets.

Bankruptcy would have made it pellucid that certain creditors cannot enjoy priority over other victims and reap a profit while the defendant's other creditors go begging." *Id* at *2 (internal citations and brackets omitted). Stettin, as bankruptcy Trustee will use his avoidance powers to "clawback" preferential and fraudulent transfers in order to ensure that all victims (investor and non-investor alike) will be treated equitably as dictated by the Bankruptcy Code.

13.     The Trustee also submits that it is more cost effective for all parties involved to reach a comprehensive, cooperative and collaborative solution. Once again, Judge Stanton's observations are instructive: he noted that the Attorney General, under his statutory authority "might consider saving administrative costs by delegating forfeited property to the bankruptcy estate." *Id.* In addition Judge Stanton noted that any concern about an increase in administrative costs or delay in distribution to victims as result of the use of the bankruptcy system is "speculative and outweighed by the benefits to Mr. Madoff's victims of a Bankruptcy Trustee's orderly and equitable administration of his individual estate." *Id.* These concerns are further mitigated in this case, as the Trustee and his professionals assure this Court and Government that they will work with the Government to insure a fair and transparent process for managing bankruptcy administrative expenses and ultimately subject all such expenses to judicial review.

14.     Judge Easterbrook has highlighted the problems with using the forfeiture statute to resolve the economic issues raised by imploded ponzi schemes, he noted:

> Everything would have been clearer had the United States initiated an involuntary bankruptcy proceeding against Frykholm. That not only would have brought to the fore § 548 of the Bankruptcy Code but also would have provided a superior way to marshal Frykholm's remaining assets and distribute them to her creditors. Although § 853(n)(1) allows the Attorney General to use forfeited assets for restitution, it does not create a comprehensive means of collecting and distributing assets. Bankruptcy would have made it pellucid that [a creditor] cannot enjoy any priority over the other victims and cannot reap a profit while Frykholm's other creditors go begging.

> Moreover, bankruptcy would have enabled the trustee to recoup the sums distributed to the first generation of investors, who received $5 million or so against $ 2.5 million paid in. Those payments could have been reclaimed under the trustee's avoiding powers and made available to all of the bilked investors.

*United States v. Frykholm*, 362 F.3d 413, 417 (7th Cir. 2004).

15.     Accordingly, the Trustee submits that all interests are better advanced by utilizing the bankruptcy laws and procedures to address the economic issue of liquidation of assets, reconciliation of claims and distribution of proceeds for victims of Mr. Rothstein's misconduct. *See Motion* [D.E. 17] at paragraph 16.

(ii)    The Trustee's Motion Is Not Barred by Statute Or The Statute is Unconstitutional

16.     The Government asserts that pursuant to 18 U.S.C. §1963(i) and 21 U.S.C 853(k) the Trustee is barred "from challenging the United States with respect to the forfeiture, during the time that a criminal case is pending."

17.     The Trustee has not intervened asserting his rights under 21 U.S.C. 853(n) or 18 U.S.C. 1963(l). The Trustee filed his Motion asking this Court modify its own Order [D.E. 13 as amended by D.E. 16]. The Court's own Order, at paragraph H, provides the impetus for the Trustee's Motion.

18.     Moreover, the Trustee asserts that the *ex-parte* procedure utilized by the Government to obtain the Protective Order is unconstitutional because it violates the requirements of due process of the 5th Amendment of the Constitution of the United States.

19.     In *United States v. Kaley*, 579 F.3d 1246 (11th Cir. 2009), Judge Tjoflat, in his concurrence, laid out the due process concerns implicated by the very procedure that the Government has employed here. He noted that the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner upon the

6

deprivation of liberty or property." *Id* at 1262 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). He further stated that under general circumstances the government needs to provide notice and some sort of hearing prior to the deprivation, but that in "extraordinary situations" the notice and hearing may be postponed until after the deprivation. *Id* at 1262-63.

20.     In *Kaley*, Judge Tjoflat discussed the procedural distinction between a protective order entered before and after an indictment had been returned. Section 853(e)(1)(B) requires a hearing in order to obtain a pre-indictment protective order, however the statute is silent as to whether a post indictment hearing is required. *Id* at 1265. In such cases Judge Tjoflat applied "the general due process requirements" to determine that a such a hearing be held. In coming to this conclusion Judge Tjoflat examined three relevant concerns: (1) the private interest in a prompt hearing; (2) the risk of erroneous deprivation without a prompt hearing; (3) the government interest in delaying the hearing until trial. *Id* at 1265.

21.     With respect to the private interest, the decision in *United States v. Bailey*, 419 F.3d 1208 (11th Cir. 2005), affirms that criminal defendants retain an interest in forfeitable property. *Bailey* 419 F.3d at 1213-1214. Moreover, "there is no unheard-of provision for immediate, undecreed, secret vesting of title in the United States." *Id* at 1213. Accordingly, the Accounts, all of which are titled in the name of RRA— not Rothstein -- are and remain property of RRA, and upon the filing of the bankruptcy on November 10, 2009, became property of the RRA bankruptcy estate. The Government's seizure of the Accounts and the funds therein, through an *ex-parte* motion and order deprives the RRA bankruptcy estate of its lawful interest in the Accounts without adequate due process.

22.     With respect to the second factor, the Government is depriving the RRA bankruptcy estate of its interest in the Accounts without a hearing or an opportunity to challenge

2530485-1

its probable cause evidence. Judge Tjoflat noted that "without a prompt hearing, probable cause rests, initially, on the grand jury's having found probable cause before returning an indictment and, then, on the district court's finding of probable cause, both of which findings were made on the Government's *ex parte* showing. Neither procedure significantly reduced the risk of an erroneous deprivation." *Kaley* 579 F.3d at 1266. Judge Tjoflat further states that "in some cases the court may treat the indictment standing alone, as establishing probable cause." *Id* at 1267. In *Kaley*, unlike this case, after the defendant challenged the probable cause the magistrate judge conducted an in *camera* review of the evidence and made a probable cause determination. However, the defendants did not have an opportunity to challenge this evidence and Judge Tjoflat noted that the "*ex parte* determination is insufficient to justify delaying the post-restraint hearing for long after the restraint is imposed." *Id* at 1267.

23.     In this case, the defendant has waived the need for an indictment, [D.E.4] therefore this case is proceeding merely upon an information filed by the Government. The Government's sole evidence of probable cause to support the Protective Order [D.E. 13 as amended by D.E. 16] is an affidavit that reincorporates the allegations made in the in information. [D.E. 12-2]. Finally, the Government's Protective Order deprives a third party from its lawful interest without the most rudimentary opportunity to challenge the probable cause determination. This is a deprivation of due process rights. Moreover, in this case, the Government's concerns that assets will be dissipated or lost are misplaced. The Trustee is not merely a third party creditor seeking "his pound of flesh;" rather he is a fiduciary who was selected by the Office of the United States Trustee (a branch of the Department of Justice), supported by the Official Committee of Unsecured Creditors (made up of the largest investor-victims of Rothstein), and approved by and under the supervision of the Bankruptcy Court. Mr.

2530485-1

8

Stettin could not lawfully discharge his duties if he were to dissipate assets. In sum, assets of the RRA bankruptcy estate are being withheld from the statutory fiduciary with responsibility for them without sufficient due process.

24.     Finally, the Government's interest in delaying any determination of third party rights in the Accounts until trial is not implicated. There is little impact, if any, in determining the issues raised in the Motion and this Reply on the underlying criminal case.

### (iii) The Bankruptcy Estate Retains a Legal Interest in the Accounts

25.     The RRA bankruptcy estate does have an identifiable and protectable interest in the Accounts. Each of the Accounts is titled in the name of "Rothstein Rosenfeldt Adler P.A.," the Debtor. In fact, it is the Government's current interest in these Accounts that is questionable. As the *Bailey* and *Kaley* Eleventh Circuit cases make clear, notwithstanding the fact that a forfeiture takes place at the time of wrongdoing, the Government does not perfect title in forfeited assets until there is an order of condemnation. *Bailey* 419 F.3d at 1212-1213; *Kaley*, 579 F.3d at 1265. Moreover, those cases are clear that the defendant or other third party's holding title retain his or its respective interest in the forfeitable property. *Kaley* 579 F.3d at 1265; *Bailey* 419 F.3d at 1212-1213.

26.     Since RRA has an interest in the Accounts, by virtue of their title being in RRA at the time of the bankruptcy filing, title to these Accounts passed into the RRA bankruptcy estate by operation of 11 U.S.C. §541.

### (iv) The Relation Back Doctrine is Inapplicable

27.     In its Response, the Government places great emphasis on the relation back doctrine, which is codified at 21 U.S.C. §853(c). This reliance is misplaced because the Accounts contain commingled fraudulent funds with untainted funds. Sections 853(c) and

2530485-1

9

1963(c), by their terms, do not apply to substitute assets under 21 U.S.C. § 853(p) and 18 U.S.C.§1963(m).

28.    In *United States v. Voigt*, 89 F.3d 1050 (3d Cir. 1996), the Third Circuit noted that "Where the property involved in a money laundering transaction is commingled in an account with untainted property, however, the government's burden of showing that money in the account or an item purchased with cash withdrawn therefrom is "traceable to" money laundering activity will be difficult, if not impossible, to satisfy." *Voigt*, 89 F.3d at 1087; *accord United States v. Swanson*, 394 F.3d 520, 529 (7th Cir. 2005)(noting that "the presence of one illegal dollar in an account does not taint the rest—as if the dollar obtained from fraud were like a drop of ink falling into a glass of water.").   The Third Circuit went a step further and stated that in "a situation where $500,000 is added to an account containing only $500, such that one might argue that the probability of seizing "tainted" funds is far greater than the government's preponderance burden (50.1%), such an approach is ultimately unworkable." The solution, according to the Third Circuit, is to "give effect to the substitute asset provision. *See* 18 U.S.C. § 982(b)(1) (incorporating 21 U.S.C. § 853(p)(5)). Thus, once a defendant has commingled laundered funds with untainted funds--whether in a bank account or in a tattered suitcase--such that they cannot be divided without difficulty, 21 U.S.C. § 853(p)(5), the government must satisfy its forfeiture judgment through the substitute asset provision." *Id.*

29.    The Government's own papers acknowledge that the money in the Accounts has been commingled. In its Response, the Government states "[t]he accounts in question appear to have been funded, in whole or **in part**, by Ponzi funds." [D.E. 23 at p.7] (emphasis added).   In the same pleading the Government states that the Accounts were "replete with fraud funds." [D.E. 23 at 5].   What the Government has not said and cannot say is that the Accounts are

2530485-1

*exclusively* funded with "tainted" or fraudulent money. Accordingly, the Government must, as the Third Circuit notes, turn to the substitute asset provisions of 21 U.S.C. §853(p).

30.    The law appears to be settled that substitute assets are not subject to a post indictment pretrial restraining order. In *United States v. Kramer*, 2006 U.S. Dist. LEXIS 89034 (S.D.N.Y. Dec. 8, 2006) the Government seized, pursuant to a civil seizure warrant, slightly less than $2 million from a bank account of a defendant who was later charged and indicted in connection with an international money transmitting business. The Government opted to then pursue the forfeiture criminally and obtained a superseding criminal indictment. The Government also filed two *lis pendens* on real property owned by the defendant as substitute assets that the Government would use to satisfy any potential forfeiture complaint. The court in *Kramer* held that the law is "clear that the substitution of untainted property to satisfy forfeiture cannot take place until after a forfeiture order is entered." *Kramer* 2006 U.S. Dist. LEXIS 89034 at *19(collecting cases).   Accordingly, the *Kramer* court ordered the proceeds returned to the defendant and notices of *lis pendens* removed. *Id* at 40-41.

31.    Similarly, the Second Circuit, in *United States v. Gotti*, 155 F.3d 144 (2d Cir. 1998) held that substitute assets are not subject to a post indictment pretrial restraining order. *Gotti* 155 F.3d at 149-50 (agreeing with the Fifth Circuit's interpretation in *United States v. Floyd*, 992 F.2d 498 (5th Cir. 1993) that substitute assets are not subject to pretrial restraint under 21 U.S.C. §853(e)(1)).

32.    Accordingly, the Government cannot use the broad relation back doctrine to capture the Accounts that the Trustee seeks turned over. These Accounts should be released and returned to the Trustee.

> (iv) The Court Has The Discretion To Condition Any Pretrial Detention And Subsequent Forfeiture

33.     Pursuant to 18 U.S.C. §1963(e) "Upon conviction of a person under this section, the court shall enter a judgment of forfeiture of the property to the United States and shall also authorize the Attorney General to seize all property ordered forfeited *upon such terms and conditions as the court shall deem proper*." The statute clearly and unequivocally gives the Court the discretion to establish the terms and conditions of the forfeiture after the conviction of the defendant. By necessary implication, the Court must also be able to set the terms and conditions relating to any seizure of the property prior to any conviction. Based on the practical considerations in this case and as Judges Easterbrook and Stanton have noted, it would be most efficient for this Court to exercise its power and order that the Accounts be released and turned over to the Trustee so that they may be administered in accordance with the Bankruptcy Code.

WHEREFORE, Herbert Stettin the Chapter 11 Trustee of Rothstein Rosenfeldt Adler P.A., respectfully requests that this Court enter an order granting the relief sought in his Motion [D.E.17]; and granting any other relief that is deemed just and appropriate.

Dated:  December 31, 2009              Respectfully Submitted,

                                       BERGER SINGERMAN, P.A.
                                       *Counsel for Chapter 11 Trustee*
                                       200 S. Biscayne Blvd., Suite 1000
                                       Miami, FL 33131
                                       Telephone: (305) 755-9500
                                       Facsimile: (305) 714-4340


                                       By:   /s/ Paul Steven Singerman
                                             Paul Steven Singerman
                                             singerman@bergersingerman.com
                                             Florida Bar No. 378860
                                             Isaac Marcushamer
                                             imarcushamer@bergersingerman.com
                                             Florida Bar No. 0060373

2530485-1

I HEREBY CERTIFY that a true and correct copy of this motion has been served electronically to subscribers of the CM/ECF system and via U.S. Mail, postage prepaid, to those listed on the attached service list, this 31[th] day of December, 2009.

By: _____/s/ Isaac M. Marcushamer_____
      Isaac M. Marcushamer

2530485-1

## SERVICE LIST FOR CRIMINAL CASE
### CASE NO.: 09-60331-CR-COHN

Marianella Morales, Esquire
Authorized Agent For Joining Creditors
Avenida Francisco de Miranda
Torre Provincial "A"
Piso 8
Caracas, Venezuela
**(VIA EMAIL)**

John H. Genovese, Esq. **(VIA CM/ECF)**
Robert F. Elgidely, Esq.
Theresa M.B. Van Vliet, Esq.
Genovese Joblove & Battista, PA
Bank Of America Tower at International Place
100 S.E. 2nd Street
Suite 4400
Miami, Florida 33131
Phone: (305) 349-2300
Fax (305) 349-2310

Kendall Coffey, Esq. **(VIA EMAIL)**
Coffey Burlington,
Office in the Grove
Penthouse
2699 South Bayshore Drive
Miami, Florida 33133
kcoffey@coffeyburlington.com

The Honorable Herbert M. Stettin
One Biscayne Tower
Suite 3700
Two South Biscayne Boulevard
Miami, Florida 33131

John G. Bianco, Esq. **(VIA CM/ECF)**
John M. Mulli, Esquire
Tripp Scott
110 Southeast Sixth Street
Fifteenth Floor
Fort Lauderdale, Fl. 33301
jgb@trippscott.com

Alison W. Lehr **(VIA EMAIL, CERTIFIED AND FED EX))**
Assistant United States Attorney
99 N.E. 4th Street
7th Floor
Miami, Florida 33132
Phone: (305) 961-9176
Fax: (305) 536-7599
Alison.Lehr@usdoj.gov

Stuart A. Rosenfeldt, Esq. **(VIA EMAIL)**
Rothstein Rosenfeldt Adler, PA
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, Florida 33301
srosenfeldt@rra-law.com

Jeffrey R. Sonn, Esq. **(VIA EMAIL)**
Sonn & Erez, PLC
Broward Financial Center
500 E. Broward Boulevard
Suite 1600
Fort Lauderdale, Florida  33394
Phone: (954) 763-4700
Fax (954) 763-1866
jsonn@sonnerez.com

Office of the US Trustee **(Email and Fedex)**
51 Southwest First Avenue
Suite 1204
Miami, Florida  33130

Thomas Tew, Esq. **(VIA EMAIL)**
Lynn Maynard Gollin, Esq.
Tew-Cardenas, LLP
Four Seasons Tower
15th Floor
1441 Brickell Avenue
Miami, Florida 33131-3407
tt@tewlaw.com
lmg@tewlaw.com

2503347-1

Conrad & Scherer, LLP **(VIA EMAIL)**
633 South Federal Highway
Fort Lauderdale, FL 33301
Tel: 954-462-5500
bs@conradscherer.com
JSilver@conradscherer.com

Michael D. Seese, Esq. **(VIA EMAIL)**
Hinshaw & Culbertson, LLP
1 E Broward Blvd Ste 1010
Ft Lauderdale, Florida 33301
Tel: 954.4677900
Fax: 954.4671024
mseese@hinshawlaw.com

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114
**(Via U.S. Mail)**

Internal Revenue Service
Special Procedures - Insolvency
7850 SW 6th Court
Plantation, FL 33324
Tel.: (954) 423-7300
Fax.: (305) 982-5406
**(Via Fedex)**

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, Fl 33130
Fax: (305) 530-7139
**(Via Fedex)**

Grant J. Smith, Esq. **(VIA EMAIL)**
Rothstein Rosenfeldt Adler, P.A.
401 East Las Olas Blvd
Suite 1650
Fort Lauderdale, FL 33301
gsmith@rra-law.com

United Healthcare
Dept. CH 10151
Palatine, IL 60055
**(Via US Mail)**

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906
**(Via Fedex)**

The Honorable Eric H. Holder, Jr.
Attorney General of the U.S.
950 Pennsylvania Avenue, NW Room 4400
Washington, DC 20530-0001
**(Via Certified Mail and Fedex)**

Honorable Jeffrey H. Sloman,
Acting U.S. Attorney
99 NE 4th Street
Miami, Fl 33132
**(Via Certified Mail and Fedex)**

Daniel Mink
Ovadia Levy
c/o Renato Watches, Inc
14051 NW 14th Street
Sunrise, Florida 33323
**(Via Fedex)**

William George Salim, Jr. **(VIA CM/ECF)**
Moskowitz Mandell & Salim
800 Corporate Dr Ste 510
Fort Lauderdale, Florida 33334
wsalim@mmsslaw.com
Tel: 954.491-2000
Fax: 954.4912051

USI **(VIA EMAIL)**
Attn: Anthony Gruppo
200 West Cypress Creek Road
Suite 500
Fort Lauderdale, FL 33309
Tel: 954-607-4000
Anthony.gruppo@usi.biz

Marc Nurik, Esq. **(VIA EMAIL and Fedex)**
1 East Broward Blvd
Suite 700
Fort Lauderdale, FL 33301
marc@nuriklaw.com

BAST AMRON LLP **(VIA CM/ECF)**
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905
bamron@bastamron.com
jbast@bastamron.com

Mark Bloom, Esq. **(VIA EMAIL)**
Greenberg Traurig, LLP
1221 Brickell Avenue
Miami, FL 33131
T 305.579.0500
F 305.579.0717
bloomm@gtlaw.com

Robert D. Critton, Esq. **(VIA EMAIL)**
Burman, Critton, Luttier & Coleman
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com

Roth & Scholl **(VIA EMAIL)**
Attn: Jeffrey C. Roth, Esq.
Attorneys For Creditor Blue
Capital Us East Coast Properties, L.P.
866 South Dixie Highway
Coral Gables, Fl 33146
Telephone: (305) 662-4141
jeff@rothandscholl.com

Rogers, Morris & Ziegler, LLP **(VIA EMAIL)**
1401 East Broward Blvd
Suite 300
Fort Lauderdale, FL 33301
Tel: (954) 462-1431
Fax: (954) 763-2692
mfbooth@rmzlaw.com

Arthur C. Neiwirth, Esq. **(VIA CM/ECF)**
One E. Broward Blvd., Suite 1400
Ft. Lauderdale, FL 33301
Tel: (954) 523-7008
Fax: (954) 523-7009
aneiwirth@qpwblaw.com

The Florida Bar **(VIA EMAIL)**
Adria E. Quintela, Esq.
Alan Anthony Pascal, Esq.
Lake Shore Plaza II
1300 Concord Terrace, Suite 130
Sunrise, FL 33323
aquintel@flabar.org
apascal@flabar.org

Micheal w. Moskowitz, Esq. **(VIA E-MAIL)**
800 Corporate Drive, Suite 500
Ft. Lauderdale, FL 33234
mmoskowitz@mmsslaw.com

Francis L. Carter, Esq. **(VIA E-MAIL)**
Katz Barron Squitero Faust
2699 S. Bayshore Drive, 7th Floor
Miami, Florida 33133
Tel: 305-856-2444
Fax: 305-285-9227
flc@katzbarron.com

Bradley S. Shraiberg, Esq. **(VIA EMAIL)**
2385 NW Executive Drive
Suite 300
Boca Raton, Florida 33431
Tel: 561-443-0800
Fax: 561-998-0047
bshraiberg@sfl-pa.com

Henry S. Wulf, Esq. **(VIA EMAIL)**
CARLTON FIELDS, P.A.
525 Okeechobee Blvd., Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368
E-Mail: hwulf@carltonfields.com

EMESS Capital, LLC  **(VIA EMAIL)**
c/o Bruce A. Katzen, Esq.
201 S. Biscayne Blvd., 17th Floor
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile: (305) 379-3428
E-Mail: bkatzen@klugerkaplan.com

Ira Sochet, Trustee  **(VIA EMAIL)**
Revocable Intervivos Trust of Ira Sochet
c/o Phil Hudson, Esq.
200 South Biscayne Blvd, Suite 3600
Miami, Florida 33130
Telephone: (305) 374-3330
Facsimile: (305) 374-4744
E-Mail: pmhudson@arnstein.com

Coquina Investments  **(VIA EMAIL)**
c/o Patricia A. Redmond, Esq.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3553
Facsimile: (305) 789-3395
E-Mail: predmond@stearnsweaver.com

Michael I. Goldberg, Esq. **(VIA EMAIL)**
Las Olas Centre -  Suite 1600
350 East Las Olas Blvd
Fort Lauderdale, FL 33301
Telephone: (305) 463-2700
Facsimile: (305) 463-2224
E-Mail: Michael.goldberg@akerman.com

Jeffrey Kaplan (**Via Certified Mail and Fedex**)
United States Attorney's Office
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, FL 33301-3002
Telephone:  (954) 356-7255 Ext. 3515
Facsimile:  (954) 356-7336
E-mail:  Jeffrey.kaplan@usdoj.gov

Lawrence D. LaVecchio (**Via Certified Mail and Fedex**)
United States Attorney's Office
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, FL 33301-3002
Telephone:  (954) 356-7255
Facsimile:  (954) 356-7336
E-mail:  Lawrence.lavecchio@usdoj.gov

Paul Schwartz (**Via Certified Mail and Fedex**)
United States Attorney's Office
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, FL 33301-3002
Telephone:  (954) 356-7255
Facsimile:  (954) 356-7336
E-mail:  Paul.schwartz@usdoj.gov

Grisel Alonso (**Via Certified Mail and Fedex**)
United States Attorney's Office
99 NE 4th Street
Miami, FL 33132
Telephone:  (305) 961-9176
Facsimile:  (305) 536-7599
E-mail:  Grisel.alonso@usdoj.gov