UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60331-CR-COHN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SCOTT W. ROTHSTEIN,

        Defendant.

_____/

## PLEA AGREEMENT

The United States of America and SCOTT W. ROTHSTEIN (hereinafter referred to as "the defendant") enter into the following agreement:

1.     The defendant agrees to plead guilty to the five count Information, which charges the defendant in Count 1 with a Racketeering Conspiracy, in violation of Title 18, United States Code, Section 1962(d); in Count 2 with Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h); in Count 3 with Conspiracy to Commit Mail Fraud and Wire Fraud, in violation of Title 18, United States Code, Section 1349; and in Counts 4 and 5 with Wire Fraud, in violation of Title 18, United States Code, Section 1343.

2.     The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "the Sentencing Guidelines") in an advisory capacity. The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable advisory guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea

has been entered.  The defendant is also aware that, under certain circumstances, the Court may

depart from the applicable advisory guideline range and impose a sentence that is either more severe

or less severe than the advisory guidelines range.  The Court is permitted to tailor the ultimate

sentence in light of other statutory concerns.  Knowing these facts, the defendant understands and

acknowledges that the Court has the authority to impose any sentence within and up to the statutory

maximum authorized by law for the offenses identified in paragraph 1 and that the defendant may

not withdraw the plea solely as a result of the sentence imposed.

3.      The defendant also understands and acknowledges that the Court may impose a

statutory maximum term of imprisonment of up to twenty years for each of the offenses set forth in

Counts 1 through 5, for a total of up to one hundred years, followed by a term of up to three years

of supervised release for each offense.  In addition to a term of imprisonment and supervised release,

the Court may impose a fine of up to $250,000.00 with respect to the offenses set forth in Counts

1, 3, 4, and 5, and may impose a fine with respect to the offense set forth in Count 2 of the greater

of $500,000.00 or twice the value of the property involved in the money laundering transactions.

4.      The defendant further understands and acknowledges that, in addition to any sentence

imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 with

respect to each of the offenses set forth in counts 1 through 5, for a total of $500.00, will be imposed

on the defendant, which will be paid by the defendant at the time of entry of this plea.

5.      The defendant further understands and acknowledges that, in addition to any sentence

imposed under paragraphs 3 and 4 of this agreement, that restitution may be imposed as part of that

sentence. The defendant agrees that for purposes of triggering the mandatory restitution provisions

of Title 18, United States Code, Section 3663A, the offenses to which the defendant is pleading

2

guilty under this agreement in this case are "offenses against property" and were "committed by fraud and deceit," as those terms are understood within Title 18, United States Code, Section 3663A(c)(1)(A)(ii). The defendant accordingly understands and acknowledges that as a result of his plea of guilty pursuant to the terms of the plea agreement in this case the Court may order that he pay restitution pursuant to the provisions of Title 18, United States Code, Sections 3663A and 3664. Promptly following the entry of his guilty plea, the defendant agrees to take all necessary steps to make the following property available, as partial satisfaction of any restitution order entered in this case: (a) all property subject to the post-Information Protective Order in this matter; and (b) all property identified in the Bill of Particulars for Forfeiture.

6.      The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraphs 3, 4 and 5 of this agreement, forfeiture may be imposed as part of that sentence. The defendant agrees to the forfeiture of all of his right, title and interest to all assets listed in the Information and listed in the Bill of Particulars, and/or their substitutes (hereinafter "the assets"), whether controlled individually or through defendant's wholly owned or partially owned corporations or third-parties, which are subject to forfeiture pursuant to Title 18, United States Code, Sections 1963, 982(a)(1) and/or 981(a)(1)(C). The defendant agrees to assist the United States in achieving forfeiture of the assets and agrees to assist the United States with forfeiture of same, such assistance to include truthful testimony, especially to the extent that the assets are in the names of corporations or other entities or individuals. The defendant knowingly and voluntarily waives any right to a jury trial or any other adversarial proceeding regarding the assets and waives any notification about forfeiture proceedings, whether administrative or judicial. The defendant further waives any statute of limitations with respect to the commencement of such forfeiture proceedings,

3

whether administrative or judicial.  The defendant also waives any defenses to the forfeiture, including any claim of excessive fine or penalty under the Eighth Amendment.  The defendant also agrees to waive any appeal of the forfeiture. The defendant further acknowledges that the property forfeited cannot, either in whole or in part, be used to satisfy any obligation the defendant may have for any federal, state or local taxes, interest and/or other penalties which may now exist or which may come into existence.

      7.     The Office of the United States Attorney for the Southern District of Florida (hereinafter "this Office") reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

      8.     The United States agrees that it will recommend at sentencing that the Court reduce by three levels the advisory sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.  However, the United States will not be required to make this sentencing recommendation if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement,

including but not limited to committing a state or federal offense or making false statements or misrepresentations to any governmental entity or official.

9.      The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10.     In the event that the applicable offense level is deemed by the Court to be 43 or above (life), the government agrees to not oppose a variance; however, the Government reserves the right to oppose any sentence recommended by the defendant.

11.     This agreement resolves the defendant's federal criminal liability in the Southern District of Florida growing out of any criminal conduct by the defendant known to the United States Attorney's Office for the Southern District of Florida as of the date of this plea agreement. Said provision does not prohibit potential prosecution for any acts of violence presently unknown to the United States.

5

12.    The United States agrees that it will not oppose defendant's request that the Court recommend to the Bureau of Prisons that the defendant be designated to the lowest security level facility deemed appropriate by the Bureau of Prisons.

13.    The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case.  Acknowledging this, and in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing.  The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b).  However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney.  The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

14.    The defendant further waives any right to file any motion or make any claim, whether under 28 U.S.C. §§2255, 2254, 2241, or any other provision of law, to collaterally attack his conviction, his sentence, or the manner in which sentence was imposed, unless the sentence exceeds the maximum permitted by statute.

15.     The defendant confirms that he is guilty of the offenses to which he is pleading guilty; that his decision to plead guilty is the decision that he has made; and that nobody has forced, threatened, or coerced him into pleading guilty.   The defendant affirms that he has discussed the matter of pleading guilty in the above-referenced cases thoroughly with his attorney. The defendant further affirms that his discussions with his attorney have included discussion of possible defenses that he may raise if the case were to go to trial, as well as possible issues and arguments that he may raise at sentencing. The defendant additionally affirms that he is satisfied with the representation provided by his attorney.  The defendant accordingly affirms that he is entering into this agreement knowingly, voluntarily, and intelligently, and with the benefit of full, complete, and effective assistance by his attorney. The defendant accordingly agrees that by entering into this agreement he

waives any right to file any motion or make any claim, whether under 28 U.S.C.§§2255, 2254, 2241, or any other provision of law, that contests the effectiveness of counsel's representation up to the time of the entry of his guilty plea.

16.     This is the entire agreement and understanding between the United States and the defendant.  There are no other agreements, promises, representations, or understandings, unless contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

JEFFREY H. SLOMAN
UNITED STATES ATTORNEY

Date: 1/25/10

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

Date: 1/25/10

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

Date: 25 Jan /10

LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

Date: 1/25/10

MARC NURIK
ATTORNEY FOR DEFENDANT

Date: 1/25/10

SCOTT W. ROTHSTEIN
DEFENDANT

8

STATEMENT OF FACTS

The United States of America and SCOTT W. ROTHSTEIN enter into the following stipulated statement of facts in support of the defendant's plea of guilty:

Had this case proceeded to trial, the government would have presented evidence which would have established beyond a reasonable doubt that from in or about 2005, through in or about November 2009, Defendant ROTHSTEIN conspired with persons known and unknown to the United States Attorney, to use the law firm, Rothstein, Rosenfeldt and Adler P.A. (hereinafter referred to as "RRA") as a criminal Enterprise in order to conduct a pattern of racketeering activity. Such pattern of racketeering activity included criminal acts which violated mail fraud, wire fraud, money laundering and conspiracy statutes.

The government would have presented evidence at trial which would have involved witness testimony and documentary and electronic evidence seized pursuant to a search warrant. The government's trial evidence would have established the following:

Defendant ROTHSTEIN was an attorney admitted to practice law in Florida. He was the Chief Executive Officer and Chairman of RRA. In or about 2005, Defendant ROTHSTEIN and other co-conspirators initiated a scheme to generate criminal proceeds through fraudulent acts. Defendant ROTHSTEIN induced investors through the use of false statements to loan money to himself and fictitious borrowers in return for promissory notes. He solicited bridge loans on behalf of purported clients of RRA, that is, he would falsely inform individuals that clients of RRA desired to borrow funds for undisclosed business deals and in return would agree to pay high rates of interest. Defendant ROTHSTEIN was aware that no such clients or requests for business financing actually existed.

Defendant ROTHSTEIN and co-conspirators also solicited investors to purchase purported

1

confidential settlement agreements. Such settlement agreements were falsely presented as having been reached between putative defendants based upon claims of sexual harassment and/or whistle-blower actions. The investors were falsely informed that such settlement agreements were pre-litigation and therefore there was no pending litigation or court oversight. Defendant ROTHSTEIN and other co-conspirators relied upon the purported success of RRA, the existence of actual RRA civil matters and his standing in the community to lure potential investors in order to convince them to make such investments. The investors were falsely informed that the confidential settlement agreements were available for purchase. The purported settlements were allegedly available in amounts ranging from hundreds of thousands of dollars to millions of dollars and could be purchased at a discount and repaid to the investors at face value over time. For instance, in or about late 2009, a potential investor was solicited by Defendant ROTHSTEIN and/or co-conspirators to purchase a purported settlement in the amount of $450,000. The settlement was alleged to be paid to the purported plaintiff in three installments of $150,000 each, over the course of three months. The payment schedule was alleged to insure the confidentiality of the settlement. The purported plaintiff allegedly had agreed to accept an immediate payment of $375,000 in satisfaction of the settlement agreement. In order to facilitate the scheme, the investor received a fraudulent settlement agreement which set forth the terms of the civil settlement, but the names of the purported plaintiff and defendant were excised due to the alleged confidentiality of the settlement.

The government would further establish that in order to facilitate and perpetrate the scheme, Defendant ROTHSTEIN and co-conspirators created false and fraudulent settlement agreements, bank statements, assignments of settlement agreements, sale and transfer agreements and personal guarantees, among other documents.

Defendant ROTHSTEIN and other co-conspirators falsely informed investors that the purported confidential settlements were either negotiated on behalf of clients of RRA or had been referred by other law firms. The investors were falsely informed that the purported settlements were based upon sexual harassment and/or whistle-blower (qui-tam) actions against corporate defendants.

Defendant ROTHSTEIN and other co-conspirators established and maintained trust accounts at several financial institutions in order to receive the investor funds and to give the appearance of legitimacy and security. False and fictitious trust account bank balance statements were created along with purported "lock letters." Such letters allegedly reflected that the funds in the trust accounts would be disbursed only to specific investors. Instead funds were disbursed among and between the various trust accounts and elsewhere by interstate wire transfers and other means in order to facilitate, promote and conceal the fraud, to launder the proceeds derived therefrom, and to enrich ROTHSTEIN and his co-conspirators. ROTHSTEIN and his co-conspirators created fraudulent on-line banking documents to further mislead investors and to facilitate the fraud.

Defendant ROTHSTEIN and co-conspirators also initiated and conducted a separate scheme to defraud clients of RRA in order to perpetuate the "Ponzi" scheme. Such clients had retained RRA to institute and file a civil lawsuit. Unknown to the clients, RRA settled the lawsuit and had obligated the clients to pay $500,000 to the defendant. In order to perpetrate the fraud and deceive the clients, defendant ROTHSTEIN created a false and fraudulent court order purportedly signed by a Federal District Court Judge which falsely alleged that the clients of RRA had prevailed in the lawsuit and were owed a judgement of approximately $23 million. The fraudulent court order also falsely stated that the defendant had transferred funds to the Cayman Islands for the purpose of secreting the assets.

Defendant ROTHSTEIN and other co-conspirators falsely advised the clients on several occasions that in order to recover the defendant's funds, they had to post bonds to be held in the RRA trust account. Defendant ROTHSTEIN and other co-conspirators fraudulently caused the clients to wire transfer a total of approximately $57 million over several years to a trust account controlled by defendant ROTHSTEIN, purportedly to satisfy the bonds. Defendant ROTHSTEIN and other co-conspirators were questioned by the clients as to the progress of the alleged lawsuit. In order to delay the return of funds to the clients, defendant ROTHSTEIN fraudulently created a false Federal court order purportedly issued by a United States Magistrate Judge ordering RRA to return the transmitted funds by a later date.

Defendant ROTHSTEIN and other co-conspirators utilized funds obtained through the "Ponzi" scheme to supplement and support the operation and activities of RRA, to expand RRA by the hiring of additional attorneys and support staff, to fund salaries and bonuses, and to acquire larger and more elaborate office space and equipment in order to promote the ongoing scheme and to enrich the personal wealth of persons employed by and associated with RRA.

Defendant ROTHSTEIN and other co-conspirators engaged in the below described conduct in order to facilitate the activities of the Enterprise and to conceal and promote the scheme to defraud investors.

Defendant ROTHSTEIN and other co-conspirators utilized funds illegally obtained through the "Ponzi" scheme to make political contributions to local, state and federal political candidates, in a manner designed to conceal the true source of such funds and to circumvent state and federal laws governing the limitations and contribution of such funds.

4

Defendant ROTHSTEIN and other co-conspirators distributed lavish gifts, including exotic cars, jewelry, boats, loans, cash and bonuses, to individuals and to members of RRA in order to engender goodwill and loyalty and to create the appearance of a successful law firm.

Defendant ROTHSTEIN and other co-conspirators made large charitable contributions to public and private charitable institutions, including hospitals and other legitimate charitable and nonprofit organizations, using funds derived from the "Ponzi" scheme. "Ponzi" scheme funds were also used to provide gratuities to high-ranking members of police agencies in order to curry favor with such police personnel and to deflect law enforcement scrutiny of RRA.

Defendant ROTHSTEIN and other co-conspirators utilized funds obtained through the "Ponzi" scheme in order to purchase controlling interests in restaurants located in the Southern District of Florida. Such restaurants were used in part as a mechanism to give gratuities to individuals, including politicians, business associates and attorneys, in order to foster goodwill and loyalty, as locations to solicit potential investors and as secure locations for conspiratorial meetings.

Defendant ROTHSTEIN and other co-conspirators associated with well known politicians, in public forums and elsewhere, in order to gain greater notoriety and to create the appearance of wealth and legitimacy. Such acts were calculated in part to enhance defendant ROTHSTEIN and other co-conspirators' ability to solicit potential investors in the "Ponzi" scheme.

Defendant ROTHSTEIN and other co-conspirators used funds derived from the "Ponzi" scheme to maintain the appearance of affluence and wealth, by purchasing expensive real and personal property, in order to convince potential investors of the legitimacy of RRA and of the purported investment opportunities. Defendant ROTHSTEIN purchased expensive real property, personal property, business interests, vessels, vehicles and other indicia of success and wealth.

5

The government's evidence would establish that Defendant ROTHSTEIN and co-conspirators, through the use of RRA as the criminal Enterprise, knowingly and intentionally engaged in the above-described pattern of racketeering activity in order to generate proceeds for their enrichment through various criminal activities, including mail fraud, wire fraud and money laundering. The government's evidence would establish that the activities of the Enterprise affected interstate commerce through the transmission of funds among and between financial institutions and across state boundaries, among other means.

The Enterprise maintained offices in Broward County, Florida, and elsewhere and the pattern of racketeering activity emanated from the Southern District of Florida.  Investors were solicited through wire and mail transmissions through the United States and elsewhere.  In order to further the fraud scheme, Defendant ROTHSTEIN and other co-conspirators caused to be transmitted wire communications, in interstate and foreign commerce, including an interstate wire transfer sent from TD Bank to Gibraltar Bank on or about December 2, 2008 and an interstate wire transfer sent to TD Bank from JP Morgan Chase on or about October 16, 2009. The proceeds derived from the "Ponzi" scheme were laundered through the accounts maintained at several financial institutions in order to promote, carry on and conceal the criminal activities of RRA.

Had the forfeiture portion of the case proceeded to trial, the government would have established, at least by a preponderance of the evidence, the standard of proof required for sentencing, that the properties listed for forfeiture in the forfeiture allegations of the Information and in the Bill of Particulars for Forfeiture, were properly sought for forfeiture because the defendant acquired or maintained an interest therein or were derived from proceeds obtained directly and indirectly through the commission of the above-described racketeering activity.  The government would have further established that the properties were involved in and/or were traceable to the

6

money laundering activity described above, and that such properties were also the proceeds of, or were derived from, the mail and wire fraud activity described above.

The undersigned hereby stipulate and agree that the aforesaid facts are true and correct and that they encompass all of the necessary elements to establish the guilt of the defendant to the charges of Conspiracy to Violate the RICO Act, in violation of Title 18, United States Code, Section 1962(d); Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h); Conspiracy to Commit Mail Fraud and Wire Fraud, in violation of Title 18, United States Code, Section 1349; and Wire Fraud, in violation of Title 18, United States Code, Section 1343.

JEFFREY H. SLOMAN
UNITED STATES ATTORNEY

Date: 1/25/10

PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

Date: 1/25/10

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

Date: 25 Jan 10

LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

Date: 1/25/10

MARC NURIK
ATTORNEY FOR DEFENDANT

Date: 1/25/10

SCOTT W. ROTHSTEIN
DEFENDANT