UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

UNITED STATES OF AMERICA

v.                                            Case No. 09-60331-CR-COHN

SCOTT W. ROTHSTEIN

_____/

**CHAPTER 11 BANKRUPTCY TRUSTEE'S MOTION TO REFER ALL THIRD PARTY CLAIMS TO THE UNITED STATES BANKRUPTCY COURT**

Herbert Stettin ("Stettin" or "Trustee"), the Chapter 11 Trustee of Rothstein Rosenfeldt Alder, P.A. ("RRA" or "Debtor"), requests that this Court enter an Order of Reference to the Bankruptcy Court to adjudicate all third party claims, including claims for restitution. The Trustee requests that this Court direct that the Bankruptcy Court hear the claims of any third parties asserting a superior legal interest to the criminal defendant in the properties subject to forfeiture. Under this proposal, the Bankruptcy Court would first decide whether the third party claims meet the requirements of 18 U.S.C. § 853(n) and if so, whether the properties are properly considered to be part of the Debtor's estate under 11 U.S.C. §541.[1] The Trustee further requests that this Court recognize the authority of the Bankruptcy Court to adjudicate all third party claims that are properly found to be part of the Debtor's estate within the framework of the

---

[1] In a forfeiture proceeding, the claims of third parties to forfeited property are determined by reference to property interests conferred by state law. *United States v. Shefton*, 548 F.3d 1360,1364 (11th Cir.2008)(citing *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007)). Bankruptcy Courts routinely apply non-bankruptcy law to determine whether a debtor's interest constitutes property of the estate under 11 U.S.C. §541(a). *See Bell-Tel Fed. Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350, 1353 (11th Cir. 2002)("Whether a debtor's interest constitutes property of the estate is a federal question. Nonetheless, the nature and existence of the [debtor's] right to property is determined by looking at state law."). A proceeding to determine property of the estate pursuant to 11 U.S.C. 541(a) is considered a core proceeding pursuant to 28 U.S.C. §157(b)(2)(E). *See Pixton v. B&B Plastics, Inc. (In re B&B Plastics)*, 2005 Bankr. LEXIS 2130, at * 8 (Bankr. S.D. Fla. 2005)(ruling, as core matter, whether certain funds held by an attorney were considered property of the debtor's estate). Thus, in determining whether an asset is property of the Debtor's estate, the Bankruptcy Court must apply the same state law property considerations as would apply in an ancillary forfeiture proceeding. The purpose of both proceedings is to determine the rights of competing parties to an asset at a particular point in time.

2608430-10

Bankruptcy Code, taking into appropriate consideration the interests of the victims of the fraud in receiving restitution, as well as the other creditors of the RRA Bankruptcy estate. As grounds for this motion, the Trustee states as follows:

## INTRODUCTION

The government and the Trustee share common interests in (1) maximizing the value of all assets, both those seized by the government and those currently part of the Debtor's estate; (2) maximizing the distribution to all investor victims of Rothstein's crimes, which victims are likely to comprise the overwhelming majority of the creditors of the Debtor's estate; and (3) making such distributions as efficiently and expeditiously as possible.[2]

Notwithstanding these common objectives, it has become apparent that there are fundamental conflicts between the role of the government in seeking to obtain the criminal forfeiture of properties belonging to criminal defendant Scott Rothstein and the efforts of the Trustee to marshal all assets to which RRA may have legal or equitable claims.[3]  Although the government may only forfeit the legal interest of the criminal defendant in a criminal forfeiture proceeding, the government has seized not only bank accounts titled in the name of RRA, but also real estate and other assets purchased with funds transferred directly from RRA's accounts.[4] *See United States v. Harris*, 246 F.3d 566, 575-76 (6th Cir. 2001)(noting that "once the property is forfeited, the government steps into the shoes of the defendant acquiring only the rights of the defendant at the time of the criminal acts, and nothing more."); *United States v. Lavin*, 942 F.2d 177, 185 (3rd Cir. 1991)(noting that under the relation-back doctrine, "the interest that the

---

[2] The Trustee has consistently advanced these interests. *See Motion to Modify* [D.E. 17].
[3] One court presiding over another law firm Ponzi scheme case has recently observed that "an under-appreciated evil of substantial frauds" is that the same assets are subjected to competing claims under the criminal and bankruptcy systems. *See United States v. Drier*, Case No. 09-cr. 085 *Memorandum Order* (S.D.N.Y. February 5, 2010). There, Judge Rakoff observed that "these inherent tensions are best addressed through coordination and cooperation by all concerned." *Id*
[4] On December 6, 2009, the United States moved this Court *ex-parte* for a protective order. [D.E. 12]. This Court entered its Protective Order on December 7, 2009, [D.E.13] (the "Protective Order").

government acquires when it steps into the defendant's shoes" may be defeated under certain circumstances by third parties).

The Trustee previously sought the turnover of eight RRA bank accounts legally titled in the name of the law firm as property of the Debtor under 11 U.S.C. § 541(a). See *Motion to Modify Protective Order and Authorize the United States Marshals Service to Turnover 8 RRA Bank Accounts* ("*Motion to Modify*")[D.E. 17]. The United States opposed the relief sought by the Trustee [D.E. 23] ("*Response to Motion to Modify*"). In its *Response to Motion to Modify*, the United States took the position that "to the extent that the Trustee seeks to have assets released from forfeiture, the Trustee must wait for the forfeiture ancillary proceedings". *See Response to Motion to Modify* D.E. 23 at p. 7. Based on the language of 18 U.S.C. § 1963 (l) and 21 U.S.C. §853(k)(1), this Court denied the Trustee's motion *without prejudice,* finding that third party claims to forfeited property could only be adjudicated in ancillary proceedings to be scheduled after defendant's conviction. *Order Denying Trustee's Motion to Modify* [D.E. 25].

That time has now come. On January 27, 2010, Scott Rothstein plead guilty to a five count Information charging him with a RICO conspiracy, a money-laundering conspiracy, a conspiracy to commit mail and wire fraud and two substantive counts of wire fraud. *Plea Agreement* [D.E. 69]. Prior to his plea, Rothstein also entered into a Stipulation and Settlement Agreement in which he agreed, on behalf of certain limited liability companies wholly owned by him, to transfer their interests in real and personal property to the government [D.E. 66-1]. At this juncture, the criminal procedure rules require that this Court enter a preliminary order of forfeiture "directing the forfeiture of specific property without regard to any third party's interest in all or part of it." *See* Fed. R. Crim. P. 32.2(2). Once a preliminary order of forfeiture is entered, the rules contemplate that third parties have an opportunity to file petitions asserting

their interests in the property to be forfeited. If such a third party claim is asserted, the court **must** conduct an ancillary proceeding. By order of reference, this Court may delegate the responsibility for conducting ancillary proceedings to the Bankruptcy Court.[5]

Notwithstanding the rules of criminal procedure, the government has not submitted a preliminary order of forfeiture to the Court and has recently announced that it may not do so at all. Instead, the government stated that "it is considering proceeding directly to restitution," manifesting its intent to bypass ancillary forfeiture proceedings altogether. *See Government's Response to Court's Inquiry Regarding Preliminary Order of Forfeiture* [D.E. 79] ("*Government Response to Court*"). The government's justification is that it seeks to avoid protracted litigation, to maximize the recovery for fraud victims and to ensure prompt restitution payments. The Eleventh Circuit has recently held that a third party with an interest in property based upon a constructive trust has standing to assert a claim to forfeited property in an ancillary criminal forfeiture proceeding. *See United States v. Shefton*, 548 F. 3d 1360 (11th Cir. 2008)(finding that fraud victim is entitled to the imposition of a constructive trust on forfeited property creating a superior legal interest to a criminal defendant in criminal forfeiture proceedings). The government correctly observes that such precedent would give third parties who can trace the use of their funds to one of the forfeited assets a right to assert a claim in ancillary forfeiture proceedings. In order to avoid the impact of the Eleventh Circuit's holding in *Shefton*, the government attempts to circumvent the rights of third parties entirely by "proceeding directly to restitution" – whatever that means.

---

[5] Pursuant to 28 U.S.C. §151 "[i]n each judicial district, the bankruptcy judges in regular active service shall constitute **a unit of the district court** to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court." 28 U.S.C. §151(emphasis added.)

The manner in which government proposes to "streamline" the restitution process appears to mean that the government seeks to distribute the seized property without any third party hearings and according to its unfettered discretion. While the criminal sentencing statutes mandate that a criminal defendant be required to return property to victims and to make restitution for their losses, *see* 18 U.S.C. §3663A, there is no comprehensive statutory scheme or procedural mechanism that sets forth how this should be done. Nor are there any provisions for judicial review of the restitution process. Indeed, while the government has taken the position that it intends to use the forfeited property to satisfy the defendant's restitution obligation, the criminal forfeiture laws do not provide a statutory mechanism for distribution. *See Government Response to Court* [D.E. 79] (stating that "[i]t is the government's intent to maximize recovery for the victims, as quickly as possible."). This Court has now required the government to explain the procedure it intends to employ and the statutory authority for its position. *See Order to Show Cause* [D.E. 81].

The government's position raises obvious due process concerns. *See United States v. Kaley*, 579 F. 3d 1246, 1263 (11th Cir. 2009)(J. Tjoflat concurring)(requiring prompt notice and hearing as a matter of due process where the government seizes property pursuant to the criminal forfeiture laws). Through the ancillary forfeiture proceedings, third parties are afforded their constitutional right to a hearing before being deprived of property to which they claim a legitimate interest. Pursuant to 21 U.S.C. §853(n)(2) and 18 U.S.C. § 1963(l), there are two general ways in which a third party who claims an interest in property subject to forfeiture may prevail over the government. The claimant may show that it has a legal right, title or interest that "was superior to any right, title, or interest *of the defendant* at the time of the commission of the acts which gave rise to the forfeiture" or that it is "a *bona fide* purchaser for value of the right,

title, or interest in the property and [the claimant was] at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. §853(n)(2)(emphasis added). The government does not obtain legal title to the forfeited property until the rights of the third parties are adjudicated. *See United States v. Bailey*, 419 F. 3d 1208 (11th Cir. 2005)(finding that the government's title to forfeited assets is not perfected until a judicial condemnation proceeding is held.). The government's proposal fails to take into account that third party rights must be adjudicated before title to the assets can be lawfully transferred. Plainly, the government cannot distribute property to victims that it does not own. While the government has a valid concern in avoiding protracted litigation and expediting the distribution process (a concern shared by the Trustee), the solution is not to ignore third party rights, but to litigate them in a forum where claims can be efficiently and definitively resolved while adequately protecting the due process rights of third parties.

Indeed, the Trustee has a viable and substantial claim to many if not all of the assets. Rothstein committed fraud by using bank accounts, including many titled in the name of and belonging to RRA.[6] *See Plea Agreement* [D.E. 69]; *Bill of Particulars* [D.E. 34] and *Motion for Protective Order* [D.E.12]. As the account holder, RRA and not Rothstein, is presumed to be the owner of the funds in the account. *See Cole v. Am. Capital Partners Ltd.*, 2009 U.S. Dist. LEXIS 122839, at *16 (S.D. Fla. December 14, 2009); *Bernal v. All American Inv. Realty, Inc.*, 2009 WL 586010 at *4 (S.D. Fla. March 6, 2009)(noting that for garnishment purposes "a bank deposit *prima facie* belongs to the person in whose name it stands."). Similarly, when money

---

[6] In the bankruptcy case, the Trustee filed a verified Complaint seeking to substantively consolidate all of the assets of Rothstein and his related business entities with and into the Bankruptcy estate based on, among other reasons, the fact that the business affairs of RRA, Rothstein and the Rothstein entities were inextricably intertwined and entangled. *See Stettin v. Rothstein* (*In Re Rothstein Rosenfeldt Adler, P.A.*), Case No.09-02478–RBR [D.E.1]. This action was abated at the request of the Trustee in light of the Protective Order entered in this case prohibiting any entities having an interest in the assets seized by the government from taking any action that could affect the title to those assets pending the resolution of the criminal forfeiture proceedings. [D.E.13]

was transferred into an RRA account from a third party, that money then presumptively was the property of RRA, and became property of the estate upon the filing of the Petition. At no time did Rothstein, individually, obtain title to the funds prior to RRA. To the extent that the Trustee, standing in the shoes of RRA, is able to trace funds from RRA titled bank accounts to assets, RRA is entitled to a constructive trust on those assets. These constructive trusts are superior to Rothstein's interest, and they also predate Rothstein's interest. Thus, under the forfeiture laws, the Trustee has a valid claim to all accounts held in the name of RRA and all assets that can be traced to an RRA account. Accordingly, the Trustee, and not the government, is the proper party to distribute the RRA assets.

Given the complex task involved in dismantling a sophisticated Ponzi scheme involving an operating law firm, the Trustee submits that the bankruptcy system is best equipped to marshal the debtor's assets and to resolve competing claims to the same properties. For the reasons more fully outlined below, the Trustee respectfully requests that all third party claims be referred to the Bankruptcy Court for resolution in accordance with the well-established rules and priorities established by the Bankruptcy Code.

## ARGUMENT

In its Order Denying the Trustee's Motion to Modify the Protective Order, this Court stated that it would consider at the appropriate time entering an order of reference to the Bankruptcy Court as to third party claims. *See Order Denying Without Prejudice Chapter 11 Trustee's Motion to Modify Protective Order and to Authorize Turnover of Eight Accounts* at p. 5 footnote 4 [D.E. 25]. As this Court previously recognized, "the Bankruptcy Code provides an excellent mechanism for marshaling assets and distributing them to creditors." *Id*. Indeed, the bankruptcy system offers a comprehensive and orderly process through which the fraud victims'

claims for restitution, the interests of RRA clients in the return of funds entrusted to the law firm and the claims of creditors for legitimate debts of RRA can best be addressed.

### The Bankruptcy System Adequately Protects the Fraud Victims' Interest in Restitution

The investor victims of Rothstein's fraud are by definition creditors of the debtor estate of RRA not only because their funds were paid into the firm's accounts, but also because their investments were guaranteed by RRA. The Bankruptcy Code provides a multitude of well-developed and Congressionally mandated protections for creditors. The most important is the proof of claim system. In order to have a claim to the assets of the debtor, a creditor only needs to file a timely proof of claim. The deadline to file a proof of claim in the RRA bankruptcy case is May 12, 2010. Pursuant to Fed. R. Bank. P. 3001(f), "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Additionally, pursuant to 11 U.S.C. §502(a), a claim that is properly filed "is deemed allowed unless a party in interest… objects." Thus, the Bankruptcy Code provides a clear, and simple mechanism to allow all victims of Rothstein to document and assert what damages they have suffered. Moreover any objection is resolved as a contested matter pursuant to Fed. R. Bankr. P. 9014, which incorporates many of the traditional civil discovery rules and protections. The process culminates with a ruling by the Bankruptcy Court which is appealable to the District Court.

The rights of the investor victims of Rothstein's crimes to restitution can be fully protected within the bankruptcy system. A plan proponent, subject to review and approval by the Bankruptcy Court, has the discretionary power to classify claims and to give similar claims priority over other types of creditor claims. *See Olympia & York Fla. Equity Corp. v. Bank of New York (In re Holywell)*, 913 F.2d 873, 880 (11th Cir. 1990). In fashioning a plan of

liquidation, the Trustee may recommend special provisions for certain classes of creditors who may be similarly situated. *See Chapter 11 In re Financial Federated Title & Trust Co.*, 99-26616-BKC-RBR [D.E.1097] (April 25, 2001)(Bankr. S.D. Fla. 2001)(separately classifying restitution claimants from general unsecured creditors). Thus, the Bankruptcy Court has the ability to recognize and give priority to the rights of crime victims to receive restitution as provided for under the federal criminal laws within the equitable framework of a bankruptcy case.

Importantly, the bankruptcy process provides the best means to insure that the investor creditors are treated equally to one another. The Trustee has a fiduciary duty to bring claims pursuant to 11 U.S.C. §§547, 548 and applicable provisions of Florida law to achieve fairness among creditors as mandated by Congress through the Bankruptcy Code. In order to achieve an equitable distribution to creditors, bankruptcy law gives the Trustee the power to recover certain assets transferred prior to the bankruptcy to ensure equality of treatment, claims that creditors would not ordinarily be able to bring. *In re Fultz*, 2004 Bankr. LEXIS 195, at *5 (Bankr. N.D. Fla. 2004). Thus, in the context of a Ponzi scheme bankruptcy case, the Trustee has the ability to bring avoidance claims against those investors who may have received a return, so that all investor victims are placed on a level playing field. That is, the Trustee has the ability to recoup or "claw back" funds paid out by RRA as a return to some investors, where such funds were originally derived from new monies paid in by other investors in the Ponzi scheme. For this reason, the Seventh Circuit noted that the Bankruptcy Code is superior to forfeiture statutes to effectuate a recovery for victims. Judge Easterbrook, writing for the court, noted:

> Everything would have been clearer had the United States initiated an involuntary bankruptcy proceeding against Frykholm. That not only would have brought to the fore § 548 of the Bankruptcy Code but also would have provided a superior way to marshal Frykholm's

> remaining assets and distribute them to her creditors.  Although §853(n)(1) allows the Attorney General to use forfeited assets for restitution, it does not create a comprehensive means of collecting and distributing assets.  Bankruptcy would have made it pellucid that [a creditor] cannot enjoy any priority over the other victims and cannot reap a profit while Frykholm's other creditors go begging. Moreover, bankruptcy would have enabled the trustee to recoup the sums distributed to the first generation of investors, who received $5 million or so against $ 2.5 million paid in.  Those payments could have been reclaimed under the trustee's avoiding powers and made available to all of the bilked investors.

*United States v. Frykholm*, 362 F.3d 413, 417 (7th Cir. 2004).

In contrast, the strict application of existing criminal forfeiture law can result in the anomaly that an investor victim who is able to allege a constructive trust by tracing his funds to a specific account or piece of property may be treated more favorably than an investor whose funds were commingled in different accounts or assets.  This was the result that would have occurred in *United States v. Ramunno*, 588 F. Supp. 2d 1360 (N.D. Ga. 2008) and 2009 WL 363910 (N.D. Ga. 2009) had the district court applied the analysis of *Shefton* to create a constructive trust to a claimant's lump sum investment of $2 million in a Ponzi scheme.  The district court in *Ramunno* refused to find a constructive trust based on the inequity of allowing one investor to recoup his entire losses while others would receive no recovery at all.  Indeed, the fact that *Ramunno* is now on appeal before the Eleventh Circuit (and subject to potential reversal based on *Shefton*) is the very reason the government has articulated for wanting to dispense with the ancillary criminal forfeiture proceedings altogether.

In sum, the Bankruptcy Code offers a principled, efficient and equitable means of preserving the investors' claims to restitution without ignoring the legitimate rights of other non-investor creditors.

**Bankruptcy Procedures Ensure the Fair and Equitable Distribution of a Debtor's Property**

In addition to the defrauded investors, there are other innocent victims of Rothstein's crimes who deserve compensation. This Court has already stated that it "is not unsympathetic to the rights of those clients of RRA who may have legitimate funds held in trust by RRA." *Order Denying Motion to Modify* [D.E.25] at p. 3 footnote 2. There is no doubt that a client whose money was held in a trust account and was then stolen by Rothstein is no less deserving of restitution than an investor who invested in a "too good to be true" scheme without sufficient diligence. The Bankruptcy Court has a critical role to play in distributing the assets of the law firm among its creditors according to an established hierarchy of claims. For this reason, the District Court Judge presiding over the SEC case in *SEC v. Madoff*, modified the asset freeze that had been applied to all Madoff's personal assets to allow his creditors to file an involuntary bankruptcy petition. *SEC v. Madoff*, 2009 WL 980288, (S.D.N.Y. April 10, 2009). In response to the government's argument that the bankruptcy process would only increase administrative costs and delay recovery to victims, Judge Stanton recognized, citing the reasoning of *Frykholm*, that the Bankruptcy Trustee was best situated to effect an "orderly and equitable administration of [Madoff's] estate." Here, this Court should avoid unfair discrimination between similarly situated creditors in an unsupervised restitution process by referring all third party claims to the Bankruptcy Court.

**The Bankruptcy Code Provides an Orderly Mechanism to Adjudicate Competing Claims**

The United States Supreme Court noted long ago that it "is the purpose of the Bankrupt Act to convert the assets of the bankrupt into cash for distribution among creditors…" *Williams v. United States Fidelity & Guaranty Co.*, 236 U.S. 549, 554 (1915); *accord In re Atlanta International Raceway, Inc.*, 513 F.2d 546, 550 (5th Cir.1975). Bankruptcy Judge Ray has

previously written that the bankruptcy process has "specialized capabilities of orderly liquidation" and that "bankruptcy is highly specialized field designed to convert non-liquid assets into cash and then distribute the cash in a prescribed manner." *In re 101 Monument Road*, 07-20345-BKC-RBR, Order Denying Motion to Dismiss [D.E.93] (Bankr. S.D. Fla. January 29, 2008).

Another key creditor protection is the chapter 11 plan confirmation process itself. There are several statutory requirements that a plan proponent must meet before a Bankruptcy Court will confirm the plan. The center piece of the confirmation process is the right of each creditor to vote on whether to accept the plan and the right of each creditor to challenge whether the plan meets the requirements of the Bankruptcy Code. *See* 11. U.S.C. §1128 (right to object to the plan and requiring the Bankruptcy Court to hold a hearing on any objections); 11 U.S.C. §1129 (listing the requirements for confirmation of a plan including that it must be "proposed in good faith and not by any means forbidden by law."). In the case of RRA, the Trustee will ultimately seek to file a liquidating plan to distribute the estate's assets to all holders of allowed claims according to the priorities set forth by Congress.

Moreover, there is precedent in this district -- for example in the Financial Federated Title and Trust, Inc case -- for a bankruptcy trustee to act as a Receiver for purposes of liquidating and distributing property seized by the government for forfeiture and restitution. *See United States v. Brandau*, 99-cr-8125, (S.D. Fla. August 9, 2000). Particularly where the seized assets involve complex business interests that include minority interests in operating businesses, depreciating real property, numerous exotic automobiles and items of jewelry, a bankruptcy trustee is particularly well-suited to maintaining, protecting and liquidating the assets, evaluating and resolving the claims of competing creditors and distributing the proceeds in a fair and

equitable manner.[7]

Finally, adjudication of all third party claims in the bankruptcy system avoids the duplication of effort and inconsistent results that would occur if claims to the same properties are subject to adjudication in two different for applying different legal procedures and standards.

WHEREFORE, Herbert Stettin the Chapter 11 Trustee of Rothstein Rosenfeldt Adler P.A., respectfully requests that this Court enter an order referring all third party claims that may be asserted in a criminal forfeiture proceeding to be heard in conjunction with the administration of the Rothstein Rosenfeldt Adler P.A. bankruptcy case, 09-34791-RBR and granting any other relief that is deemed just and appropriate.

>    Respectfully Submitted,
>    BERGER SINGERMAN, P.A.
>    *Counsel for Chapter 11 Trustee*
>    200 S. Biscayne Blvd., Suite 1000
>    Miami, FL 33131
>    Telephone:  (305) 755-9500
>    Facsimile:  (305) 714-4340
>
>    By:   /s/  Paul Steven Singerman
>          Paul Steven Singerman
>          singerman@bergersingerman.com
>          Florida Bar No. 378860
>          Sharon Kegerreis
>          skegerreis@bergersingerman.com
>          Florida Bar No. 852732
>          Isaac Marcushamer
>          imarcushamer@bergersingerman.com
>          Florida Bar No. 0060373

---

[7] It has recently come to the attention of the Trustee and the Official Committee of Unsecured Creditors that the government has apparently delegated its duty to properly manage and safeguard certain of the property subject to forfeiture to Scott Rothstein's wife--Kimberly Rothstein.  More specifically, the Trustee and Committee have learned that the government has permitted Kimberly Rothstein to live rent free in one of the forfeited properties and to continue to rent out other properties to tenants.  S*ee In re Rothstein Rosenfeldt Adler, P.A.*, 2004 Examination Testimony of Kimberly Rothstein, taken on February 18, 2010The Trustee has also learned that after seizing some of the properties, the government has failed to make utility payments or to secure the properties exposing them to potential deterioration in value.  These facts further support the Trustee's position that the property subject to forfeiture should immediately be turned over to the Trustee who is better able to manage and preserve the assets for the benefit of the victims while the claims process is undertaken.  See Bob Norman, The Daily Pulp Blog, *Kim Rothstein Still Has Hand In Finances, Under Fed's Watch*, New Times Broward-Palm Beach, Thursday February 4, 2010 (Last Visited February 18, 2010);.

2608430-10                              13

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of this motion has been served electronically to subscribers of the CM/ECF system for this case on this 19th day of February, 2010.

                                                 By:   */s/ Paul Steven Singerman*
                                                                     Paul Steven Singerman