UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

COQUINA INVESTMENTS,

        Plaintiff,

vs.

SCOTT W. ROTHSTEIN and
TD BANK, N.A.

        Defendants.

_____/

## COMPLAINT

Plaintiff, COQUINA INVESTMENTS ("Coquina"), hereby alleges the following against

Defendants SCOTT W. ROTHSTEIN ("ROTHSTEIN") and TD BANK, N.A., ("TD BANK"):

## Nature of the Action

1.     Plaintiff brings this action for racketeering and other wrongs committed by

Defendants who conspired with each other and with others to perpetrate an enormous fraud and

money laundering scheme through which the Defendants stole and diverted hundreds of millions

of dollars from numerous victims, including Plaintiff. What appeared to be legitimate short-term

opportunities to purchase structured settlements turned out to be an extensive fraudulent

enterprise through which the Defendants stole or diverted millions of dollars through a pattern of

racketeering involving criminal acts of wire fraud, money laundering, conspiracy, and more.

This scheme was made possible through the active involvement of Defendant TD BANK, which

played a crucial and pivotal role.

2.     Defendant ROTHSTEIN, with the participation of others known and unknown,

promoted, managed and supervised this theft scheme to fraudulently induce investors to purchase

Case 0:09-cr-60331-JIC Document 2841 Entered on FLSD Docket 06/02/2010 Page 2 of 24
Case 0:10-cv-60736-XXXX Document 1 Entered on FLSD Docket 05/12/2010 Page 2 of 24

Page - 2 -

settlements of sexual harassment and qui tam or "whistleblower" claims so that the purported "plaintiffs," who were falsely portrayed as clients of ROTHSTEIN's firm, could receive a lump sum payment rather than the structured payments set forth in the settlement agreements. According to ROTHSTEIN, the putative "defendants" in these cases were wealthy individuals or businesses that paid large amounts to settle claims and maintain confidentiality.

3.     As described below, Defendant TD BANK made false verbal statements to investors, provided false and misleading documents, and actively concealed the fraudulent activity.  Acting in concert, ROTHSTEIN and TD BANK operated the scheme to the detriment of Plaintiff, as well as other victims.

4.     Senior TD BANK officers played an active role in the scheme and facilitated its continued existence.  To convince investors of the legitimacy of the investment, TD BANK officers met personally with many victims, including Plaintiff, in order to create an appearance of a legitimate enterprise and to vouch for the investment and for ROTHSTEIN, all the while knowing about and benefiting from the illegitimate scheme.

5.     On January 27, 2010, Defendant ROTHSTEIN admitted his role in the criminal scheme and pled guilty to RICO conspiracy in *United States v. Scott Rothstein,* Case No. 09-Cr-60331-COHN (S.D. Fla.).  United States District Judge James I. Cohn accepted ROTHSTEIN's plea and found him guilty.

### Jurisdiction and Venue

6.     This Court has jurisdiction over the subject matter of the causes of action in this Complaint by virtue of:

(A)     federal question jurisdiction pursuant to 28 U.S.C. Section 1331, involving an action pursuant to 18 U.S.C. Sections 1964(a) and (c), the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO");

Case 0:09-cr-60331-JIC Document 284-1 Entered on FLSD Docket 06/02/2010 Page 3 of 24
Case 0:10-cv-60786-XXXX Document 1 Entered on FLSD Docket 05/12/2010 Page 3 of 24

Page - 3 -

     (B)    diversity jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1), involving an action between citizens of diverse states with an amount in controversy in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs;

     (C)    supplemental jurisdiction pursuant to 28 U.S.C. Section 1367(a), involving claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

7.    This Court has jurisdiction over the persons of the Defendants because:

     (A)    each Defendant either resides or transacts business within this judicial district; and

     (B)    each Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure 4(e), 4(f) and 18 U.S.C. Section 1965(b).

8.    Venue is proper in this district pursuant to 18 U.S.C. Section 1965 and 28 U.S.C. Section 1391 because Defendants either reside or transact business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred.

## **Parties**

9.    Plaintiff Coquina Investments is an investment partnership located in the State of Texas.

10.    Defendant ROTHSTEIN is a disgraced and disbarred lawyer.  He is a citizen of the State of Florida; at present, however, pursuant to the Court's order he is in the custody of the United States Bureau of Prisons.  Formerly, ROTHSTEIN was chairman and CEO of Rothstein Rosenfeldt Adler, P.A. ("RRA"), a law firm with approximately 70 lawyers and seven offices and with its principal place of business located in Ft. Lauderdale, Florida.  The law firm handled a variety of litigation matters, including labor and employment law.

11.    Upon information and belief, Defendant TD BANK is a bank holding company with its national headquarters located in Portland, Maine.  It holds itself out as one of the 15

Case 0:09-cr-60331-JIC Document 28-1 Entered on FLSD Docket 06/02/2010 Page 4 of 24
Case 0:10-cv-60736-XXXX Document 1 Entered on FLSD Docket 05/12/2010 Page 4 of 24

Page - 4 -

largest commercial banks in the United States. TD BANK is a wholly owned subsidiary of TD Bank Financial Group of Toronto Canada, a top 10 financial services company in North America. TD BANK operates more than 1000 retail banks in 13 states and the District of Columbia, and offers personal and business banking services as well as wealth management services to more than 6.5 million customers. It has several offices in Florida, including Ft. Lauderdale and Weston. As of January 31, 2010, TD BANK claimed that it had total assets in excess of $150 billion.

12.     Defendants used an elaborate scheme involving the sale of bogus "structured settlements" to victim-investors, which purportedly came from ROTHSTEIN's clients having settled potential lawsuits against high-profile defendants for large sums of money. TD BANK played a critical role in this scheme by misrepresenting to investors that the funds were "irrevocably" "locked" in specially designated accounts; in truth and in fact, Defendants used those accounts to launder hundreds of millions of dollars and to conceal and promote the massive fraudulent activity.

13.     Defendant ROTHSTEIN promoted, managed and supervised the scheme by making false statements to victim-investors and directing others to make similar false and misleading statements; these were communicated in person, via telephone and via email, as well as by using false and fictitious documents and computer records. Investors were misled to believe that individuals who were purportedly RRA's clients and who had potential claims for sexual harassment or whistle-blower claims against wealthy, successful "defendants" had agreed to settle their claims in exchange for an amount of money to be paid to them over a period of time. These same "plaintiffs" agreed to sell their rights to the full settlement in exchange for an immediate lump sum payment of a lesser amount. In each instance, ROTHSTEIN would tell the investors that the purported "defendant" had already deposited the full amount of the settlement

Case 0:09-cr-60331-JIC Document 284-1 Entered on FLSD Docket 05/02/2010 Page 5 of 24
Case 0:10-cv-60736-XXXX Document 1 Entered on FLSD Docket 05/12/2010 Page 5 of 24

Page - 5 -

in ROTHSTEIN'S accounts at TD BANK. ROTHSTEIN offered these "structured settlements" for sale to the victim-investors, in exchange for the lump-sum payment that would be paid to the "plaintiff."

14.     A critical part of Defendants' fraudulent scheme required Defendants to conceal the misappropriations and to maintain the pretense that payments to victim-investors were drawn from the purported structured settlements.   To accomplish this, ROTHSTEIN needed TD BANK's help to do at least two things: (1) to make payments to investors under the pretense that these payments came from the structured settlements; and (2) to take steps to maintain the appearance of legitimacy of the overall operation, including meeting with investors, speaking with investors on the telephone, providing documents, such as the "lock letters," account balances, and other documents to conceal the truth from the investors, to keep the investors and encourage them to re-invest, and to attract additional investors.

15.     The investors relied heavily upon TD BANK's involvement and actions, and considered TD BANK's participation to be a substantial basis for the investors' confidence in the legitimacy of the transactions and the safety of their funds.   The openness with which TD BANK senior officers such as Regional Vice President Frank Spinosa ("Spinosa") met with investors and ROTHSTEIN to discuss the accounts and the investments contributed to this aura of legitimacy.   Bank officials vouched for defendant ROTHSTEIN, explaining that they had dealt with ROTHSTEIN for many years and confirmed the safety of the investments and the many millions of dollars being held by TD BANK for the benefit of investors, including Plaintiff.

16.     TD BANK also performed and profited from the day-to-day transactions that were necessary both to execute and to conceal the scheme.   TD BANK received and sent wire transfers of large sums of money to and from investors' bank accounts throughout the United States; in particular, TD BANK received and sent wire transfers of money to and from Plaintiff

Case 0:09-cr-60331-JIC  Document 28-1  Entered on FLSD Docket 06/02/2010  Page 6 of 24
Case 0:10-cv-60736-XXXX  Document 1-1  Entered on FLSD Docket 05/12/2010  Page 6 of 24

Page - 6 -

Coquina's bank account in Texas. TD BANK also transferred money among several TD BANK accounts at ROTHSTEIN's direction, assisting in the scheme by concealing the fraudulent operations of the enterprise to personally benefit the Defendants and others.

17. In addition, management level bank employees met with victim-investors and ROTHSTEIN, providing verbal and written assurances that the accounts in which the settlement funds were held were restricted from distribution to anyone other than the victim-investors. In particular, TD BANK Regional Vice President Frank Spinosa conferred with Coquina's representatives on different occasions, both in person and via telephone, confirming that the funds that ROTHSTEIN said were held for Coquina were being maintained in a TD BANK account for the sole and exclusive benefit of Coquina.

18. Among the numerous fraudulent representations Defendants made to Plaintiff were the following:

(A) ROTHSTEIN told the victims that he was able to settle potential sexual harassment and/or whistle blower cases for very large amounts of money, conditioned on complete confidentiality;

(B) ROTHSTEIN told the victim-investors that the purported defendant was a person or business that would be highly embarrassed by the lawsuit, and therefore was willing to pay a premium to maintain confidentiality;

(C) According to the terms of a given "structured settlement," the purported defendant would be required to deposit the full amount of the settlement, into an account at TD Bank;

(D) Also according to the terms of a given "structured settlement," the purported plaintiff would agree to receive the settlement payout over a period of time, usually four to six months;

Case 0:09-cr-60331-JIC Document 28-1 Entered on FLSD Docket 06/02/2010 Page 7 of 24
Case 0:10-cv-60736-XXXX Document 1-1 Entered on FLSD Docket 05/12/2010 Page 7 of 24

Page - 7 -

    (E)    Defendants told the victims that only one person, the so-called "independent verifier" Michael Szafranski, knew the identities of the parties to the "settlement agreement" and confirmed that the defendant had transferred the total amount into the relevant account at TD BANK;

    (F)    ROTHSTEIN also told victim-investors that the "plaintiff" needed a large sum of money quickly and would agree to take a lesser amount immediately instead of waiting for the full payout, relinquishing any claim to the full settlement amount;

    (G)    Defendants told victims that their investments were totally safe.

19.    As part of the scheme, TD BANK would open a separate account for the victim-investor's funds. ROTHSTEIN and TD BANK falsely represented to victims that the funds from the "settlement agreement" that the victim-investor purchased had already been deposited into that account and those funds could not be distributed to anyone other than the specified investor.

20.    TD BANK provided apparent security over the "investments" and assisted in documenting the transaction. In particular, TD BANK further misrepresented the safety and security of these accounts through the use of so-called "lock letters" that TD BANK officers signed, characterizing these accounts as "irrevocably" "locked" and completely secure. TD BANK officers confirmed to Plaintiff that such arrangements were customary for TD BANK.

21.    At various times, TD BANK officials met personally and spoke on the telephone with victim-investors, including Plaintiff, to assure them of the security of their funds and the procedures relating to the relevant account.

22.    TD BANK officials repeatedly provided bank records, including account balances, verifications, signed letters, and other documents confirming that the funds in the victim's trust account were secure in that account.

Case 0:09-cr-60331-JIC Document 284-1 Entered on FLSD Docket 06/02/2010 Page 8 of 24
Case 0:10-cv-60786-XXXX Document 1 Entered on FLSD Docket 05/12/2010 Page 8 of 24

Page - 8 -

23.      Over the course of the conspiracy, hundreds of millions of dollars from victims of the "confidential settlement" scheme were held and managed by TD BANK.

24.      Defendant ROTHSTEIN through and with the assistance of TD BANK and other co-conspirators used the funds obtained from victim-investors in various ways to conceal the true nature of the fraud and to provide an air of legitimacy to attract additional investments by Coquina and others.  For example, ROTHSTEIN and other co-conspirators used these funds to create a false appearance of success by, among other things:

- making large charitable contributions to public and private institutions;

- hiring and paying gratuities to local police departments for security for ROTHSTEIN and to curry favor to deflect law enforcement scrutiny away from Defendants' activities;

- making political contributions to local, state and federal political candidates; and

- purchasing expensive real estate, business interests, boats, and exotic cars for Defendant ROTHSTEIN and others.

25.      The intended and actual result of Defendants' actions was that Defendants illegally obtained millions of dollars from plaintiff Coquina and others.  Defendants repeatedly made false and fraudulent misrepresentations to Coquina, upon which Coquina relied to its detriment.  Each transaction that resulted in Coquina's transferring funds to Defendants was followed by another such criminal transaction, and the Defendants' criminal scheme did not end until F.B.I. agents arrested ROTHSTEIN in November 2009.

Case 0:09-cr-60331-JIC   Document 28-1   Entered on FLSD Docket 06/02/2010   Page 9 of 24
Case 0:10-cv-60786-XXXX   Document 1   Entered on FLSD Docket 05/12/2010   Page 9 of 24

Page - 9 -

## PLAINTIFF FALLS VICTIM TO DEFENDANTS' SCHEME

26.     In March 2009, representatives of Coquina spoke with Michael Szafranski, who purported to be an "independent verifier" connected with ROTHSTEIN.  Szafranski described the structured settlement as a safe investment and explained TD BANK's role in maintaining the funds.  Szafranski also sent sample "structured settlement" documents to Coquina to review.

27.     In April 2009, Coquina received documents from ROTHSTEIN through Szafranski relating to a structured settlement agreement identified by ROTHSTEIN as S-13.  On April 27, 2009, Szafranski emailed his "verifications" of the agreement to Coquina, stating that he had met with ROTHSTEIN, that the "plaintiff" and "defendant" had signed the settlement agreement, and that the "defendant" had transferred the settlement funds to ROTHSTEIN'S account at TD BANK.  Szafranski told Coquina he "logged in to" TD Bank's website and saw the account balance, including the deposit by the "defendant."  After reviewing the documents and receiving assurances from Szafranski that the settlement funds were in the TD BANK account, and also relying on the fact that TD Bank was a financial institution subject to U.S. banking regulations, on April 29, 2009, Coquina wire transferred $600,000 to TD BANK.

28.     As part of the Defendants' efforts to conceal the scheme, on or about May 27, 2009, ROTHSTEIN sent an email to Coquina and attached a copy of a wire confirmation from TD BANK showing that the first payment on the first transaction, S-13, was transferred to Coquina's account at American Bank in Texas.  This payment was consistent with and according to the structured settlement agreement.  Without receiving this payment, Coquina would not have continued to invest with ROTHSTEIN and TD BANK.

29.     In June, Coquina agreed to purchase additional settlement agreements, identified by ROTHSTEIN as S-26, S-31, and S-32, based upon false and fraudulent verbal and written

misrepresentations from ROTHSTEIN and Szafranski, and based upon the payments that Coquina received from TD BANK purportedly from the first settlement agreement.

**AT MEETINGS WITH PLAINTIFF, ROTHSTEIN AND TD BANK
PROVIDED FALSE STATEMENTS AND FRAUDULENT DOCUMENTS**

30.     Before making additional investments, Coquina asked to meet with ROTHSTEIN. Szafranski arranged the meeting for July 9, 2009, in South Florida.  Coquina representatives traveled to Ft. Lauderdale and met with ROTHSTEIN at his office.  ROTHSTEIN made numerous false and fraudulent representations to Coquina regarding the settlement agreements.

31.     During the meeting, ROTHSTEIN told Coquina that when Coquina had invested a sufficient amount of money, ROTHSTEIN would open a separate account at TD BANK solely for Coquina's funds.  Until then, Coquina's funds would remain in ROTHSTEIN's general trust account at TD BANK.  After further discussion, ROTHSTEIN agreed to arrange for TD BANK to open a separate Coquina account.

32.     On August 17, 2009, ROTHSTEIN advised Coquina that TD BANK had established the Coquina Account (Account #6861011614) ("Coquina Account").  ROTHSTEIN sent Coquina a copy of a letter, known as a "lock letter," in which ROTHSTEIN irrevocably instructed TD BANK that funds in the account could only be transferred to Coquina.  Frank Spinosa, TD BANK's Regional Vice President, counter-signed the "lock letter" on behalf of TD BANK.  In addition, Defendants forwarded to Coquina a copy of a TD BANK statement for the Coquina Account showing that $22 Million had been deposited into the account by the "defendant" from the settlement agreement.  Based on these false and fictitious documents and on the false representations by TD BANK and ROTHSTEIN, Coquina made additional investments.

33.     In September 2009, ROTHSTEIN e-mailed Coquina a second "lock letter" signed by TD BANK's Regional Vice President Spinosa that confirmed ROTHSTEIN's instruction to TD BANK to add another individual, Stuart Rosenfeldt, as an authorized person who could distribute funds from the Coquina account at TD BANK to Coquina's account at American Bank in Texas.  Coquina had asked ROTHSTEIN to add a second signor on the account in the event he was unavailable.  The second "lock letter" also specified that "conveyances shall only be made from the RRA Account referenced above to the Coquina Account at American Bank."

34.     After receiving the second "lock letter," Coquina representatives traveled to Florida to meet with ROTHSTEIN and Spinosa at TD BANK.  Coquina representatives first met with ROTHSTEIN at his office, and then traveled together to TD BANK's corporate office at 5900 North Andrews Avenue in Ft. Lauderdale, where they met with Spinosa.  Spinosa stated that he knew about, and was familiar with, the Coquina Account.  He confirmed that there were irrevocable restrictions on the Coquina Account that limited disbursements only to Coquina. Spinosa also confirmed that the terms and restrictions on that account were exactly as he had specified in the two "lock letters" previously sent to Coquina.

35.     During this meeting, Spinosa said that TD BANK had certain systems in place to facilitate this type of restricted account, and that TD BANK had numerous accounts with such restrictions.  He also indicated that this type of account was customary for TD BANK.  Spinosa said that anytime Coquina needed to open another segregated account for new funds, TD BANK could do that without any problem.

36.     As late as the end of October 2009, Spinosa continued to reinforce the legitimacy of the transactions by implicitly confirming that requisite funds to pay Coquina were in the Coquina account.  In fact, when Coquina was unable to reach ROTHSTEIN during that time period, they called Frank Spinosa at his office.  Coquina requested that TD BANK arrange for

the prompt payment of the $5 million due and payable to Coquina. In reply, Spinosa only said that he could not do so without receiving instructions from ROTHSTEIN. Spinosa never gave any indication that the funds in the Coquina Account were insufficient to make the required payment.

37. Coquina representatives also contacted Szafranski regarding ROTHSTEIN's whereabouts. In an attempt to conceal the unraveling of the fraudulent scheme, Szafranski falsely told Coquina that ROTHSTEIN was unavailable "because his father was in the hospital." As Coquina later learned, ROTHSTEIN had actually fled the United States to Morocco and was under investigation by federal law enforcement authorities. Upon information and belief, the Defendants also wire transferred $16,000,000.00 to Morocco for ROTHSTEIN'S benefit.

38. On further information and belief, there are currently no funds in the Coquina Account at TD BANK. The funds were misappropriated by the Defendants, either wrongfully taken out of the Coquina Account or never actually deposited into the Coquina Account.

## WIRE FRAUD

39. During the period from April through September 2009, Coquina purchased approximately nineteen (19) fictitious "settlement agreements" from the Defendants based on numerous false and fraudulent representations as described hereinabove which were intended to conceal the fraudulent scheme. In total, Coquina sent approximately $37.7 million to ROTHSTEIN's account at TD BANK by means of wire transfers between Coquina's bank in Texas and TD BANK in Florida. With respect to each transaction, Coquina had sought and received verbal and written assurances from the Defendants and others at their direction, sent primarily by telephone or by email, stating that the agreements had been executed and the funds deposited into TD BANK for Coquina's account.

40.     In addition, the August and September lock letters signed by TD BANK Regional Vice-President Frank Spinosa relating to the Coquina Account contained critical false and fraudulent representations which were intended to, and did, conceal the fraudulent scheme. These letters were forwarded by ROTHSTEIN to Coquina by email.

41.     All of the Defendants' assurances were false and fraudulent.  Without having received these false and fraudulent representations, Coquina would not have invested in any of ROTHSTEIN's settlement agreements or transferred any funds to TD BANK.

42.     On or about the following dates, Coquina directed funds to be wire transferred to Defendants as payment for settlement agreements based on false and fraudulent representations by Defendants:

|     | Settlement Agreement Number | Date of wire transfers from Coquina to Defendants | Amount Coquina wire transferred to  TD Bank |
| --- | --- | --- | --- |
| A. | S 13 | April 29, 2009 | $600,000 |
| B. | S 25 | June 2, 2009 | $800,000 |
| C. | S 32 | June 22, 2009 | $1,400,000 |
| D. | S 31 | June 23, 2009 | $1,100,000 |
| E. | S 39 | July 2, 2009 | $2.800,000 |
| F. | S 43, S 44 | July 16, 2009 | $1,200,000 |
| G. | S 80, S 81, S 82 | July 29, 2009 | $1,800,000 |
| H. | S119, 120, 121, 122, 123 | August 11, 2009 | $4,000,000 |
| I. | S 127 (partial payment) | August 18, 2009 | $5,000,000 |
| J. | S 127 (partial payment) | August 20, 2009 | $10,000,000 |
| K. | S 143, 144 | September 11, 2009 | $4,000,000 |
| L. | S 154 | September 29, 2009 | $5,000,000 |

43.     Absent the fraud orchestrated by ROTHSTEIN and assisted by TD BANK and others, Coquina would not have made any of the wire transfers listed above in paragraph 42.

44.     By engaging in the foregoing scheme involving the sale of structured settlements, ROTHSTEIN and TD BANK intentionally participated in a scheme, using the wires, to defraud

Coquina of money by means of material misrepresentations and omissions. Coquina reasonably relied on misrepresentations and material omissions made by ROTHSTEIN, TD BANK, and others in furtherance of the fraudulent scheme. Coquina suffered injury as a result of the fraud in the amounts of money Defendants obtained from Coquina.

45.     Through the foregoing conduct, ROTHSTEIN and TD BANK, having devised, and intending to devise, a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce writings, signs and signals for the purpose of executing such scheme and artifice to defraud, in violation of 18 US.C. Section 1343.

## INTERSTATE TRANSPORTATION OF STOLEN PROPERTY

46.     In addition, the foregoing scheme and each act committed in furtherance thereof set forth in paragraphs 1 through 44 constitute violations of the National Stolen Property Act, 18 U.S.C. Section 2314, in that Defendants transported, transmitted, and transferred in interstate and foreign commerce goods and money, of the value of $5,000 or more, knowing the same to have been stolen, converted and taken by fraud, in violation of 18 U.S.C. Section 2314.

## MONEY LAUNDERING

47.     Further, as part of ROTHSTEIN and TD BANK's operation of the fraudulent structured settlement scheme, they engaged in, and otherwise caused, numerous financial transactions and transfers through financial institutions in the United States, which transactions violated 18 U.S.C. Sections 1956 and 1957 (money laundering).

48.     ROTHSTEIN and TD BANK committed acts of money laundering, namely financial transactions, to promote their unlawful misappropriation of investor funds in violation

Case 0:09-cr-60331-JIC Document 284-1 Entered on FLSD Docket 06/08/2010 Page 15 of 24
Case 0:09-cv-60331-XXX Document 84-1 Entered on FLSD Docket 05/12/2010 Page 15 of 24

Page - 15 -

of 18 U.S.C. Section 1956(a)(1)(A), and to conceal their unlawful activity in violation of 18 U.S.C. Section 1956(a)(1)(B).

49.     The following chart lists the dates and amounts of the financial transactions engaged in and caused by Defendants in furtherance of the specified unlawful activity, as set forth in detail hereinabove, that is, wire fraud and/or interstate transportation of stolen property:

|     | DATE | AMOUNT | WIRE TRANSFER |
| --- | --- | --- | --- |
| A. | 4/29/09 | $600,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| B. | 6/2/09 | $800,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| C. | 6/22/09 | $1,400,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| D. | 6/23/09 | $1,100,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| E. | 7/02/09 | $2,800,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| F. | 7/16/09 | $1,200,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| G. | 7/29/09 | $1,800,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| H. | 8/11/09 | $4,000,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| I. | 8/18/09 | $5,000,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| J. | 8/20/09 | $10,000,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| K. | 9/11/09 | $4,000,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |
| L. | 9/29/09 | $5,000,000 | From Coquina's account at American Bank to ROTHSTEIN'S trust account at TD BANK |

50.     Upon information and belief, after the funds were received in ROTHSTEIN's trust account at TD BANK, ROTHSTEIN transferred the money to other accounts at TD BANK and elsewhere, and used the funds for various purposes having nothing to do with the purported settlement agreements that Coquina believed it had purchased.

51.     The foregoing scheme, as set forth in detail hereinabove in paragraphs 1 through 50, and each act committed in furtherance thereof, constitutes money laundering within the meaning of 18 U.S.C. Sections 1956 and 1957 in that:

(A)     Defendants ROTHSTEIN and TD BANK, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such financial transactions which in fact involved proceeds of a specified unlawful activity, namely wire fraud (18 U.S.C. § 1343) and interstate transportation of stolen goods (18 U.S.C. § 2314), knowing that the transactions were designed in whole or in part to promote the carrying on of the foregoing specified unlawful activity, in violation of 18 U.S.C. §1956(a)(1)(A)(i);

(B)     Defendants ROTHSTEIN and TD BANK, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, conducted and attempted to conduct such financial transactions which in fact involved proceeds of a specified unlawful activity, namely wire fraud (18 U.S.C. § 1343) and interstate transportation of stolen goods (18 U.S.C. § 2314), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the foregoing specified unlawful activity, in violation of 18 U.S.C. §1956(a)(1)(B)(i); and

(C)     Defendants ROTHSTEIN and TD BANK, in an offense that took place in the United States, knowingly engaged or attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000, that was derived from specified unlawful activity, namely wire fraud (18 U.S.C. § 1343) and interstate transportation of stolen goods (18 U.S.C. § 2314), in violation of 18 U.S.C. §1957.

## COUNT I

## FEDERAL RICO VIOLATIONS
(against all Defendants)

52.     Plaintiff incorporates paragraphs 1 through 51 above by reference.

53.     Count I seeks relief from the Defendants for violation of 18 U.S.C. Section 1962(c).

54.     Each Defendant is a "person" within the meaning of 18 U.S.C. Section 1961(3).

55.     Commencing in or around 2005 and continuing until approximately November 2009, the Defendants violated 18 U.S.C. Section 1962(c).

### The Enterprise

56.     At all relevant times, ROTHSTEIN and TD BANK associated in fact with each other and with others known and unknown so as to constitute an "enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962(c).   At all times relevant to this Complaint, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce.

57.     The "association in fact" Enterprise had an ascertainable structure and organization and existed apart from its predicate acts.  Defendants associated with the Enterprise through their personal involvement in the underlying racketeering offenses as well as through the continuous concealment and promotion of the Enterprise's activities.

58.     The Defendants associated with each other for the common purpose of defrauding Coquina and converting its funds and property for Defendants' personal gain.

59.     In furtherance of the Enterprise, ROTHSTEIN and TD BANK committed numerous overt acts, as set forth in Paragraphs 1 through 50 of this Complaint, including violation of the wire fraud, interstate transportation of stolen property, and money laundering statutes.

### The Purpose and Object of the Racketeering Activity

60.     The principal purpose of the racketeering conspiracy was to generate money for ROTHSTEIN, TD BANK, and others through the operation of the Enterprise and various criminal activities, including wire fraud and money laundering.

61.     ROTHSTEIN, TD BANK, and others agreed to engage in a pattern of racketeering activity using various locations, including but not limited to several TD BANK branches and offices located in south Florida, to further the objectives of the Enterprise.

### Direction of the Enterprise's Affairs

62.     ROTHSTEIN and TD BANK knowingly conducted or participated, directly or indirectly, in the conduct of the affairs of the Enterprise within the meaning of 18 U.S.C. Section 1962(c).  Furthermore, the Defendants were "employed by or associated with" the Enterprise within the meaning of 18 U.S.C. Section 1962(c).

63.     ROTHSTEIN directed and managed the Enterprise's activities through a pattern of racketeering activity within the meaning of 18 U.S.C. Sections 1961(1), 1961(5), and 1962(c).

64.     ROTHSTEIN and TD BANK conducted and participated in the Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. Sections 1961(1), 1961(5), and 1962(c).

### The Pattern of Racketeering Activity

65.     In the course of conducting and participating in the "structured settlement" Enterprise, Defendants executed numerous predicate acts of racketeering activity, which are indictable under provisions of the U.S. criminal code enumerated in 18 U.S.C. Section 1961(1)(B), as more specifically alleged below.

66.     As described throughout this Complaint, the Defendants engaged in a pattern of related and continuous predicate acts over a substantial, but closed, period of time.  The unitary scheme began sometime in or around 2005 and continued until approximately November 2009.

67.     The predicate acts constituted a variety of unlawful activities, each conducted in furtherance of the Enterprise and the common purpose to defraud Coquina and obtain millions of dollars.  The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts are related and are not isolated events.

68.     The predicate acts all had the purpose of diverting and misappropriating monies that Coquina and others had invested with the Defendants.  The predicate acts were committed or

caused to be committed by Defendants, and were interrelated in that they involved using Coquina's funds. Further, on information and belief, Defendants' misappropriation repeatedly involved diversion of funds for: (a) Defendants' personal benefit and (b) making purported payments to certain investors to conceal their theft of other funds pursuant to the scheme.

69. More specifically, Defendants ROTHSTEIN and TD BANK enhanced the credibility of the purported investment opportunity by utilizing the offices of RRA and TD BANK to convince Coquina and others of the legitimacy and safety of the investment.

**RICO Injury**

70. By virtue of ROTHSTEIN and TD BANK's violation of 18 U.S.C. Section 1962(c), Coquina has sustained substantial injury to both its business and its property.

71. ROTHSTEIN and TD BANK's RICO violations were the actual cause of Coquina's damages, which would not have occurred without ROTHSTEIN and TD BANK's conduct. In addition, the acts and violations were the direct, natural, and proximate cause of damage to Coquina, including, but not limited to, the loss of Coquina's funds. ROTHSTEIN and TD BANK profited from their RICO acts and used some proceeds to further their RICO enterprise.

**COUNT II**

**CONSPIRACY TO VIOLATE FEDERAL RICO**
(against all Defendants)

72. The allegations of paragraphs 1 through 71 are incorporated herein by reference.

73. Count II seeks relief against ROTHSTEIN and TD BANK for violation of 18 U.S.C. Section 1962(d).

74. In violation of 18 U.S.C. Section 1962(d), Defendants and others known and unknown conspired with each other to violate 18 U.S.C. Section 1962(a)-(c).

75.     The objects of the conspiracy included, without limitation, the misappropriation of funds from Coquina and others by means of a scheme to defraud.  By these misappropriations, ROTHSTEIN and TD BANK gained personal benefits; obtained funds directly from the conversion of Coquina's funds for their own use; and fraudulently profited through their fraudulent scheme.

76.     Defendants ROTHSTEIN and TD BANK agreed and combined with persons known and unknown to do a criminal or unlawful act, or a lawful act by criminal or unlawful means.  ROTHSTEIN and TD BANK by his or its words or actions, objectively manifested agreement to the commission of the substantive RICO violations and to the commission of two or more predicate acts through participation in the conduct of the affairs of the Enterprise. ROTHSTEIN and TD BANK knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate 18 U.S.C. Section 1962(d).

77.     ROTHSTEIN and TD BANK's agreement to engage in a pattern of racketeering activity can be reasonably inferred from: their close professional relationship; their mutual financial gain resulting from their pattern of racketeering activity; their use of bank accounts and property; and the dependency of the fraudulent acts of each on the fraudulent acts of the others. ROTHSTEIN and TD BANK's agreement was manifested by the number and similarity of the racketeering offenses committed by them as discussed throughout this Complaint.

78.     At least one overt and wrongful act was done by one or more of the conspirators to achieve the purpose of the conspiracy.  Those acts were done pursuant to the common schemes and in furtherance of the objects of the conspiracy and in concert.

79.     As described above, the conspiratorial agreement was an agreement to participate in an enterprise which engaged in racketeering activity within the meaning of 18 U.S.C. Sections

Case 0:09-cv-60331-XXXX Document 284-1 Entered on FLSD Docket 06/08/2010 Page 21 of 24
Case 0:09-cv-60786-XXXX Document 84-1 Entered on FLSD Docket 05/12/2010 Page 21 of 24

Page - 21 -

1961(1) and 1962(a)-(c), in addition to an agreement to commit the multiple offenses underlying the racketeering activity.

80.     As described above, the conspirators engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. Sections 1961(5) and 1962(a)-(c). Defendants ROTHSTEIN and TD BANK knew that the acts in furtherance of the conspiracy were part of a pattern of racketeering activity.

81.     As a result of one or more acts predicate to the conspiracy and ROTHSTEIN and TD BANK's conduct or participation in the conduct of the Enterprise's affairs through a pattern of racketeering activity, Coquina has sustained substantial injury to both its business and its property, including the loss of potential investors and the loss of Coquina's funds.

82.     ROTHSTEIN and TD BANK's acts and violations were the actual cause of Coquina's damages, which would not have occurred without the Defendants' conduct. In addition, the acts and violations were the direct, natural, and proximate cause of damage to Coquina, as set forth above.

## COUNT III

### **<u>FRAUDULENT MISREPRESENTATION</u>**
(against all Defendants)

83.     The allegations of paragraphs 1 through 71 are incorporated herein by reference.

84.     Count III seeks relief from ROTHSTEIN and TD BANK for fraudulent misrepresentation.

85.     As described more fully above, ROTHSTEIN was operating a fraudulent scheme with the assistance of TD BANK and others.

86.     In furtherance of the scheme, and as alleged throughout this Complaint, ROTHSTEIN and TD BANK knowingly made material false statements and representations, including, but not limited to:

> (A)     fraudulently misrepresenting the existence and value of the settlement agreements purchased by Coquina;
>
> (B)     fraudulently misrepresenting that the settlements actually existed and had been fully funded;
>
> (C)     fraudulently misrepresenting that the settlement agreements would be paid out to Coquina over a predetermined schedule;
>
> (D)     supplying Coquina with false and fraudulent letters purporting to "irrevocably" restrict transfers from the Coquina account at TD BANK; and
>
> (E)     supplying Coquina with false and fraudulent bank account statements for the Coquina account at TD BANK.

87.     The Defendants intended for Coquina to rely and act upon their knowingly false representations.

88.     Coquina justifiably relied on the Defendants' false statements.

89.     As a direct and proximate result of the Defendants' false statements, Coquina has sustained damages.

## COUNT IV

## AIDING AND ABETTING FRAUD
### (against TD BANK)

90.     The allegations of paragraphs 1 through 71 are incorporated herein above by reference.

91.     Count IV seeks relief from TD BANK for aiding and abetting fraud.

92.     As described more fully above, ROTHSTEIN was operating a scheme to defraud investors with the assistance of TD BANK and others.

93.     At all times material thereto, the TD BANK officers and representatives named throughout this Complaint were acting within the scope of their employment.

94.     TD BANK knew of ROTHSTEIN's fraudulent scheme.

95.     TD BANK actively provided substantial assistance to ROTHSTEIN in his financial exploitation of Coquina through fraud.  As more fully described throughout this Complaint, TD BANK's assistance included, but was not limited to, providing ROTHSTEIN with numerous bank accounts to use during the course of the fictitious structured settlement scheme, supplying investors including Coquina with false "lock letters," supplying Coquina with false bank account statements, confirming the balance of the Coquina Account, and vouching for the legitimacy of the "lock letters" and the safety of the investments.

96.     TD BANK's actions have directly caused injury and damage to Coquina.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Coquina prays for trial by jury and requests that this Court:

A.      Enter judgment in favor of Plaintiff Coquina and against Defendants ROTHSTEIN and TD BANK, jointly and severally;

B.      Award Plaintiff Coquina treble damages for all injuries deemed at trial to have resulted from ROTHSTEIN and TD BANK's racketeering activities, pursuant to 18 U.S.C. § 1964(c);

C.      Impose a constructive trust on ROTHSTEIN and TD BANK in favor of Plaintiff Coquina for the proceeds of ROTHSTEIN and TD BANK's unlawful activity relating to Coquina;

Case 0:09-cv-60331-XXXX Document 284-1 Entered on FLSD Docket 06/08/2010 Page 24 of 24
Case 0:09-cv-60788-XXXX Document 84-1 Entered on FLSD Docket 05/12/2010 Page 24 of 24

Page - 24 -

D.      Award Plaintiff Coquina compensatory damages in an amount to be determined at trial;

E.      Award Plaintiff Coquina punitive damages in an amount to be determined at trial appropriate to the severity of the Defendants' conduct;

F.      Award Plaintiff Coquina its costs, interest, and reasonable attorneys' fees incurred in prosecuting this action pursuant to 18 U.S.C. § 1964; and

G.      Such other and further relief as this Court may deem just and proper.

Dated: May 12, 2010                  Respectfully submitted,

MANDEL & MANDEL LLP
169 East Flagler Street, Suite 1200
Miami, Florida 33131
Telephone: 305.374.7771
Facsimile: 305.374.7776
dmandel@mandel-law.com

By:   _____

DAVID S. MANDEL
Florida Bar No. 38040
*Attorneys for Coquina Investments*