UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-60331-CR-COHN

UNITED STATES OF AMERICA

    Plaintiff,

v.

SCOTT W. ROTHSTEIN

    Defendant.
_____/

IN RE THIRD PARTY CLAIMS FILED BY

FIVE FORMER RRA
NON-INVESTOR CLIENTS,

    Petitioners.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION TO DISMISS VERIFIED PETITIONS OF FIVE FORMER RRA NON-INVESTOR CLIENTS

**THIS CAUSE** is before the Court on the United States' Motion to Dismiss Verified Petitions of Five Former RRA Non-Investor Clients [DE 323] ("Motion to Dismiss").[1] The Court has carefully reviewed the Motion to Dismiss, all of the parties' submissions, and is otherwise advised in the premises.

The Motion to Dismiss concerns the sufficiency of third party claimants' verified petitions to recover property forfeited to the United States in the largest Ponzi scheme ever perpetrated in South Florida. The United States contends that the Court should dismiss the verified petitions because the claimants have failed to allege a legal interest

---

    [1] One of the five former non-investor clients was MMRH, LLC. On June 24, 2010, MMRH, LLC withdrew its verified petition. See DE 337. Accordingly, the Court will deny as moot the portions of the Motion to Dismiss that pertain to MMRH, LLC.

in the forfeited property and therefore lack standing.

The Court holds that the third party claimants have standing because they have alleged a legal interest in bank accounts. The Court also holds, as a matter of equity, that the third party claimants are not entitled to a constructive trust and therefore cannot recover property where the claimants assert a constructive trust as their only legal interest in forfeited property. Accordingly, for the reasons set forth below, the Court will grant in part and deny in part the Motion to Dismiss.

## I. BACKGROUND

On December 1, 2009, the United States, by way of Information, charged Defendant Scott Rothstein ("Rothstein") with RICO, money laundering, and mail and wire fraud conspiracies in violation of 18 U.S.C. §§ 1962(d), 1956(h), and 1349, and with substantive wire fraud in violation of 18 U.S.C. § 1343. See DE 1. The Information also contained criminal forfeiture allegations. Id.

On January 27, 2010, Rothstein pled guilty to all of the charges contained in the Information. Rothstein also agreed to forfeit his right in the properties described in the Information and the Bill of Particulars. See DE 69 at 3. Thus, on April 19, 2010, the Court entered a Preliminary Order of Forfeiture [DE 134]. The Preliminary Order of Forfeiture forfeited all of Rothstein's right, title and interest in all property involved in the RICO and money laundering conspiracies and all property derived from the mail and wire fraud offenses. See id.

On June 4, 2010, NF Servicing, LLC ("NF Servicing"), timely submitted a verified petition to assert an interest in money deposited into a trust account at Rothstein Rosenfeldt Adler, P.A. ("RRA"). See DE 266 ("NF's Petition"). Specifically, NF

Servicing claims that during the course of its business operations, it entered into various agreements with mortgage servicing companies to extend credit. Id. at 3. Pursuant to the applicable security documents, a subservicer would deposit "Net Servicing Fees" into one of RRA's trust accounts: Gibraltar Bank Trust Account No. 50015214. Id. Gibraltar Bank Trust Account No. 50015214 was listed in the Preliminary Order of Forfeiture as "BA 5." See Preliminary Order of Forfeiture.[2] NF Servicing alleges that two deposits, totaling $68,798.30, were deposited into BA 5, but never released to NF Servicing. Id.

On June 7, 2010, Edward J. Morse, Carol A. Morse, and Morse Operations, Inc. (collectively "the Morses") timely submitted a verified petition. See DE 279 ("Morse Petition"). The Morses allege that between July 1, 2006, and April 24, 2009, they transferred $65,850,867.99 to RRA trust accounts purportedly so that RRA could execute on a judgment that Rothstein told the Morses he had obtained in their favor. Id. When the Ponzi scheme collapsed, the Morses learned that Rothstein never obtained the judgment for them. Id. Rather, he had simply stole their money. Id. at 2. Accordingly, the Morses assert an interest in all of the property listed in the Preliminary Order of Forfeiture.

## II. DISCUSSION

### A. Legal Standard

Congress codified the criminal forfeiture statute at 21 U.S.C. § 853. The statute provides, in relevant part, as follows:

---

[2] At the time the United States seized BA 5, the account contained $995,521.42

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

. . .

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(2)-(3), (6).

Furthermore, under Rule 32.2 of the Federal Rules of Criminal Procedure, a motion to dismiss a third party petition in a forfeiture proceeding is treated like a motion to dismiss a civil complaint under Rule 12(b) of the Federal Rules of Civil Procedure. See Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004); see also United States v. Marion, 562 F.3d 1330, 1342 (11th Cir. 2009) (citing Fed. R. Civ. P. 12(b) to resolve

motion to dismiss verified petition in criminal forfeiture). Accordingly, for purposes of a motion to dismiss a third party's petition, "the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A).

### B. NF Servicing Has Alleged a Legal Interest in Forfeited Property

NF Servicing alleges that RRA held its money in trust. NF Servicing's Petition at 2. Specifically, NF Servicing alleges that RRA held NF Servicing's money in Gibraltar Bank, Account No. 50015214. Id. The United States therefore argues that NF Servicing is a fraud victim. Motion to Dismiss at 7.

The United States then asserts that "[f]raud victims who voluntarily transfer their property to the defendant retain no interest in the property transferred: they are unsecured creditors without standing to contest the forfeiture of the defendant's property in the ancillary proceeding." Id. (citing United States v. Eldick, 223 Fed. App'x 837, 839 (11th Cir. 2007)).[3] Thus, the United States contends, the Petitioners lack standing to contest the forfeiture. Id.

NF Servicing, however, has not alleged that it voluntarily transferred its property to the defendant in a business transaction. To the contrary, NF Servicing plainly alleges that RRA held NF Servicing's money in trust in a particular trust account. Thus, pursuant to well-established law, NF Servicing retained its ownership of the property held in trust. See R. Regulating Fla. Bar 5-1.1-1.2; see also In re Scanlon, 239 F.3d 1195, 1197-98 (11th Cir. 2001) ("Under Florida law, 'legal title to property placed in an

---

[3] Eldick is an unpublished decision and therefore not binding on this Court. See 11th Cir. R. 36.2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement.'" (citation omitted)); In re Rothstein Rosenfeldt Adler, P.A., Bankruptcy No. 09-34791-BKC-RBR, 2010 WL 2301240, at *3 (Bankr. S.D. Fla. June 4, 2010). NF Servicing, therefore, has alleged a legal interest in BA 5.

### C. The Morses Alleged a Legal Interest in Forfeited Property

The Morses concede that they cannot trace their money to specific forfeited properties because the funds were commingled with funds RRA received from investors in Defendant's Ponzi scheme. Notwithstanding, the Morses maintain that RRA merely held their funds in trust and that they never transferred title to their money to RRA. See Morses' Petition; DE 354 at 2. The Morses, however, do not allege that any specific RRA trust accounts contain their funds.

Even though the Morses have not alleged that any specific RRA trust accounts contain their funds, the Morses have attached seventy-two pages of bank statements, letters, and other documents that appear to evidence transfers the Morses made to RRA trust accounts. Cf. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Good v. Silver, No. 6:02-cv-1350-ORL-31DAB, 2002 WL 32105206, at *1 (M.D. Fla. Dec. 10, 2002) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), the exhibit prevails."). Thus, to the extent the Morses can trace their money to specific RRA trust accounts, the undersigned finds that the Morses have alleged a legal interest in those accounts. See R. Regulating Fla. Bar 5-1.1-1.2; see also In re Scanlon, 239 F.3d at 1197-98 (11th Cir. 2001); In re Rothstein Rosenfeldt Adler, P.A., 2010 WL 2301240, at *3.

The Morses also assert that they have a "valid constructive trust or equitable lien on [all of] the Seized Property." Morses' Petition at 2. "'The constructive trust, a creature of equity, is the formula through which the conscience of equity finds expression.'" United States v. Ramunno, 599 F.3d 1269, 1273 (11th Cir. 2010) (quoting Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518 (11th Cir. 1994) (internal quotation omitted)). Whether the Trustee is entitled to a constructive trust is a matter of state law. Id. at 1274 (citing United States v. Fleet, 498 F.3d 1225, 1231 (11th Cir. 2007)); see also Shefton, 548 F.3d at 1364. Here, Florida provides the applicable state law.

Under Florida law, the "elements of a constructive trust are: (1) a confidential relationship, by which (2) one acquires an advantage he should not, in equity and good conscience retain." Bender v. Centrust Mortgage Corp., 51 F.3d 1027, 1030 (11th Cir. 1995); Williams v. Dep't of Health & Rehabilitative Servs., 522 So. 2d 951, 954 (Fla. Dist. Ct. App. 1988). A constructive trust prevents the unjust enrichment of a culpable party and restores to the beneficiary of the trust the original interest that was wrongfully taken. See Bender, 51 F.3d at 1029; see also Wadlington v. Edwards, 92 So. 2d 629, 631 (Fla. 1957) ("[A] constructive trust is a relationship adjudicated to exist by a court of equity based on particular factual situations created by one or the other of the parties. . . . The trust is 'constructed' by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem."). Furthermore, under Florida law, "a constructive trust arises as a matter of law when the facts giving rise to the fraud occur." In re Gen. Coffee Corp., 828 F.2d 699, 702 (11th Cir. 1987).

Ordinarily, the trust *res* must be specific and identifiable. See Arduin v. McGeorge, 595 So. 2d 203, 204 (Fla. Dist. Ct. App. 1992). Notwithstanding, a court may impose a constructive trust where funds have been converted into another type of asset and the claimant can trace and identify the transaction in which the conversion occurred. See id. Furthermore, under Florida law, "a constructive trust arises as a matter of law when the facts giving rise to the fraud occur." In re Gen. Coffee Corp., 828 F.2d 699, 702 (11th Cir. 1987).

Here, the Morses have not alleged that they can trace their monies to any forfeited property. Indeed, they concede that they cannot. See Morses' Petition at 2 ("Claimants are unable to trace their money to specific assets among the Seized Property."). The Morses, therefore, have not adequately pled entitlement to a constructive trust.

Moreover, the Court should not impose a constructive trust on behalf of the Morses because it would work to the disadvantage of other parties who are similarly situated. See United States v. Ramunno, 599 F.3d 1269, 1274 (11th Cir. 2010). For example, there may be victims who, in an effort to avoid incurring significant litigation costs, have chosen to await the fair distribution of forfeited property through the restitution process. Indeed, the United States has indicated that thirty-seven unsecured creditors are seeking restitution, but not seeking forfeiture. Thus, if the Court deems the Morses the beneficiaries of a constructive trust impressed on the forfeited property, or even the beneficiaries of a pro-rata constructive trust, then similarly situated victims who have not filed verified petitions may be left with no recovery.

Additionally, the Court should not impose a constructive trust, which is an

equitable remedy, because the Morses have an adequate remedy at law. Cf. Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("It is well settled in Florida that . . . an equitable remedy [is] not available where there is an adequate legal remedy."). Here, the United States has convinced the Court that the Morses have an adequate remedy at law.

On July 9, 2010, at a hearing on the United States' Motion to Dismiss Chapter 11 Trustee's Verified Claims and Petition [DE 310], the United States unequivocally represented that the United States will use all forfeited property, less administrative costs, to reimburse qualified victims through restitution. The United States further represented that this Court will have judicial oversight of the restitution process, including a means by which the Court may review objections filed by any party that disagrees with the United States' proposed distribution of forfeited property. Consequently, at this point in the proceedings, it appears that the restitution process provides the Morses with an adequate remedy at law.[4] Because the Morses have an adequate remedy at law, the Court will not deem the Morses the beneficiaries of a constructive trust.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** as follows:

1. The United States' Motion to Dismiss Verified Petitions of Five Former RRA Non-

---

[4] But see United States v. Shefton, 548 F.3d 1360, 1365 (11th Cir. 2008) ("Given that § 853(i)(1) leaves to the government, which holds the forfeited property, full and unreviewable discretion as to whether it will release some or all of it, § 853(i)(1) remission is certainly not as complete or effectual as the equitable relief of a constructive trust.").

9

Investor Clients [DE 323] is **GRANTED IN PART AND DENIED IN PART**.

2. NF Servicing has alleged a legal interest in the funds contained within BA 5. The Court therefore **DENIES** the Motion to Dismiss as it pertains to NF Servicing's claim to the funds in BA 5.

3. The Morses have alleged a legal interest in RRA's trust accounts. The Morses, however, are not entitled to a constructive trust on the forfeited property. The Court therefore **GRANTS IN PART AND DENIES IN PART** the United States' Motion to Dismiss the Morses' claims to the forfeited property. To the extent the Morses assert a legal interest in monies held in RRA's trust accounts, the Motion to Dismiss is **DENIED**. However, to the extent the Morses assert an interest in any forfeited property other than RRA's trust accounts, the Motion to Dismiss is **GRANTED**.

4. On June 24, 2010, MMRH, LLC withdrew its verified petition. Consequently, as it pertains to MMRH, LLC, the Motion to Dismiss is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of July, 2010.

_____
JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to counsel of record.