UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60331-CR-COHN

UNITED STATES OF AMERICA

      Plaintiff,

v.

SCOTT W. ROTHSTEIN

      Defendant.

_____/

IN RE THIRD PARTY CLAIMS FILED BY

THIRTY-FIVE FORMER RRA
NON-INVESTOR CLIENTS,

CHAPTER 11 TRUSTEE OF
ROTHSTEIN ROSENFELDT ADLER, P.A.,

NF SERVICING, LLC,

EDWARD J. MORSE, CAROL A. MORSE,
and MORSE OPERATIONS, INC.,

RUBIN AND SHARON VINE, and

TODD D. SNYDER,

      Petitioner.

_____/

## ORDER RE: 21 U.S.C. § 853(n) CLAIMS

**THIS CAUSE** came on for evidentiary hearing on August 16, 17, and 20, 2010,

on the verified petitions of the Chapter 11 Trustee [DE 192], the Thirty-Five Non-

Investor Clients [DE 146-177 and 183-85], NF Servicing, LLC [DE 266], Edward J.

Morse, Carol A. Morse and Morse Operations [DE 279], Todd D. Snyder [DE 281], and

Rubin and Sharon Vine [DE 206]. Each petitioner asserted a legal interest in property which had been ordered forfeited pursuant to the Court's order of April 19, 2010 [DE 134].[1]

The Court has considered the stipulations of facts as contained in [DE 522, 523, 525, 536, and 548], the testimony of Herbert Stettin, Richard Fechter, and Nestor Mascarell, the exhibits in evidence, the record in the criminal case and argument of counsel. Recognizing that the legal burden of proof by a preponderance of the evidence is placed on the petitioner under 21 U.S.C. § 853(n)(6), the Court finds as follows:

1.  The following twelve (12) Rothstein Rosenfeldt Adler, P.A. ("RRA") bank accounts were forfeited pursuant to the Preliminary Order of Forfeiture [DE 134]:

    | | |
    |---|---|
    | BA 2 Gibraltar Bank Account 50010085 | $484,900.88 |
    | BA 3 Gibraltar Bank Account 50010093 | $255.16 |
    | BA 4 Gibraltar Bank Account 50012053[2] | $71,793.06 |
    | BA 5 Gibraltar Bank Account 50015214 | $947,091.83 |

---

[1]     For ease of reference, the Court and the parties, throughout this case, have routinely referred to the petitioners represented by Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. as "Thirty-Five Non-Investor Clients." In this Order, the Court continues to refer to these thirty-five petitioners, in the aggregate, as "Thirty-Five Non-Investor Clients." However, when necessary, the Court will distinguish between individual petitioners who comprise the Thirty-Five Non-Investor Clients. Furthermore, throughout this Order, the Court will refer to NF Servicing, LLC as "NF Servicing," Edward J. Morse, Carol A. Morse and Morse Operations collectively as "the Morses," Todd D. Snyder as "Snyder," and Rubin Vine and Sharon Vine collectively as "the Vines."

[2]     In the Preliminary Order of Forfeiture, BA 4 is described as Gibraltar Bank account 50011253. This appears to be a scrivener's error.

| | |
|---|---:|
| BA 9 Toronto Dominion Bank Account 6860291266 | $54,021.27 |
| BA 10 Weston Branch of Commerce Bank Account 6861011556 | $250,085.00 |
| BA 11 Toronto Dominion Bank Account 6860420923 | $430,892.08 |
| BA 15 Toronto Dominion Bank Account 6861077714 | $20,080.00 |
| BA 16 Toronto Dominion Bank Account 6861076906 | $23,406.16 |
| BA 17 Account Number 6861011614 | $14,657.80 |
| BA 18 Toronto Dominion Bank Account 6860291274 | $28,497.07 |
| BA 19 Toronto Dominion Bank Account 6861076922 | $52,749.68 |
| TOTAL FUNDS AT ISSUE | $2,378,429.99 |

2.    Bank Account 9 (BA 9) contains only funds derived from legitimate RRA business and the Trustee has established a superior interest to that of Mr. Rothstein at the time of commission of the acts which gave rise to the forfeiture of BA 9.

3.    Bank Accounts 16, 17, and 19 (BA 16, 17, 19) contain criminal proceeds and/or funds derived from criminal conduct and no petitioner has proved by a preponderance of evidence a superior right to that of Mr. Rothstein at the time of the commission of the acts which gave rise to the forfeiture of BA 16, 17, and 19.[3]

4.    BA 4, 5, 11, and 16 were IOTA Trust Accounts and thus governed by the Florida Bar Rules Regulating Trust Accounts, specifically Rule 5-1.1.

5.    The circumstances under which the Thirty-Five Non-Investor Clients, NF

---

[3]    The Trustee concedes he has not met his burden of proof with regard to these three accounts.

Servicing, the Morses, Todd D. Snyder, and the Vines each advanced or caused to be advanced funds to RRA leaves no doubt that the parties intended RRA to act merely as an intermediary.

6. Under Florida law and the law of trusts, express trusts were created for the benefit of each of the Thirty-Five Non-Investor Clients, NF Servicing, the Morses, Snyder, and the Vines.

7. RRA was supposed to hold the aforementioned petitioners' monies in trust with each petitioner being a vested beneficiary of that trust.

8. The parties agreed that the lowest intermediate balance rule ("LIBR") should be applied to resolve competing claims to monies held in commingled bank accounts.

9. The Thirty-Five Non-Investor Clients' civil claims settlements were deposited in BA 5. Each of the Thirty-Five Non-Investor Clients have proved a superior right to that of Mr. Rothstein at the time of the commission of the acts which gave rise to the forfeiture of BA 5.

   a. The following non-investor clients have monies which remain in BA 5 and their lowest intermediate balances are respectively stated:

      i. Hirbod Samsam [DE 147]: $10,000.00.

      ii. Brian Korinko [DE 148]: $109,945.93.

      iii. Mitchell Delgado [DE 149]: $10,000.00.

      iv. Diana Garcia [DE 152]: $10,000.00.

      v. Juan Frometa [DE 154]: $2,839.85.

      vi. Marla Jacobson [DE 156]: $61,689.96.

4

vii.     Robert Rozett [DE 157]: $99,992.23.

viii.    Kenneth & Annette Valdespino [DE 159]: $60,000.00.

ix.      Richard Litsky [DE 160]: $2,500.00.

x.       Iris Altman [DE 161]: $340.00.

xi.      Lorenzo Fagan [DE 162]: $5,000.00.

xii.     Alissa Mauro [DE 163]: $7,147.00.

xiii.    Shebella Edwards Oliver [DE 164]: $3,000.00.

xiv.     Judith Hy [DE 166]: $2,099.67.

xv.      Myranda Keough [DE 167]: $22,500.00.

xvi.     William Rundell [DE 168]: $50,000.00.

xvii.    Carmen Teresa Espina [DE 169]: $7,500.00.

xviii.   Mercedes Zota [DE 171]: $82,704.41.

xix.     Delores Schneider [DE 172]: $3,000.00.

xx.      John Figueroa  [DE 173]: $88,017.37.

xxi.     Tim Davis [DE 174]: $37,541.31.

xxii.    Brian A. Baudrit [DE 175]: $6,228.30.

xxiii.   Judith Mencke & Frank Garza [DE 177]: $9,954.00.

xxiv.    Maria Prunskis [DE 183]: $10,000.

xxv.     Warren Sapp [DE 184]: $82,789.00.

b.    The following non-investor clients' monies deposited in BA 5 have been
      entirely depleted and therefore can show no present interest in BA 5:

      i.     Joan Weissberg

      ii.    Evelyn Adamo

5

       iii.     Beatriz Lopez

       iv.     William Jaworski

       v.      Mamita Morrison

       vi.     Doris M. Inverso

       vii.    Kenneth & Molly O'Brien

       viii.   Servando Melchor

       ix.     Yolanda Forster

10. NF Servicing was a non-investor client of RRA.

11. On September 10, 2009, $35,189.29 was wire transferred and deposited in BA 5 by Graystone Solutions, Inc. for the benefit of NF Servicing.

12. There were other deposits and withdrawals on September 10, 2009, resulting in a balance of $1,353,500.14 in BA 5 on September 10, 2009.

13. The lowest intermediate balance between September 10, 2009, and October 6, 2009, in BA 5, was $658,036.46.

14. On October 6, 2009, the balance in BA 5 was $1,033,449.55.

15. On October 7, 2009, $33,609.01 was deposited in BA 5 by Graystone Solutions, Inc. for the benefit of NF Servicing.

16. There were other deposits and withdrawals on October 7, 2009, resulting in a balance of $1,060,876.97 in BA 5 as of October 7, 2009.

17. The lowest intermediate balance between October 7, 2009, and November 10, 2009, in BA 5 was $780,950.00.

18. All monies deposited on behalf of NF Servicing remain in BA 5.

19. NF Servicing has proved a superior interest in $68,798.30 held in BA 5 to that of

Mr. Rothstein at the time of the commission of the acts which gave rise to the forfeiture of BA 5.

20.   The Morses were clients of RRA.

21.   Mr. Rothstein perpetrated a fake lawsuit (hereinafter "the Jan Jones lawsuit") against the Morses.

22.   At the direction of Mr. Rothstein, the Morses transferred the following sums to the RRA trust accounts listed below:

    a.   BA 5 - $2,919,925.74 (Mr. Rothstein did not repay $419,925.70).

    b.   BA 11 - $30,000,000.00 (Mr. Rothstein did not repay $15,581,243.00).

    c.   BA 4 - $21,176,415.75 (Mr. Rothstein did not repay $20,894,415.75).

23.   The lowest intermediate balance in BA 5 after the Morses last deposit fell below zero.

24.   The lowest intermediate balance in BA 11 after the Morses last deposit was $8,526.88.

25.   The lowest intermediate balance in BA 4 after the Morses last deposit was $28,085.00.

26.   The Morses had a superior interest to that of Mr. Rothstein at the time of the commission of the acts which gave rise to the forfeiture of BA 4, 5, and 11. Using the lowest intermediate balance rule, that interest is quantified as follows:

    a.   BA 4   $28,085.16

    b.   BA 5   $0

    c.   BA 11   $8,526.58

27.   Snyder wire transferred to RRA a total of $2,160,000.00 in two installments,

October 23, 2009, and October 27, 2009, which were deposited in BA 11.

28.  The Snyder funds were intended to be kept separate from RRA's property.

29.  Snyder understood the funds were to be held in trust within an attorney IOTA trust account until such time as Snyder and Rothstein (or some other authorized representative of RRA) agreed upon a specific purpose to which the funds were to be applied.

30.  No agreement was ever reached with regard to the specific purpose to which the Snyder funds would be applied.

31.  The lowest intermediate balance in BA 11 between the first deposit on October 23, 2009, and November 6, 2009, was $430,892.08.

32.  Snyder has proved a superior interest to that of Rothstein in the $430,892.08 which remained in BA 11 at time of seizure.

33.  The Vines wire transferred $1,080,000.00 into BA 11, an RRA trust account, on October 28, 2009.

34.  The wire transfer was in contemplation of an investment to purchase a structured settlement.

35.  The Vines never received or executed any documents to consummate any agreement as to placement of the funds other than they were to be held in trust pending further instructions from the Vines.

36.  On October 30, 2009, the Vines sought return of their funds, but the funds have not been returned.

37.  The lowest intermediate balance in BA 11 between the date of deposit, October 28, 2009, and November 6, 2009, was $430,892.08.

38.    The Vines have proved a superior interest to that of Rothstein in the $430,892.08 which remained in BA 11 at time of seizure.

39.    Since the Morses, Snyder, and the Vines have all established a superior interest to Rothstein's interest in BA 11 and the respective interests cumulatively exceed the balance remaining in the account, the parties have agreed to a pro rata distribution which yields the following results:

    a.    Morses        -        $4,221.52

    b.    Snyder        -        $213,335.28

    c.    Vines        -        $213,335.28

40.    The Chapter 11 Trustee of Rothstein Rosenfeldt Adler, P.A.'s ("the Trustee") claims to fees and costs earned and incurred in procuring settlements for the Thirty-Five Non-Investor Clients is unsupported by the evidence.[4]

41.    The Trustee has proved by a preponderance of the evidence a superior interest to that of Mr. Rothstein at the time of the commission of the acts giving rise to forfeiture of BA 2, 3, 5 (in the amount of $93,504.50), 15, and 18.

42.    The Trustee has failed to prove that the contents of BA 10 were derived from legitimate sources.

## DISCUSSION

Section 853(n) sets forth the procedures by which a third party may assert its interest in forfeited property. The section states, in relevant part, as follows:

    (2) Any person, other than the defendant, asserting a legal interest in

---

    [4]    The Trustee is not precluded from filing an independent action seeking fees and costs from the clients pursuant to their respective contracts of employment.

property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(3)  The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

. . .

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(2)-(3), (6).

Section § 853 provides the Court with limited guidance regarding what to do when a third-party claimant prevails in a proceeding pursuant to § 853(n)(6), let alone when multiple third-party claimants prevail as to a particular item of property subject to a preliminary order of forfeiture.  Indeed, the statute provides only that "the court shall amend the order of forfeiture in accordance with its determination."  Id. § 853(n)(6).

Thus, the Court must decide what to do with seized property that is not part of

the order of forfeiture.  The mere removal of the item of property from the forfeiture

order would ostensibly return the property to the party in possession prior to the

forfeiture.[5]  On the other hand, the Court can amend the order of forfeiture to direct the

United States to transfer subject property to a particular party.[6]  For the reasons set

forth below, the Court concludes that the latter method is preferable.

To simply return the property to the prior possessor would result in costly,

inefficient, and unjust outcomes.  For example, if the criminal defendant possessed the

forfeited property immediately preceding the forfeiture, it would make little sense for the

United States to return the forfeited property to the criminal defendant when a third-

party claimant has proved by a preponderance of the evidence that he has a superior

interest to that of the criminal defendant in the forfeited property.  Furthermore, even if

a third-party, rather than a criminal defendant, possessed the forfeited property

immediately prior to forfeiture, the result would likely be expensive and inefficient.

Presumably, if the United States returned the forfeited property to the party that

possessed it prior to forfeiture, but the party that possessed it prior to forfeiture is not

the prevailing party in the ancillary proceeding, the prevailing party from the ancillary

---

[5]        The Trustee advocates this approach.  Specifically, the Trustee argues
that the statute does not authorize the Court to dispose of property.  Rather, the
Trustee maintains that if a party proves by a preponderance of the evidence that the
order of forfeiture is invalid, the Court should return the property to the party that
possessed the property prior to forfeiture.  According to the Trustee, "the legal
landscape is to treat those properties and accounts just as they would be had there
been no forfeiture action at all."  Thus, the Trustee contends that the RRA Accounts
should be returned to RRA and, by extension, the Trustee, so that the parties may
litigate ownership in bankruptcy court.

[6]        Both the United States and RRA's clients advocate this approach.

11

proceeding would have to commence additional proceedings to obtain the subject property. Thus, it would seem that the Court should direct the United States to deliver the forfeited property to the appropriate party. Importantly, such a scenario does not conflict with the statute's direction that "the court shall amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n)(6). The statutotry language strongly implies that the Court has the authority to direct to which party the property is returned.

## A. Clients of RRA

Although the lowest intermediate balance rule ("LIBR") is a legal fiction, the parties have agreed to its use in this proceeding. Bogert's Trusts and Trustees § 926 n.16 (citing In re Columbia Gas Sys. Inc., 997 F.2d 1039, 1063 (3rd Cir. 1993), cert. denied 114 S. Ct. 1050 (1994)). With LIBR, the Court assumes that trust funds are the last funds withdrawn from a commingled account. Id. Once trust money is dissipated, however, it is not restored by subsequent deposits. Id. Accordingly, the lowest intermediate balance in a commingled account represents reasonably identifiable trust funds that have never been withdrawn from the trust account.[7] Id.

### 1. Thirty-Five Non-Investor Clients

The balance in BA 5 fell below zero on June 24, 2009. Joan Weissberg, Evelyn Adamo, Beatriz Lopez, William Jaworski, Mamita Morrison, Doris M. Inverso, Kenneth & Molly O'Brien, Servando Melchor, and the Morses all had their monies deposited in BA

---

[7] To determine the lowest intermediate balance in a particular account, the Court looks only to the daily closing balances for the account and disregards intra-day balances. See Rep. Supply Co. v. Richfield Oil Co., 79 F. 2d 375, 379-80 (9th Cir. 1935).

5 prior to June 24, 2009. The application of LIBR, therefore, precludes these clients

from recovering funds out of BA 5.[8]   The remaining clients, however, have proved by a

---

[8]       The Court questions whether LIBR presents the best method to restore
funds to victims of the Defendant's fraud. In the Court's view, a client of RRA who can
trace money into a trust account should have "an interest" in the funds in that account
even if the funds in the account are commingled and dissipated. See 5 Austin
Wakeman Scott & William Franklin Fratcher, The Law of Trusts, § 519 (4th ed. 1989)
("Where a wrongdoer commingles the money of two or more persons . . . the claimants
have an interest in the mingled fund in proportion to their contributions to the fund.").
"As between the claimants and [Rothstein], the claimants are entitled to priority with
respect to the fund . . . but as between themselves there is no reason to prefer one over
another, and therefore they share pro rata in the profits or the losses." Dodd v.
Schimpf, 419 So. 2d 664, 667 n.4 (Fla. Dist. Ct. App. 1982) (quoting Scott, supra); see
also First Trust & Sav. Bank v. Therrell, 138 So. 733 (Fla. 1932) (holding all trust
beneficiaries were held entitled to share in all remaining assets on a pro rata basis
where the entire remaining assets of an insolvent trust company were insufficient to
repay the commingled funds of all trust beneficiaries, and where it was impossible to
trace any particular funds into any particular assets). Furthermore, the Restatement of
Restitution § 213 takes the following position on this issue:

> [W]here a person wrongfully mingles money of two or more persons, each
> of them is entitled to share in the mingled fund or in property acquired with
> the fund, in such proportion as his money bore to the whole amount of the
> fund. Thus, where a person wrongfully mingles money of two or more
> persons and subsequently wrongfully withdraws and dissipates a part of
> the money, the Restatement declares that the claimants are entitled to
> share the balance proportionately, expressly rejecting the inference that
> the money first deposited is the money first withdrawn.

J. F. Ghent, Distribution of Funds Where Funds of More than One Trust Have Been
Commingled by Trustee and Balance Is Insufficient to Satisfy All Trust Claims, 17
A.L.R. 3d 937 (1968) (citing Restatement (First) of Restitution § 213 (1937)). Similarly,
the Restatement of Trusts explains that if a trustee deposits different parties' trust funds
into a single account, "and subsequently wrongfully withdraws and dissipates a part of
the deposit, the beneficiaries of the trusts are entitled to share the balance of the
deposit proportionately, regardless of the order in which the deposits were made." Id.
(citing Restatement (Second) of Trusts § 202 (1959)).
       Consequently, the Court believes that if firm clients can prove by a
preponderance of the evidence that they had money in RRA trust accounts, the clients
should share pro rata in the funds still in those accounts regardless of the timing of
deposits and withdrawals. Notwithstanding, the United States represented in open
court on the record that all of the interested parties believe LIBR provides the

preponderance of the evidence that they have a superior interest in the funds remaining in BA 5 than Rothstein had in BA 5 at the time of the commission of the act that gave rise to the forfeiture of BA 5.  Consequently, the Court will direct the United States to transfer funds from BA 5 to the remaining clients in accordance with the Court's findings of fact.

### 2. NF Servicing LLC

NF Servicing has proven by a preponderance of the evidence that it had a superior interest than Rothstein in BA 5 at the time of the commission of the act(s) that gave rise to the forfeiture of BA 5.  NF Servicing, therefore, prevails on its verified petition [DE 266].  NF Servicing shall recover $68,798.30 from BA 5.

### 3. The Morses

The Morses assert a legal interest in BA 4, BA 5, and BA 11.  The Court finds

---

appropriate legal rule here.  The Court will honor the parties' accord.

Furthermore, the parties cited persuasive precedent from several Circuits that have applied LIBR.  See, e.g., In re Dameron, 155 F.3d 718 (4th Cir. 1998); Meyer v. Norwest Bank Iowa, Nat'l Ass'n, 112 F.3d 946 (8th Cir. 1997); In re Columbia Gas Systems Inc., 997 F.2d at 1063; Harley-Davidson Moto Co. v. Bank of New Eng.-Old Colony, 897 F.2d 611, 622 (1st Cir. 1990); Conn. Gen. Life, 838 F.2d 612 (1st Cir. 1988); First Wis. Fin. Corp. v. Yamaguchi, 812 F.2d 370, 375 (7th Cir. 1987); United States v. Banco Cafetero Pan., 797 F.2d 1154, 1159 (2d Cir. 1986) (adjudicating commingled funds in drug forfeiture case); Scully v. Pac. States Sav. & Loan Co., 88 F.2d 384, 386 (9th Cir. 1937); Republic Supply Co. of California v. Richfield Oil Co. of California, 79 F.2d 375 (9th Cir. 1935); Crawford County v. Strawn, 157 F. 49 (6th Cir. 1907).  But see In re First Fidelity Financial Services, Inc., 36 B.R. 508 (Bankr. S.D. Fla.1983) ("It is unreasonable that he should be deemed to draw his checks with the invariable intent to defraud [one trust beneficiary] rather than [the other]."); First Fed. of Michigan v. Barrow, 878 F.2d 912, 914 (6th Cir. 1989) (held that claimants' funds irretrievably lost their identity and "tracing" became a futile pursuit; claimant did not meet his burden of proof because accounts "continued to be commingled and suffered an irretrievable loss of identity") (citing Collier on Bankruptcy, § 541.12 (15th ed. 1988)).  Thus, despite the Court's misgivings about the soundness of LIBR, the Court will apply the rule agreed to by the parties.

that the Morses deposited funds to be held in trust by RRA in BA 4, BA 5, and BA 11.

Thus, the Morses have proved by a preponderance of the evidence that they had a

superior interest than Rothstein in those three accounts at the time of the act(s) that

gave rise to their forfeiture. However, as discussed more fully below, the application of

LIBR limits the Morses' recovery.

The Morses deposited $20,894,415.75 into BA 4. They were never repaid those

funds. Accordingly, the Morses have proven by a preponderance of the evidence that

they had a superior interest in BA 4 than the defendant had in BA 4 at the time of the

commission of the act(s) that gave rise to the forfeiture of BA 4. BA 4, however, now

contains only $71,793.06. Furthermore, the lowest intermediate balance after the

Morses last deposit in BA 4 was $28,085.00 occurring on June 30, 2009. DE 523.

Consequently, upon application of LIBR, the Morses can recover only $28,085.00 from

BA 4.

The Morses' last deposit into BA 5 was on March 12, 2008, in the amount of

$2,919,925. The balance in BA 5 fell below zero on June 24, 2009. Thus, pursuant to

LIBR, the Morses cannot recover any funds from BA 5.[9]

The Morses also assert an interest in BA 11. The Morses have proven by a

preponderance of the evidence that they have a superior interest in BA 11 than

---

[9]     The Morses agree that LIBR provides the applicable legal rule.
Nonetheless, the Morses argue that subsequent deposits restore trust funds. See DE
518 (citing In re Hecker, 316 B.R. 375, 387 (Bankr. S.D. Fla. 2004)). The notion that
subsequent deposits restore trust funds flies in the face of LIBR. The case cited by the
Morses, In re Hecker, does not contemplate a scenario where competing innocent
parties assert claims to a commingled trust account. The Court, therefore, rejects the
Morses' contention that their trust funds could be replenished.

15

Rothstein had in BA 11 at the time of the commission of the act(s) that gave rise to the forfeiture of BA 11. BA 11 contains $430,892.08. The Morses' last deposit into BA 11 was on March 23, 2009. The lowest intermediate balance after the Morses last deposit into BA 11 was $8,526.88. Consequently, pursuant to LIBR, the Morses cannot recover more than $8,526.88 from BA 11.

Furthermore, the Morses are not the only RRA clients who deposited trust funds into BA 11. As demonstrated below, Snyder and the Vines also deposited money to be held in trust in BA 11.[10] The Vines, Snyder, and the Morses agree that they should each take their pro rata share of the limited funds that remain in BA 11. In this instance, the Morses are entitled to recover $4,221.66 from BA 11.

### 4. The Vines

The Vines assert an interest in BA 11. The Vines have proven by a preponderance of the evidence that they have a superior interest in BA 11 than Rothstein had in BA 11 at the time of the commission of the act(s) that gave rise to the forfeiture of BA 11. BA 11 contains $430,892.08.

The lowest intermediate balance in BA 11 after the Vines' last deposit was $430,892.08. Because the Vines are not the only client that has proven by a preponderance of the evidence that BA 11 contains client trust funds, the Vines may take only their pro rata share of BA 11. Specifically, the Vines are entitled to recover

---

[10]    As discussed more fully below, the lowest intermediate balance after the Vines' last deposit was $430,892.08. Likewise, the lowest intermediate balance after Snyder's last deposit was $430,892.08. Thus, to determine each party's pro rata share of the $430,892.08 still in the account, the Court adds the three parties' claims together (i.e., $430,892.08 + $430,892.08 + $8,526.88 = $870,311.04), divides each party's claim by that amount, and multiplies that number by the $430,892.08 left in the account.

$213,335.20 from BA 11.

### 5. Todd D. Snyder

Snyder asserts an interest in BA 11.  BA 11 contains $430,892.08.  Snyder has proven by a preponderance of the evidence that his interest in BA 11 was superior to Rothstein's interest in BA 11 at the time of the commission of the act(s) that gave rise to the forfeiture of BA 11.

The lowest intermediate balance in BA 11 after Snyder's last deposit was $430,892.08.  Because Snyder is not the only client that has proven by a preponderance of the evidence that BA 11 contains client trust funds, Snyder may take only his pro rata share of BA 11.  Specifically, Snyder is entitled to recover $213,335.20 from BA 11.

### B. The Trustee

As a preliminary matter, the Trustee contends that there is a legal presumption that the funds in a bank account belong to the owner of the bank account.  Here, however, the unrebutted evidence clearly shows that BA 4, BA 5, and BA 11 contained funds to be held in trust for RRA's clients.  Consequently, the legal presumption does not apply to BA 4, BA 5, or BA 11.  Furthermore, the Trustee conceded at the evidentiary hearing that it cannot carry its burden with respect to BA 16, BA 17, or BA 19.

The Trustee has proven by a preponderance of the evidence that it had a superior interest than Rothstein in BA 2 at the time of the commission of the act(s) that gave rise to the forfeiture of BA 2.  Indeed, before Stuart Rosenfeldt deposited $500,000.00 in BA 2 on November 6, 2009, BA 2 contained only $60.07.  No

17

subsequent deposits were made in BA 2. At the time the United States seized BA 2, the account contained $484,840.81. Because RRA is the title owner of BA 2, the money in BA 2 came from a source other than the criminal defendant, and no evidence exists that the money in BA 2 was meant to be held in trust for a third party, the Trustee is entitled to recover the funds in BA 2.

The Trustee has proven by a preponderance of the evidence that he had a superior interest than Rothstein in BA 3 at the time of the commission of the act(s) that gave rise to the forfeiture of BA 3. Indeed, before Stuart Rosenfeldt deposited $500,000.00 in BA 2 on November 6, 2009, and some of that $500,000 was transferred to BA 3 that same day, BA 3 had a negative balance. Other than funds from checks returned for insufficient funds, no subsequent deposits were made in BA 3. At the time the United States seized BA 3, the account contained $255.16. Because RRA is the title owner of BA 3, the money in BA 3 came from a source other than the criminal defendant, and no evidence exists that the money in BA 3 was meant to be held in trust for a third party, the Trustee is entitled to recover the funds in BA 3.

The Trustee asserts an interest in BA 4. BA 4 contains $71,793.06. As explained above, the Morses have proved that $28,085.00 in BA 4 belongs to them. Furthermore, the Trustee contends that BA 4 contains only $17,725.49 in non-investor funds. Thus, after deducting the Morses' funds from BA 4, the evidence shows that BA 4 contains only proceeds of crime. A third party, however, cannot have an interest in the proceeds of crime that is superior to the criminal defendant's. See United States v. Eldick, 223 Fed. App'x 837, 840 (11th Cir. 2007). Consequently, the Trustee has not proven by a preponderance of the evidence that he has a superior interest than

18

Rothstein in BA 4 at the time of the commission of the act(s) that gave rise to the

forfeiture of BA 4.[11]

The Trustee asserts a legal interest in BA 5. As demonstrated at length above,

BA 5 contains funds belonging to legitimate non-investor clients of RRA. To the extent

individual clients have proved their interest in funds contained in BA 5, the Court will not

direct the United States to transfer those funds to the Trustee.[12] Notwithstanding, the

Court finds that the Trustee has proved that he had a superior interest in BA 5 than Mr.

Rothstein had in BA 5 at the time of the commission of the acts that gave rise to the

forfeiture of BA 5. After the claims of the Thirty-Five Non-Investor Clients and NF

Servicing are satisfied with funds from BA 5, $93,504.50 remains in BA 5. Accordingly,

---

[11] The Trustee argued that it would be inequitable to distribute client funds held in trust to clients who filed petitions in the ancillary proceeding at the expense of clients who, for whatever reason, elected not to file a verified petition in the ancillary proceeding. The Court disagrees. Although some clients may not have filed verified petitions, they had ample opportunity to do so. The Court cannot compel every interested party to file a verified petition. The Court will not punish parties who have filed verified petitions because other parties elected not to.

[12] The Trustee argues that he has a vested interest in the Thirty-Five Non-Investor Clients' monies held in RRA trust accounts by nature of charging liens for services rendered. The Trustee, however, offered no evidence that he imposed a charging lien on the clients' funds held in RRA trust accounts. Cf. Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, (Fla. 1983) (finding that client must refuse to pay for services rendered and that an attorney must provide timely notice to client to impose charging lien). Here, the Trustee submitted no evidence that clients refused to pay for services rendered or that he provided timely notice to RRA clients regarding fees and costs allegedly due RRA. Furthermore, Trustee's counsel submitted no evidence to quantify the Trustee's claims for attorneys' fees or costs. Moreover, Trustee's counsel represented to the Court that the charging lien issue should not be resolved by this Court. The Court, therefore, will direct the United States to transfer the Thirty-Five Non-Investor Clients' monies to the trust account of their counsel: Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. The Court's ruling in no way compromises Trustee's right to seek remuneration for services rendered or costs advanced in a separate proceeding.

19

the United States shall transfer $93,504.50 from BA 5 to the Trustee.

The United States concedes that the Trustee has proven by a preponderance of the evidence that he had a superior interest to that of the Defendant in BA 9. Accordingly, BA 9 contains $54,021.27 that belong to the Trustee.

BA 10 contains $250,085.00. The Trustee contends that this money was derived from a non-seized bank account. Specifically, the Trustee contends that the money that remains in BA 10 was once held in TD Account #6860755369. Because TD Account #6860755369 was not subject to the Preliminary Order of Forfeiture, the Trustee concludes that the money in BA 10 must not be the proceeds of crime. The Trustee then concludes that if the funds in BA 10 were not the proceeds of crime, the Trustee has proved by a preponderance of the evidence that he has a superior interest in BA 10 then Rothstein had in BA 10 at the time of the acts that gave rise to the forfeiture of BA 10. The Court disagrees with the Trustee's conclusions.

As noted above, a third party cannot have an interest in the proceeds of crime that is superior to the criminal defendant's. See Eldick, 223 Fed. App'x at 840. The fact that TD Account #6860755369 was not subject to the Preliminary Order of Forfeiture does not prove, in and of itself, that TD Account #6860755369 did not contain the proceeds of crime. Additionally, Rothstein was the only signatory on BA 10 which casts serious doubt on the legitimacy of the funds in the account. Moreover, in addition to the funds from TD Account #6860755369, BA 10 contained funds from BA 11, BA 16, and BA 18, all of which were forfeited accounts. BA 11 and BA 16, for example, were IOTA trust accounts that Rothstein used to funnel criminal proceeds. Consequently, the funds still in BA 10 could just as easily be funds from BA 11 or BA 16

20

as funds from TD Account #6860755369. Based on these facts, the Court finds that the Trustee has failed to prove by a preponderance of the evidence that the funds in BA 10 were derived from legitimate sources.

The Trustee claims an interest in BA 11. As discussed at length above, the Court finds that BA 11 contains only trust funds belonging to Snyder, the Morses, and the Vines. Indeed, Snyder, the Morses, and the Vines have a vested interest in the funds contained in BA 11. Pursuant to the Rules Regulating the Florida Bar, as well as basic trust principles, RRA had only legal title to the funds in BA 11. Thus, even if the Trustee can prove that he had an interest in BA 11 that was superior Mr. Rothstein's interest in BA 11 at the time of the commission of the acts that gave rise to the forfeiture of BA 11, the Court finds that the Trustee cannot recover the funds in BA 11.

The Trustee claims an interest in BA 15. Applying the lowest intermediate balance rule, BA 15 contains $20,800.00 of non-investor funds. Specifically, the funds in BA 15 are funds from Pharon Development Assets, Inc. ("Pharon"), a client of RRA. Because RRA, rather than Rothstein, was the trustee of Pharon's funds, the Trustee has proved by a preponderance of the evidence that he has a superior interest in BA 15 than Mr. Rothstein had in BA 15 at the time of the commission of the acts that gave rise to the forfeiture of BA 15.

The Trustee asserts an interest in BA 18. Applying the lowest intermediate balance rule, BA 185 contains $28,497.07 of non-investor funds. Specifically, the funds in BA 18 are Pharon's funds. Because RRA, rather than Rothstein, was the trustee of Pharon's funds, the Trustee has proved by a preponderance of the evidence that he has a superior interest in BA 18 than Mr. Rothstein had in BA 18 at the time of the

21

commission of the acts that gave rise to the forfeiture of BA 18.

The Trustee concedes that it has not met its burden of proof with regards to BA 16, BA 17, or BA 19. Accordingly, the Trustee cannot recover the funds contained in those three accounts.

It is therefore

**ORDERED AND ADJUDGED** that the Preliminary Order of Forfeiture [DE 134] is hereby amended to reflect:

1. BA 2 with a balance of $484,900.88 shall not be forfeited and shall be transferred to the Trustee.

2. BA 3 with a balance of $255.16 shall not be forfeited and shall be transferred to the Trustee.

3. $28,085.16 contained in BA 4 shall not be forfeited and shall be transferred to the Morses.

4. $947,091.83 contained in BA 5 shall not be forfeited and shall be transferred to the petitioners below:[13]

    a. The Trustee [DE 192]: $93,504.50.

    b. NF Servicing, LLC [DE 266]: $68,798.30

    c. Hirbod Samsam [DE 147]: $10,000.00.

    d. Brian Korinko [DE 148]: $109,945.93.

---

[13] With the exception of the funds belonging to NF Servicing, LLC and the Trustee, the United States shall transfer the funds in BA 5 to the attorney trust account at Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. to be held on behalf of the Thirty-Five Non-Investor Clients for no less than fifteen days thus providing the Trustee an opportunity to assert any claims for fees and/or costs.

e.    Mitchell Delgado [DE 149]: $10,000.00.

f.    Diana Garcia [DE 152]: $10,000.00.

g.    Juan Frometa [DE 154]: $2,839.85.

h.    Marla Jacobson [DE 156]: $61,689.96.

i.    Robert Rozett [DE 157]: $99,992.23.

j.    Kenneth & Annette Valdespino [DE 159]: $60,000.00.

k.    Richard Litsky [DE 160]: $2,500.00.

l.    Iris Altman [DE 161]: $340.00.

m.    Lorenzo Fagan [DE 162]: $5,000.00.

n.    Alissa Mauro [DE 163]: $7,147.00.

o.    Shebellia Edwards Oliver [DE 164]: $3,000.00.

p.    Judith Hy [DE 166]: $2,099.67.

q.    Myranda Keough [DE 167]: $22,500.00.

r.    William Rundell [DE 168]: $50,000.00.

s.    Carmen Teresa Espina [DE 169]: $7,500.00.

t.    Mercedes Zota [DE 171]: $82,704.41.

u.    Delores Schneider [DE 172]: $3,000.00.

v.    John Figueroa  [DE 173]: $88,017.37.

w.    Tim Davis [DE 174]: $37,541.31.

x.    Brian A. Baudrit [DE 175]: $6,228.30.

y.    Judith Mencke & Frank Garza [DE 177]: $9,954.00.

z.    Maria Prunskis [DE 183]: $10,000.

aa.    Warren Sapp [DE 184]: $82,789.00.

5.     BA 9 with a balance of $54,021.27 shall not be forfeited and shall be transferred to the Trustee.

6.     BA 11 with a balance of $430,892.08 shall not be forfeited and shall be transferred to the petitioners below:

    a.     Morses        -        $4,221.52

    b.     Snyder        -        $213,335.28

    c.     Vines          -        $213,335.28

7.     BA 15 with a balance of $20,080.00 shall not be forfeited and shall be transferred to the Trustee.

8.     BA 18 with a balance of $28,497.07 shall not be forfeited and shall be transferred to the Trustee.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 25th day of August, 2010.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies provided to counsel of record.

24