UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 09-60331-CR-COHN |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| SCOTT W. ROTHSTEIN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT SCOTT ROTHSTEIN'S OPPOSITION AND INCORPORATED MEMORANDUM OF LAW TO GOVERNMENT'S MOTION TO WITHDRAW IT'S MOTION FOR REDUCTION OF SENTENCE**

**I.   SUMMARY OF THE ARGUMENT**

The Government's motion to withdraw alleges that in the judgment of the United States, Rothstein violated his plea agreement by providing false material information to the Government and that therefore in the exercise of their sole discretion they move to withdraw the Rule 35 Motion. This allegation is problematic for the Government on several levels. First, the Government's motion is insufficient on its face and must be denied. The Government has alleged no facts whatsoever in support of this allegation. As the party alleging a breach the Government must prove the breach by a preponderance of the evidence. The defendant cannot rebut any of the factual allegations supporting the Government's position because not one single fact is alleged. Rothstein cannot be expected to swing wildly at ghosts. The Government is attempting to avoid its obligations under the plea agreement by making mere conclusory unsubstantiated allegations of breach. Conclusory allegations are insufficient to prove by a preponderance of the evidence. At a minimum, Rothstein is entitled to an evidentiary hearing on the issue of his alleged breach.

However, even if the Government had alleged sufficient facts in support of its allegations that Rothstein violated the plea agreement, the Government would still be prohibited from withdrawing the Rule 35 Motion, as the plea agreement does not permit such an act by the Government once the motion is filed. The Government, having drafted the plea agreement, intentionally included specific language regarding its discretion to file a rule 35, but chose not to reserve any right to withdraw such motion once it was filed. Instead, now the Government argues that it reserved such a right in the Rule 35 Motion itself filed a year and a half later. Having not warned Rothstein of that consequence in the plea agreement, this new provision clearly alters the initial contract between the parties, which is not enforceable under prevailing law and would constitute a breach by the Government of the original plea agreement.

The Government further argues that its discretion to file the motion automatically includes its discretion to withdraw the motion. In support of that position the Government is unable to cite to any authority in this Circuit. Instead, it relies upon cases "borrowed" from other Circuits, which are clearly factually and legally distinguishable and fail to undertake the very plea agreement analysis commonly used in this Circuit.

That Rothstein provided substantial assistance to the Government meriting the filing of the Rule 35 Motion cannot be disputed. Indeed, the Government represented in its Rule 35 Motion that Rothstein had already provided substantial assistance and that it wanted the Court to stay ruling pending the completion of all of Rothstein's assistance.

Now, the only remedy left once the Government exercises its discretion to evaluate the cooperation and file, is for the Government to inform the Court of any issues during the actual rule 35 hearing. As such, Rothstein is entitled to a hearing on the Rule 35 Motion.

## II.   ARGUMENT AND LEGAL AUTHORITIES

The Government bears the burden of proving that the defendant breached his agreement by a preponderance of the evidence.  See *United States v Plasencia –Orozco*, No.15-50143, (9th Cir.May 2017) citing *United States v. Packwood*, 848 F2d.1009 (9th Cir

1988). "The Government cannot unilaterally declare that a defendant has breached the plea agreement and thus relieve itself from its obligations under the bargain… Instead, the Government must prove by a preponderance of the evidence that the defendant has materially breached the agreement.." *United States v. Titus*, 547 Fed Appx 464 (5th Cir. 2013) citing *United States v Castaneda*, 162 F3d 832, 836 (5th Cir. 1998). "Rooted in due process concerns, the rationale for requiring proof of material breach is to provide the defendant with the opportunity to debate the issue in court. *Titus*, citing *United States v. Miller*, 406 F3d 323,334 (5th Cir.2005).

Here, the Government's motion is devoid of any specific factual allegations to support its mere conclusory statement that Rothstein provided "false material information to the Government." The Government offers no proof, either in the form of documents, sworn statements or other evidence to carry its burden and as such its motion should be denied. Under the circumstances, this Court is not in a position to weigh or even evaluate the quantum of proof, since none is offered. Nor is this Court in a position to determine that any such breach, if proven, was material. In the absence of any specific allegation and evidence thereof, Rothstein is denied the opportunity to "debate the issue in court" (see *Miller supra*) Moreover, in the absence of any specific proof, this Court is denied the opportunity to weigh the benefits received by the Government from Rothstein's cooperation (set forth in detail below) against the violations by the defendant. See *Casteneda* at 839. Given the enormity of Rothstein's 50-year sentence, which for him is tantamount to life in prison, fairness and all notions of due process demand that the Government come forward with more than a blanket conclusory statement, bereft of proof.

Nowhere in the plea agreement does the Government advice Rothstein that it reserves the right to withdraw its Rule 35 Motion once filed, in the event of Rothstein doing or failing to do something. Despite using 18 lines in the agreement to explain in detail its rights and obligations, including its sole discretion whether to file the motion, the Government specifically chose not to include any reservation of discretion to withdraw that

motion, once filed. Nor does the agreement warn Rothstein that he risks Government withdrawal of a Rule 35 Motion for any failure of condition on his part. Nowhere in the paragraphs detailing Rothstein's obligations under the agreement does it provide any warning on this issue. The inclusion of this language for the first time a year and a half later in the Government's Rule 35 Motion clearly points out that the Government was well aware of the importance of preserving this right and more critically, putting Rothstein on notice of the consequences. However, the inclusion of this language in the rule 35 <u>but not</u> in the plea agreement and letter agreement is fatal to the position taken by the Government in its motion to withdraw the Rule 35 Motion. A plea agreement is a contract between the defendant and the United States. Therefore, although constrained at times by due process implications, commercial contract principles govern the interpretation and enforcement of plea agreements. *United States v. San Pedro*, 781 F.Supp. 761 (S.D. FL. 1991) citing *United States v. Jeffries*, 908 F2d 1520 (11th Cir. 1990). It is black letter law that one party to an agreement cannot, without the other party's consent, unilaterally modify the agreement once it has been executed. *Kuhne v. Florida Department of Corrections, et al.*, 745 F2d 1091 (11th Cir. 2016.) No modification can occur unless it is by mutual consent and supported by consideration. *Rhodes v. BLP assocs. Inc.*, 944 So.2d. 527, 530 (Fla. 4th DCA 2006).

Instead, the Government is asking this Court to read it's discretion to withdraw the motion into the plea agreement by virtue of the plea agreement granting it the sole discretion to file the motion in the first place. However this flies in the face of well-established law in this Circuit regarding the strict interpretation of plea agreements. The prosecutors who drafted the plea agreement and the letter between the Government and Rothstein enjoy overwhelmingly superior bargaining power and thus Courts strictly construe plea agreements against the Government. See *United States v. Jeffries*, 908 F2d 1520 (11th Cir. 1990). Both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant for imprecisions or

4

ambiguities in plea agreement. *Boswell v. Crews*, 2013 US Dist. LEXIS 164015 (11th Cir.2013), citing *Jeffries* at 1523. As Judge Highsmith noted in *United States v. Ganz*, 806 F.Supp 1567, (S.D. FL. Nov 17, 1992) "as the trustee of the people, the Government is held to a higher standard in carrying out our common duties, including the prosecution of crimes. This higher standard requires the sovereign to perform its contractual duties with a sharpened sense of good faith and fair dealing. The fact that the other party is a criminal defendant does not alter the Government's duty." *Id* at 1575. A plea agreement must adequately warn the defendant of the consequences of his plea and the Court must construe the agreement in light of the fact that it constitutes a waiver of substantial constitutional rights. *United States v. Hunter*, 835 F3d 1320, 1324 (11th Cir. 2016) citing *United States v. Jeffries*, 908 F2d 1520, 1523 (11th Cir. 1990). A plea agreement must be interpreted based upon what it says, not what it might have said if the Government could have foreseen the future. *United States v. Melton*, 861 F.3d 1320 (11th Cir.1990). Nor can the Government simply argue that the plea agreement somehow reflects its intention to reserve the discretion to withdraw. Where the Government neglects to include language in the plea agreement to reflect the Government's alleged intention, the court cannot simply fill in the gap left by the Government with the language it should have included. *United States v. Copeland*, 381 F.3d 1101, 1109 (11th Cir. 2004). Where as here, the plea agreement is unambiguous, the court cannot consider parole evidence in interpreting the agreement. *Copeland* at 1105. As such, the government cannot come into court now and suggest or offer additional material to suggest a broader interpretation of what the agreement says. Here the plea agreement says nothing about the right to withdraw. Silence is not ambiguity. *Melton* at 1328. Rothstein respectfully submits that the court does not have the power under the law to ink in a modification or interpret the language beyond its plain and ordinary usage. See *Melton supra, Copeland supra* and *Jeffries supra*.

The cases that the Government relies upon to support its position that it has the sole discretion to withdraw the motion can easily be distinguished on the facts presented and the

5

legal reasoning used to justify the holding in each case. The Government cites to *United States v. Hartwell*, 448 F3d 707 (4th Cir.2005), wherein the Court held that the language giving the government the sole discretion to file a Rule 35 Motion also included the discretion to file a Motion to Withdraw it. *Hartwell* at 718. However, what the Government fails to note in its Motion to Withdraw is that the holding at *Hartwell* was based upon the undisputed fact that Mr. Hartwell, himself, had in fact, explicitly agreed to language giving the Government the right to withdraw his Rule 35. While Hartwell's assistance was ongoing, and he and the Government were in negotiations regarding his cooperation and the filing of his Rule 35, Hartwell explicitly agreed that if he failed to fulfill his responsibility to the Government, the Government could withdraw the Rule 35 without objection by the defendant. *Hartwell* at 711. No such agreement has ever existed between Rothstein and the Government. Clearly, in *Hartwell* the defendant "was adequately warned of the consequences of his plea" a fact that does not exist here.

The Government also relies upon the Court's holding in *United States v. Shropshire*, 278 F.Appx.528 (6th Cir. 2008). While the *Shropshire* opinion does hold that the district court did not err in allowing the Government to withdraw the rule 35, it did not address, because the defendant there didn't raise, whether the plea agreement adequately warned Shropshire of the consequences of his plea; what Shropshire reasonable understanding of the terms of his plea agreement were or the Government was attempting to improperly have the Court read new language into the plea agreement. Most importantly, the *Shropshire* opinion is based on a factual scenario completely different from Rothstein's situation. In *Shropshire*, at the time the Government filed its Rule 35 Motion, the Government specifically stated "unknown at that time the information provided by Shropshire would result in substantial assistance." *Shropshire* at 523. The motion as being filed in order to protect the defendant's ability to receive a downward departure in the event that the assistance would be determined to be substantial (i.e. a saving motion). This is the polar opposite of Rothstein's case. Prior to the Government's filing of its Rule 35

6

Motion, Rothstein had already rendered what can only be described as extraordinary substantial assistance to the Government, in fact, in its Rule 35 Motion the Government expressly represents that Rothstein had already rendered substantial assistance to the Government. (DE 767).

Many of the details concerning Rothstein's substantial assistance to the Government are public knowledge and may be known to this Court; such as the fact that Rothstein came back from a non-extradition country to cooperate with the Government without any agreement or promises; that Rothstein spent hundreds of hours debriefing with Government attorneys and agents and reviewed and analyzed tens of thousands of documents providing critical unknown details of his scheme and the involvement of others as well as the complicated financial transactions involved. Also this Court undoubtedly is well aware of the fact that as a result of Rothstein's extraordinary cooperation more than 30 individuals were successfully prosecuted and in what is unprecedented in large scale financial crime cases, all of the financial victims have been made whole, What may not be as well-known, but would be shown to this Court at a Rule 35 hearing in greater detail, is that as part of his cooperation which also formed the basis for the government's exercise of its discretion in filing the Rule 35 Motion was Rothstein's proactive cooperation- working undercover wearing a wire against dangerous armed criminals, repeatedly putting his life in mortal danger, which resulted in arrests of significant Government targets. In addition, Rothstein uncovered at great risk to his safety through active cooperation, corruption at the highest levels of the Broward Sherriff's office. In addition, Rothstein worked undercover at the Federal Detention Center, literally trapped with the people he was gathering information about. This just a portion of what made up the basis for the Government's filing of the Rule 35 Motion.

As much as the Government wishes to characterize its Rule 35 Motion as a placeholder motion, the motion on its face seeks to stay ruling in order for the full extent of Rothstein's cooperation to be completed and considered by the Court. The Government

stated that it was filing the rule 35 for two reasons: First, in an abundance of caution to preserve the Court's jurisdiction (correctly noting that rule 35 (b)(2) makes such a motion wholly unnecessary), and Second, to permit the Court to consider all of the defendant's cooperation in order to determine the appropriateness of a reduction of the defendant's sentence. (DE 767 p.2 para.5).

Also cited by the Government in support of its argument that the sole discretion to file the rule 35 includes the discretion to withdraw same motion is *United States v. Emerson*, 349 F3d 986 (7th Cir.2003). However, a thorough analysis of the facts and holding in *Emerson* reveals a case which, much like *Hartwell* and *Shropshire* provides absolutely no support for the Government's position here. The facts in *Emerson* reveal that the defendant never provided substantial assistance to the Government. The crux of the *Emerson* opinion turns on a finding that the appellate waiver section of *Emerson's* plea agreement contains language, which included appeals involving reductions in sentence for cooperating. The Seventh Circuit held that *Emerson* waived his right to appeal anything involving his sentence including a reduction for cooperation, the Court also held that the Government did not abuse its discretion when it determined that *Emerson* did not provided substantial assistance. Clearly, none of the issues that Rothstein now presents before this Court were considered in *Emerson*.

In support of its position, the Government also cites this Court to the Fourth Circuit's holding in *United States v. Keller*, 185 Fed Appx.290 (4th Cir. 2006). Unfortunately, *Keller* is a per curium affirmed opinion containing absolutely no recitation of the facts involved, making a factual comparison to Rothstein's case impossible. Without conducting any analysis, the *Keller* court in its opinion makes a blanket statement that "whether to file rule 35(b) motion is a matter left to the Government discretion" (*Keller* at 292) from there a *Keller* court affirms the district court order allowing the Government to withdraw its "conditional rule 35 (b) motion." Nothing else is offered. As such, there is no way to determine how the rule 35 (b) motion was conditional. More importantly, the

8

*Keller* court did not engage in any plea agreement analysis that the Eleventh Circuit conducts under *Hunter supra, Jeffries supra*, *Copeland supra* and *Melton supra.*

The final case relied on by the Government in support of its motion to withdraw Rothstein's rule 35 is *United States v. Farmer*, 382 Fed Appx 303 (4th Cir 2010). Just as with the other cases relied on by the Government, *Farmer* offers the Government no support in the case at bar. *Farmer* raises two arguments: (1) The district court erred by permitting the Government to withdraw its rule 35 where the Government had represented that he had completed his assistance and (2) The district court abused its discretion in not holding an evidentiary hearing on his motion. *Farmer* never raises any of the key issues raised in the present case: *Farmer* never argued that the plea agreement failed to adequately warn him that one of the consequences of his plea was that the Government was retaining the discretion to withdraw his rule 35, regardless of his level of cooperation; *Farmer* never argued anything pertaining to what his reasonable understanding of his plea agreement was at the time he entered his plea; *Farmer* never argued that if the language of the plea agreement is unambiguous the Court cannot consider parole evidence and must give the language of the agreement its usual and ordinary meaning in plain English; *Farmer* never argued that the Court, by finding that the sole discretion to file rule 35 somehow includes the discretion to move to withdraw it, is in essence impermissibly rewriting a material portion of the plea agreement to include a term the Government now wishes it had included but did not; *Farmer* never argued that if the court finds the language to be ambiguous that the Court must construe the language against the Government; and *Farmer* never argued that the plea agreement must be interpreted based upon what it actually says, not based upon what the Government might have said had it been able to foresee the future.

Each of these arguments is raised in the case at bar and go directly to the issue of whether the Government has retained the discretion to withdraw the rule 35. Farmer provides absolutely no insight as to any of these critical issues of plea agreement interpretation. The *Farmer* court simply extracts one piece of the *Hartwell* holding, i.e.

9

that the sole discretion to file a rule 35 includes the discretion to withdraw it. *Farmer* at 305. However, it cites to this holding completely ignoring the key element upon which the *Hartwell* court based its holding… that *Hartwell* had, in his plea agreement and on at least one other occasion, explicitly agreed that the Government was retaining the discretion to withdraw the rule 35. *Hartwell* at 709, 711.

More to the point is the Second Circuit's opinion in *United States v. Padilla*, 186 F3d 136 (2nd Cir. 1999) wherein the Court dealt with an analogous factual scenario to Rothstein's involving the Government's failure to reserve in the plea agreement it's discretion to withdraw its 5k1.1 motion, once filed. In *Padilla*, the Court held:

> "reading the agreement strictly against the Government, as our precedent requires, we conclude that it prohibits the Government from withdrawing the Section 5K1.1 and 18 U.S.C. § 3553(e) motion because it failed to enumerate specifically the right to withdraw the motion in the several specific and serious consequences that would follow if *Padilla* committed further crimes or otherwise violated the agreement. See *Gottesman*, 122 F.3d at 151-52 ("[I]t would seem self-evident that for a court to order restitution . the plea agreement might be expected to mention the word 'restitution.' "). The right to withdraw motions for violation of the terms of a plea agreement has been specifically included in such agreements, as shown in *United States v. Anzalone*, 148 F.3d 940, 942-43 (8th Cir.) (Murphy, J., dissenting), vacated and reh'g en banc granted, 148 F.3d 940, reinstated and reh'g en banc denied, 161 F.3d 1125 (1998). The district court, therefore, erred in allowing withdrawal."

Nor can the Government argue that the underlying plea agreement's silence on withdrawal of the Rule 35 Motion can be interpreted as not prohibiting the withdrawal. The Eleventh Circuit's decision in the case of *In Re Arnett*, 804 F 2d 1200 (11th Cir. 1986) dealt with an analogous argument by the Government wherein it claimed that the plea agreement's silence on forfeiture could be interpreted as not prohibiting the Government's

10

subsequent forfeiture actions. The Court's opinion in *Arnett* is instructive, if not controlling, wherein it held:

> "The government asserts that we must permit its action against the farm since the written plea agreement does not explicitly prohibit a later forfeiture action. We cannot accept such a hyper-technical reading of the written agreement. A guilty plea is more than an admission of past conduct; it is a waiver of the right to trial before a judge or jury. To constitute a valid waiver of substantial constitutional rights, a guilty plea must represent a voluntary, knowing, intelligent act, and must be offered with sufficient awareness of the likely consequences. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *United States v. French*, 719 F.2d 387, 390 (11th Cir.1983), cert. denied, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984). See Fed.R.Crim. P.11.  When viewed against the background of the negotiations, the written plea agreement cannot support a valid waiver of *Arnett's* constitutional rights because it does not sufficiently warn him that he may lose his farm. The written agreement nowhere states that a further forfeiture will be permitted: it specifies an agreed upon forfeiture, but does not reserve any right in the government to take further, similar action. The government urges an interpretation of the plea agreement, which directly contradicts the oral understanding. Such a delicate parsing of the written language cannot support a finding that the defendant has forthrightly waived his constitutional rights as the law requires. "A plea agreement is not an appropriate context for the government to resort to a rigidly literal approach in the construction of language." *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir.1978).  See, e.g., *United States v. Harvey*, 791 F.2d 294, 303 (4th Cir.1986) (ambiguous plea agreement "must be read against the Government"); *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir.1976) ("strict

11

and narrow interpretation of [government's] commitment is untenable");
*Correale v. United States*, 479 F.2d 944, 947 (1st Cir.1973) (government held to "most meticulous standards of both promise and performance")."
*Arnett* at 1201.

### III. CONCLUSION

The Government's motion to withdraw should be denied, as it is legally insufficient on its face. Furthermore, the Government's failure to reserve it's discretion to withdraw a Rule 35 Motion in the plain language of the plea agreement cannot be cured by inserting such language later in the Rule 35 Motion itself. Permitting such a result would be an illegal modification of the plea agreement. Under the circumstances, Rothstein is entitled to have the Court consider the Rule 35 Motion. The Government retains the discretion to advise the court of all of the facts and circumstances of Rothstein's cooperation.

WHEREFORE, for the reasons argued above, this Court is respectfully requested to deny the Government's motion to withdraw and to conduct a hearing on the Government's previously filed Rule 35 Motion.

Respectfully Submitted,

February 12, 2018

Respectfully submitted,

LAW OFFICES OF MARC S. NURIK
1075 Broken Sound Pkwy NW, Suite 102
Boca Raton, FL 33487
Tel  561-273-7000

1551 Manning Ave. Suite 302
Los Angeles, CA 90024
Tel  310-909-6828
marc@nuriklaw.com

By:  /s/ Marc S. Nurik
      MARC S. NURIK
      Fla. Bar No. 272817

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on February 12, 2018, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counselor parties who are not authorized to receive electrically Notices of Electronic Filing.

          LAW OFFICES OF MARC S. NURIK
          1075 Broken Sound Pkwy NW
          Suite 102
          Boca Raton, FL 33487
          Tel:  561-273-7000

          1551 Manning Ave. Suite 302
          Los Angeles, CA 90024
          Tel 310-909-6828
          marc@nuriklaw.com

          By:   /s/ Marc S. Nurik
                 MARC S. NURIK
                 Fla. Bar No. 272817